# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
                    )

CITIZENS UNITED,          )

                    )

          Plaintiff,     )

                    )

        v.          )     Civ. No. 07-2240 (RCL)

                    )

FEDERAL ELECTION COMMISSION,  )     OPPOSITION TO

                    )     PRELIMINARY INJUNCTION

          Defendant.    )

_____)

## DEFENDANT FEDERAL ELECTION COMMISSION'S MEMORANDUM
## IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Thomasenia P. Duncan (D.C. Bar No. 424222)
General Counsel

David Kolker (D.C. Bar No. 394558)
Associate General Counsel

Kevin Deeley
Acting Assistant General Counsel

Adav Noti (D.C. Bar No. 490714)
Attorney

COUNSEL FOR DEFENDANT
FEDERAL ELECTION COMMISSION

December 20, 2007

# TABLE OF CONTENTS

I.      FACTUAL BACKGROUND ........................................................................................1

        A.      The Federal Election Commission ...........................................................1

        B.      Citizens United...........................................................................................1

        C.      *Hillary:  The Movie*...................................................................................2

        D.      Plaintiff's Planned Advertising Campaign .............................................3

II.     STATUTORY AND REGULATORY PROVISIONS ......................................4

ARGUMENT ........................................................................................................................5

III.    A PRELIMINARY INJUNCTION IS AN EXTRAORDINARY REMEDY
        THAT REQUIRES THE PLAINTIFF TO MEET A HEAVY BURDEN ........................5

IV.     PLAINTIFF CANNOT DEMONSTRATE A SUBSTANTIAL
        LIKELIHOOD OF SUCCESS ON THE MERITS ........................................................7

        A.      The Disclosure Requirements Are Constitutional On Their Face ...........................7

        B.      The Disclosure Requirements Are Subject To Intermediate Scrutiny...................11

        C.      Disclosure Regarding Electioneering Communications
                Furthers Important Government Interests...............................................................16

                1.      Providing Information To The Public........................................................17

                2.      Facilitating Enforcement Of Funding Regulations ...................................20

        D.      Plaintiff Demonstrates No Constitutional Burden Arising
                From The Disclosure Provisions..............................................................................23

                1.      Plaintiff Presents No Evidence That Its Donors Will Suffer Reprisals .....23

                2.      Plaintiff Presents No Evidence That The Disclosure Requirements
                        Will Chill Its Speech ................................................................................26

                3.      The Disclosure Requirements Do Not "Mislead The Public" ..................28

                4.      Administrative Burdens Do Not Infringe On
                        Plaintiff's Constitutional Rights ..............................................................30

        E.      The Important Government Interests In Disclosure Outweigh
                All Of Plaintiff's Alleged Constitutional Burdens.................................................31

V.      PLAINTIFF FAILS TO DEMONSTRATE IRREPARABLE INJURY ........................... 31

        A.      Plaintiff's Alleged Injuries Are Neither Actual Nor Certain ................................ 32

        B.      Plaintiff Faces No Imminent Injury ....................................................................... 34

        C.      None Of Plaintiff's Alleged Harms Is Beyond Remediation ............................... 36

        D.      The Precedent That Plaintiff Relies Upon In Support Of Its
                Claim Of Irreparable Harm Is Inapposite ............................................................. 37

VI.     THE RELIEF PLAINTIFF REQUESTS WOULD HARM THE COMMISSION
        AND UNDERCUT THE PUBLIC INTEREST IN DISCLOSURE ................................ 39

CONCLUSION .......................................................................................................................... 42

## TABLE OF AUTHORITIES

*Cases*

*Adarand Constr., Inc. v. Pena*, 515 U.S. 200 (1995)....................................................12

*Adventure Commc'ns, Inc. v. Ky. Registry of Election Fin.*, 191 F.3d 429 (4th Cir. 1999) ....21, 30

*Alaska Right To Life Comm. v. Miles*, 441 F.3d 773 (9th Cir. 2006) ..........................11, 20, 22-24

*Am. Civil Liberties Union of Nev. v. Heller*, 378 F.3d 979 (9th Cir. 2004)...................................27

*Am. Civil Liberties Union of N.J. v. N.J. Election Law Enforcement Comm'n*,
   509 F. Supp. 1123 (D.N.J. 1981) ...............................................................................19

*Bowen v. Kendrick*, 483 U.S. 1304 (1987) ................................................................................6

*Brown v. Socialist Workers '74 Campaign Comm.*, 459 U.S. 87 (1982)......................................24

*Buckley v. Valeo*, 424 U.S. 1 (1976) ............................................................................ *passim*

*Buckley v. Am. Constitutional Law Found., Inc.*, 525 U.S. 182 (1999).....................11, 15, 17, 27

*Calif. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088 (9th Cir. 2003).......................................18

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557 (1980)..........16, 20

*Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290 (D.C. Cir. 2006)............31, 34, 36

*Christian Civic League of Maine, Inc. v. FEC*, 433 F. Supp. 2d 81 (D.D.C. 2006) ................7, 42

*Christian Knights of the Ku Klux Klan Invisible Empire v. District of Columbia*,
   919 F.2d 148, 149-150 (D.C. Cir. 1990).........................................................................38

*CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738 (D.C. Cir. 1995).............5, 39, 41

*Citizens Against Rent Control v. Berkeley*, 454 U.S. 290 (1981) ......................................... 12-14

*Citizens for Responsible Gov't State Political Action Comm. v. Davidson*,
   236 F.3d 1174, 1197 (10th Cir. 2000) ......................................................................21, 27

*Cobell v. Norton*, 391 F.3d 251 (D.C. Cir. 2004) ........................................................................6

*Colo. Right To Life Comm., Inc. v. Davidson*, 395 F. Supp. 2d 1001......................................11, 24

*Comm'n on Indep. Coll. & Univ. v. N.Y. Temp. State Comm'n on Regulation
   of Lobbying*, 534 F. Supp. 489 (N.D.N.Y. 1982)...........................................................19

*Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655 (5th Cir. 2006) ...................................11

*Daggett v. Comm'n on Gov't Ethics & Election Practices*, 205 F.3d 445 (1st Cir. 2000)............21

*Davis v. FEC*, 501 F. Supp. 2d 22 (D.D.C. 2007) .......................................................30

*Elrod v. Burns*, 427 U.S. 347 (1976) ............................................................. 37-38

*FEC v. GOPAC, Inc.*, 897 F. Supp. 615 (D.D.C. 1995) ...............................................32

*FEC v. Mass. Citizens for Life, Inc.*, 479 U.S. 238 (1986) ...........................................12-14, 21-22

*FEC v. Wisconsin Right to Life, Inc.*, 127 S. Ct. 2652 (2007) ............................................... *passim*

*First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765 (1978)............................................. 13-15, 18

*Fla. League of Prof'l Lobbyists, Inc. v. Meggs*, 87 F.3d 457 (11th Cir. 1996) ..........................19

*FTC v. Standard Oil Co. of Calif.*, 449 U.S. 232 (1980) ...............................................36

*Gonannies, Inc. v. Goupair.com, Inc.,* 464 F. Supp. 2d 603 (N.D. Tex. 2006)...........................37

*Herschaft v. New York City Campaign Fin. Bd.*, 127 F. Supp. 2d 164 (E.D.N.Y. 2000)..............11

*Herschaft v. New York City Campaign Fin. Bd.*, 139 F. Supp. 2d 282 (E.D.N.Y. 2001)..............33

*Hicks v. Bush*, 397 F. Supp. 2d 36 (D.D.C. 2005) .......................................................39

*Hohe v. Casey*, 868 F.2d 69 (3d Cir. 1989) ............................................................38

*Homans v. Albuquerque*, 366 F.3d 900 (10th Cir. 2004)..............................................12

*In re Grand Jury Proceedings*, 776 F.2d 1099 (2d Cir. 1985) .........................................24

*Jackson v. Leake*, 476 F. Supp. 2d 515 (E.D.N.C. 2006) ...............................................11, 21

*Jones v. Unknown Agents of FEC*, 613 F.2d 864 (D.C. Cir. 1979) ....................................11, 24

*Kaplan v. Bd. of Educ.*, 759 F.2d 256 (2d Cir. 1985) ..................................................34

*Kimbell v. Hooper*, 665 A.2d 44 (Vt. 1995) ............................................................19

*Majors v. Abell*, 361 F.3d 349 (7th Cir. 2004).........................................................27

*Mariani v. United States*, 212 F.3d 761 (3d Cir. 2000) ................................................24

*Mazurek v. Armstrong*, 520 U.S. 968 (1997)...........................................................6

*McConnell v. FEC*, 540 U.S. 93 (2003)............................................................ *passim*

*McConnell v. FEC*, 251 F. Supp. 2d 176 (D.D.C. 2003)..............................................9, 27, 41

*McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995)............................................................18

*Meese v. Keane*, 481 U.S. 465 (1987)..........................................................................................29

*Minn. State Ethical Practices Bd. v. Nat'l Rifle Ass'n of Am.*,
    761 F.2d 509 (8th Cir. 1985) ........................................................................................19

*NAACP v. Alabama*, 357 U.S. 449 (1958) ...................................................................................24

*Nat'l Elec. Mfrs. Ass'n v. Sorrell*, 272 F.3d 104 (2d Cir. 2001) .............................................27-28

*New Motor Vehicle Bd. of Calif. v. Orrin W. Fox Co.*, 434 U.S. 1345 (1977) .............................42

*NTEU v. United States*, 927 F.2d 1253 (D.C. Cir. 1991)........................................................32, 38

*Perot v. FEC*, 97 F.3d 553 (D.C. Cir. 1996)................................................................................35

*Piscottano v. Murphy*, 317 F.Supp.2d 97 (D. Conn. 2004) ........................................................38

*Renegotiation Board v. Bannercraft Clothing Co.*, 415 U.S. 1 (1974)........................................36

*R.I. Affiliate Am. Civil Liberties Union, Inc. v. Begin*, 431 F. Supp. 2d 227 (D.R.I. 2006) ....13, 18

*Rodriguez v. DeBuono*, 175 F.3d 227 (2nd Cir. 1999) ...............................................................37

*Scott-Blanton v. Universal City Studios Prods. LLLP*,
    495 F. Supp. 2d 74 (D.D.C. 2007) ................................................................................37

*Sears Roebuck & Co. v. NLRB*, 473 F.2d 91 (D.C. Cir. 1972) ...................................................36

*Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440 (2004) .................................................10

*Time Warner Cable of New York City v. Bloomberg L.P.*, 118 F.3d 917 (2d Cir. 1997) .............38

*United States v. Harriss*, 347 U.S. 612 (1954) .....................................................................18, 27

*Univ. of Tex. v. Camenisch*, 451 U.S. 390 (1981).........................................................................6

*Veitch v. Danzig*, 135 F. Supp. 2d 32 (D.D.C. 2001) .................................................................31

*Virginia v. American Bookseller's Ass'n Inc.*, 484 U.S. 383 (1988) ...........................................38

*Wagner v. Taylor*, 836 F.2d 566 (D.C. Cir. 1987)................................................................32, 38

*Walters v. Nat'l Ass'n of Radiation Survivors*, 468 U.S. 1323 (1984) ....................................6, 39

*Wisconsin Gas Co. v. FERC*, 758 F.2d 669 (D.C. Cir. 1985)....................................31, 34, 36, 39

*Wisconsin Right to Life, Inc. v. FEC*, 542 U.S. 1305 (2004) ................................................6-7, 39

*Wisconsin Right to Life, Inc. v. FEC*, Civ. No. 04-1260, 2006 WL 2666017
(D.D.C. Sept. 14, 2006) ...........................................................................7, 35, 39, 42

*Wisconsin Right to Life, Inc. v. FEC*, Civ. No. 04-1260, 2004 WL 3622736
(D.D.C. Aug. 17, 2004).................................................................................................38

*Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*,
471 U.S. 626 (1985)..........................................................................................................20

**Statutes and Regulations**

2 U.S.C. § 431(11) ...........................................................................................................4

2 U.S.C. § 434(f)(2) ..........................................................................................................4

2 U.S.C. § 434(f)(2)(E) .....................................................................................................5

2 U.S.C. § 434(f)(3)(A)(i) .................................................................................................4

2 U.S.C. § 437c(b)(1) ................................................................................................1, 35

2 U.S.C. § 437d(a)(7)........................................................................................................1

2 U.S.C. § 437d(a)(8)........................................................................................................1

2 U.S.C. § 437f .................................................................................................................1

2 U.S.C. § 437g(a) ..........................................................................................................35

2 U.S.C. § 438(a)(8)..........................................................................................................1

2 U.S.C. § 438(d) ..............................................................................................................1

2 U.S.C. § 441b(b) ..........................................................................................................10

2 U.S.C. § 441b(b)(2) .......................................................................................................8

2 U.S.C. § 441d .................................................................................................................4

2 U.S.C. § 441d(a)(3) ........................................................................................................5

2 U.S.C. § 441d(d)(2) ........................................................................................................5

28 U.S.C. § 516...............................................................................................................35

11 C.F.R. § 104.20 ............................................................................................................4

11 C.F.R. § 104.20(c).........................................................................................................4

11 C.F.R. § 104.20(c)(7) .................................................................................................5

11 C.F.R. § 104.20(c)(7)(ii) ........................................................................................5, 34

11 C.F.R. § 104.20(c)(9) ............................................................................................5, 34

11 C.F.R. §110.11 .............................................................................................................4

11 C.F.R. § 110.11(b)(3) .................................................................................................5

11 C.F.R. § 110.11(c)(4) ..................................................................................................5

11 C.F.R. § 110.11(c)(4)(iii)(A) ....................................................................................28

Bipartisan Campaign Reform Act ("BCRA"), Pub. L. 107-155 ........................... *passim*

Federal Election Campaign Act of 1971 ("FECA"), 2 U.S.C. §§ 431-455 .......... *passim*

***Miscellaneous***

11A Wright & Miller, *Federal Practice and Procedure* § 2948.1 (2007) ....................................37

FEC Advisory Opinion 1990-13 .....................................................................................26

FEC Advisory Opinion 1996-46 .....................................................................................26

FEC Advisory Opinion 2003-02 .....................................................................................26

LCvR 65.1(c) ...................................................................................................................25

Defendant Federal Election Commission ("Commission") files this memorandum of law

in opposition to Plaintiff's Motion for Preliminary Injunction.  Plaintiff's motion should be

denied because plaintiff has little likelihood of success on the merits of the case in light of the

important government interests in requiring disclosure regarding electioneering communications

("ECs").  Plaintiff also fails to demonstrate any constitutional burden it faces as a result of the

EC disclosure provisions, any irreparable harm that it will suffer in the absence of a preliminary

injunction, or any public interest that would be furthered by an injunction.

## I.    FACTUAL BACKGROUND

### A.    The Federal Election Commission

The Commission is the independent agency of the United States government with

exclusive jurisdiction over the administration, interpretation, and civil enforcement of the

Federal Election Campaign Act of 1971, as amended ("the Act" or "FECA"), codified at

2 U.S.C. §§ 431-455, and other statutes.  The Commission is empowered to "formulate policy"

with respect to the Act, 2 U.S.C. § 437c(b)(1); "to make, amend, and repeal such rules . . . as are

necessary to carry out the provisions of [the] Act," 2 U.S.C. §§ 437d(a)(8), 438(a)(8),(d); and to

issue written advisory opinions concerning the application of the Act and Commission

regulations to any specific proposed transaction or activity, 2 U.S.C. §§ 437d(a)(7), 437f.

### B.    Citizens United

According to its Complaint, plaintiff Citizens United is a nonprofit membership

corporation that is tax exempt under section 501(c)(4) of the Internal Revenue Code.  (Compl.

¶ 5.)  Citizens United was founded in 1998 to "inform[] and educat[e] the public on conservative

ideas and positions on issues."  (*Id.* ¶ 7.)  Its current annual budget is approximately $12 million.

(*Id.*)  It has a number of related entities, including Citizens United Foundation, which is

organized under section 501(c)(3) of the Internal Revenue Code; a separate segregated fund

(commonly referred to as a PAC) called the Citizens United Political Victory Fund; and two

entities organized under section 527 of the Internal Revenue Code, The Presidential Coalition,

LLC and 2007 Conservative Victory Committee.  *Id.* ¶ 7; David N. Bossie, *Looking Back at*

*2007*, Citizens United Blog, Dec. 4, 2007, http://www.citizensunited.org/blog/?entryid=2949601;

The Presidential Coalition, LLC, Form 8871, June 30, 2005,

http://forms.irs.gov/politicalOrgsSearch/search/Print.action?formId=16942&formType=E71;

2007 Conservative Victory Committee, Form 8871, May 9, 2007,

http://forms.irs.gov/politicalOrgsSearch/search/Print.action?formId=26221&formType=E71.

    *C.*       *Hillary: The Movie*

       Plaintiff has planned since at least January 2007 on distributing a movie about Senator

Clinton "in all of the early primary states."  *Hannity & Colmes: Analysis With Dick Morris* (Fox

News television broadcast Jan. 22, 2007), 2007 WLNR 1299920 (quoting Dick Morris, a

collaborator in the film, who also stated that "we're going to really showcase the inaccuracies of

everything that this woman has said").  On April 12, 2007, Mr. Morris explained that the film

would "really give people the flavor and an understanding of why she should not be President."

Transcript:  Dick Morris, *Hillary's Threat*, Santa Barbara, Calif., Apr. 12, 2007,

http://www.citizensunited.org/blog/?entryid=4563815.  In June, plaintiff's plans were to release

the film "by the end of the year, just as the first primary elections are held in New Hampshire."

Paul Harris, *Anti-Hillary Dirty Tricks War Hots Up*, Hindu, June 18, 2007, 2007 WLNR

13233887.  Plaintiff is in part financing the film with funds donated for partisan political reasons.

*See, e.g.*, Rick Reiff, *Lincoln Club Aims for Hillary*, Orange County Bus. J., Aug. 13, 2007, at 3,

2007 WLNR 17661739 (Orange County "support group" for the Republican Party pledged "a

low-six figure amount" toward the "documentary").

Plaintiff plans to release the movie "somewhere in the December 2007 to February 2008 time-frame." (Compl. ¶ 14.) Senator Clinton is a candidate for president and a number of states will hold primary elections or party caucuses in January. (*Id*. ¶ 17.) The movie "discusses her Senate record, her White House record during President Bill Clinton's presidency, and her presidential bid," including some statements by interviewees "on whether she would make a good president." *Id. See also* Trailer, *Hillary: The Movie*, http://www.hillarythemovie.com/trailer.html. Plaintiff alleges that its movie about Senator Clinton is an "issue-advocacy film" and contends that the time periods leading up to both the primary and general elections next year will be "times when the public's interest in Senator Clinton will be at its peak, which is the key to maximizing box office and DVD sales for *Hillary*." (Compl. ¶ 20.)

### D.    Plaintiff's Planned Advertising Campaign

On December 13, plaintiff filed a verified complaint and moved for a preliminary injunction regarding three advertisements that it alleges it wishes to air. (Compl. [Docket No. 1]; Pl.'s Mot. for Prelim. Inj. [Docket No. 5].) The audio of the first intended ad, a 10-second ad entitled "Wait," is "If you thought you knew everything about Hillary Clinton . . . wait 'til you see the movie." (Compl. Exh. 1.) The second ad, a ten-second ad entitled "Pants," includes a narrator saying "First a kind word about Hillary Clinton," Ann Coulter saying "She looks good in a pant suit," and then a narrator saying "Now a movie about everything else." (*Id.*) The third, a thirty-second ad entitled "Questions," contains three quotations regarding Senator Clinton, including Ann Coulter saying "[A]t least with Bill Clinton he was just good time Charlie. Hillary's got an agenda," and Dick Morris saying "Hillary is the closest thing we have in America to a European socialist." (*Id.*) All three ads contain images of Senator Clinton and, at

3

the end, the visuals "Hillary: The Movie" and "www.hillarythemovie.com" appear on the screen. (*Id.*)

## II.    STATUTORY AND REGULATORY PROVISIONS

In 2002, Congress enacted the Bipartisan Campaign Reform Act ("BCRA"), Pub. L. 107-155, which substantially amended FECA.  Section 201 of BCRA defines an "electioneering communication" as a "broadcast, cable, or satellite communication" that (a) refers to a clearly identified federal candidate, (b) is made within sixty days before a general election or thirty days before a primary election in which that candidate is running, and (c) is targeted to that election's voters.  *See* 2 U.S.C. § 434(f)(3)(A)(i).

Electioneering communications are subject to both reporting requirements, 2 U.S.C. § 434(f)(2); 11 C.F.R. § 104.20, and disclaimer requirements, 2 U.S.C. § 441d; 11 C.F.R. §110.11.[1]  The reporting requirements at issue in this case provide that any "person" (defined to include any corporation, labor organization, or other group, 2 U.S.C. § 431(11)) expending over $10,000 to produce or air an EC must file a statement with the Commission.  2 U.S.C. § 434(f)(2).  The statement must identify, in relevant part, the person making the EC disbursement, the amount and date of the disbursement, and, in the case of an EC made by a corporation "the name and address of each person who made a donation aggregating $1,000 or more to the corporation . . . for the purpose of furthering electioneering communications." 11 C.F.R. § 104.20(c).[2]  However, if the disbursement is made out of a "segregated bank account

---

[1]      The Commission herein refers jointly to the reporting and disclaimer requirements as the "disclosure requirements."  (*See* Compl. ¶ 1.)

[2]      The Commission recently approved amendments to its EC reporting regulations to conform to the Supreme Court's decision in *FEC v. Wisconsin Right to Life, Inc.*, 127 S. Ct. 2652 (2007), and to address the reporting requirements for corporations and labor organizations. *See* Electioneering Communications, http://www.fec.gov/law/cfr/ej_compilation/2007/notice_2007-26.pdf (approved Dec. 14, 2007,

established to pay for electioneering communications," the corporation making the EC need only

identify those individuals who contributed $1,000 or more to the account itself.  2 U.S.C.

§ 434(f)(2)(E); 11 C.F.R. § 104.20(c)(7).

The EC disclaimer provisions require that a televised EC include on the screen (1) "the

name and permanent street address, telephone number, or World Wide Web address of the

person who paid for the communication," and (2) a statement "that the communication is not

authorized by any candidate or candidate's committee."  2 U.S.C. § 441d(a)(3); 11 C.F.R.

§ 110.11(b)(3).  The EC must also include a statement that the entity funding the EC "is

responsible for the content of this advertising" — this statement must be (1) made orally by a

representative of the person making the EC, and (2) printed "for a period of at least 4 seconds"

on at least four percent of the screen.  2 U.S.C. § 441d(d)(2); 11 C.F.R. § 110.11(c)(4).

## ARGUMENT

### III.    A PRELIMINARY INJUNCTION IS AN EXTRAORDINARY REMEDY THAT REQUIRES THE PLAINTIFF TO MEET A HEAVY BURDEN

A party seeking a preliminary injunction bears a heavy burden to establish that it is

entitled to such relief.  To prevail, the movant must demonstrate:  (1) a "substantial likelihood of

success on the merits"; (2) that it would suffer irreparable harm if an injunction is not granted;

(3) that an injunction would not cause substantial injury to other parties; and (4) that the public

interest would be furthered by the injunction.  *CityFed Fin. Corp. v. Office of Thrift Supervision*,

58 F.3d 738, 746 (D.C. Cir. 1995).  "A preliminary injunction is an extraordinary remedy that

should be granted only when the party seeking the relief, by a clear showing, carries the burden

publication in Federal Register pending).  This memorandum refers to the revised provisions, 11
C.F.R. § 104.20(c)(7)(ii),(c)(9), as those would govern plaintiff's planned ECs.  *See id*. at 1
(providing that revised regulations will be effective on publication date).

of persuasion." *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).

In this case, Citizens United must shoulder a particularly heavy burden. First, "[t]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Plaintiff, however, is attempting to change the status quo by seeking an exemption from the generally applicable BCRA disclosure requirements that otherwise govern all ECs. Second, as we explain below, eight Justices of the Supreme Court voted to uphold the constitutionality of BCRA's disclosure requirements on their face. *See infra* Part IV.A (discussing *McConnell v. FEC*, 540 U.S. 93 (2003)). *McConnell*'s holding greatly strengthens "[t]he presumption of constitutionality which attaches to every Act of Congress." *Walters v. Nat'l Ass'n of Radiation Survivors*, 468 U.S. 1323, 1324 (1984) (Rehnquist, J., in chambers). That presumption "'is not merely a factor to be considered in evaluating success on the merits, but an equity to be considered in favor of … [the government] in balancing hardships.'" *Bowen v. Kendrick*, 483 U.S. 1304 (1987) (Rehnquist, C.J., in chambers) (quoting *Walters*, 468 U.S. at 1324). In fact, Chief Justice Rehnquist relied on this very presumption in denying an application to vacate a stay of judgment entered by the three-judge court that had held portions of BCRA unconstitutional in *McConnell*. *McConnell*, 02A989, 02A990, Slip Op. at 1 (May 23, 2003).

More recently, the Supreme Court denied a plaintiff's request for an injunction barring enforcement of BCRA's EC financing restrictions pending appeal, explaining that "[a]n injunction pending appeal barring the enforcement of an Act of Congress would be an extraordinary remedy, particularly when this Court recently held that Act facially constitutional." *Wisconsin Right to Life, Inc. v. FEC*, 542 U.S. 1305, 1306 (2004) (Rehnquist, C.J., in chambers)

(citing *McConnell*, 540 U.S. at 189-210).  In fact, in all three prior actions filed by Citizens

United's counsel to challenge the EC provisions, the plaintiff has requested and been denied a

preliminary injunction against enforcement of the Act.  *See id.*; *Wisconsin Right to Life, Inc. v.

FEC*, Civ. No. 04-1260, 2006 WL 2666017 (D.D.C. Sept. 14, 2006); *Christian Civic League of

Maine, Inc. v. FEC*, 433 F. Supp. 2d 81 (D.D.C. 2006).

## IV.   PLAINTIFF CANNOT DEMONSTRATE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

### A.     The Disclosure Requirements Are Constitutional On Their Face

Immediately after BCRA was passed, Citizens United and other plaintiffs challenged the

constitutionality of the same EC disclosure provisions that are at issue here, as well as BCRA's

prohibition on corporate financing of ECs.  The Supreme Court rejected each of these challenges

in *McConnell*, 540 U.S. at 196-99, 203-09, 230-31.  Regarding the reporting requirements, the

Court held that they are consistent with the First Amendment because "important state interests,"

namely "providing the electorate with information, deterring actual corruption and avoiding any

appearance thereof, and gathering the data necessary to enforce more substantive electioneering

restrictions . . . amply support[ ] application of [the] disclosure requirements to the entire range

of electioneering communications." *Id.* at 196 (internal quotation marks omitted).  The Court

acknowledged that there may be limited instances in which the First Amendment burdens of

disclosure might outweigh these government interests as to particular organizations, and the

Court explained how the lower courts should decide such cases, but left resolution of them to

future as-applied challenges.  *Id.* at 197-99; *see infra* Part IV.D.1 (explaining why plaintiff does

not meet *McConnell*'s requirements for as-applied challenges).  Five Justices joined this opinion,

and three additional Justices agreed that the reporting requirements were constitutional because

they "substantially relate" to the informational interest cited by the majority.  *Id.* at 321 (opinion

of Kennedy, J.).  Regarding the disclaimer requirements, Chief Justice Rehnquist, writing for

eight Justices, upheld the provisions as bearing "a sufficient relationship to the important

governmental interest of 'shed[ding] the light of publicity' on campaign financing."  *Id*. at 231

(quoting *Buckley v. Valeo*, 424 U.S. 1, 81 (1976)).  Finally, the Court rejected a facial challenge

to BCRA § 203, which prohibited corporations or labor unions from using general treasury funds

to pay for electioneering communications, 2 U.S.C. § 441b(b)(2).  *Id*. at 206.

Four years later, in *FEC v. Wisconsin Right to Life, Inc.,* the Supreme Court again

addressed BCRA's EC provisions.  The subject of that case, however, was not disclosure, but

funding — specifically, it was an as-applied challenge to § 441b(b)(2)'s prohibition on corporate

funding of ECs.  In fact, the plaintiff in *WRTL* explicitly disavowed any challenge to the

disclosure provisions.  *Wisconsin Right to Life, Inc. v. FEC*, Civ. No. 04-1260, Verified Compl.

for Declaratory and Injunctive Relief ¶ 36 (D.D.C. July 28, 2004) ("WRTL does not challenge

the reporting and disclaimer requirements for electioneering communications, only the

prohibition on using its corporate funds for its grass-roots lobbying advertisements.").[3]  The

Court's controlling opinion (written by Chief Justice Roberts and joined by Justice Alito) held

that corporations may fund an EC unless the communication is the functional equivalent of

express advocacy, which the Chief Justice defined as a communication that "is susceptible of no

reasonable interpretation other than as an appeal to vote for or against a specific candidate."

*FEC v. Wisconsin Right to Life, Inc.*, 127 S. Ct. 2652, 2667 (2007) ("*WRTL*").  This holding

---

[3]    WRTL further informed the Court that "[b]ecause WRTL does not challenge the
disclaimer and disclosure requirements, there will be no ads done under misleading names.
*There will continue to be full disclosure of all electioneering communications, both as to
disclaimers and public reports.  The whole system will be transparent.*  With all this information,
it will then be up to the people to decide how to respond to the call for grassroots lobbying on a
particular governmental issue."  Br. for Appellee, *FEC v. Wisconsin Right to Life, Inc.*, S. Ct.
Nos. 06-969, 06-970, at 49 (emphasis added).

thereby created two categories of communications that meet the statutory definition of an EC: (1) ECs that are the functional equivalent of express advocacy, which are subject to the corporate funding restriction; and (2) ECs that are susceptible of an interpretation other than as an appeal to vote for or against a specific candidate (hereinafter "*WRTL* ads"), which may be financed with the general treasury funds of corporations or unions.

Contrary to plaintiff's contention, however, the Court did not hold that all *WRTL* ads are "issue speech": The Chief Justice explicitly noted that the distinction between campaign and issue speech "dissolve[s] in practical application," and held that *funding* limitations act to "suppress[ ]" speech susceptible of multiple interpretations, contrary to the First Amendment. *Id*. at 2669 (internal quotation marks omitted). *WRTL* did not decide — either explicitly or tacitly — the question of whether *WRTL* ads may constitutionally be subject to BCRA's EC *disclosure* provisions, which, the Court had previously held, do not suppress speech. *See McConnell*, 540 U.S. at 197-99, 201 ("[FECA's] disclosure requirements are constitutional because they 'd[o] not prevent anyone from speaking.'") (quoting *McConnell v. FEC*, 251 F. Supp. 2d 176, 241 (D.D.C. 2003)).

Although WRTL did not challenge any disclosure provisions, and although disclosure is not mentioned anywhere in the *WRTL* opinion, plaintiff now attempts to construe the decision as having addressed the issue and decided that all *WRTL* ads are exempt from all "regulation," including both financing restrictions and disclosure requirements. (Pl.'s Mem. in Support of Preliminary Injunction Mot. ("Pl.'s Mem.") at 21-22 & n.13.) Plaintiff's argument must fail, for it misinterprets the meaning of the *WRTL* language on which it relies. The decision in that case turned, in part, on the Commission's argument that the EC financing restriction was merely a funding *regulation*, not a speech *prohibition*. *See* Br. for Appellant FEC, *FEC v. Wisconsin*

9

*Right to Life, Inc.*, S. Ct. Nos. 06-969, 06-970, at 7 (arguing that *McConnell* held financing restriction to be regulation rather than "complete ban").[4]  The Court rejected the Commission's distinction, using the term "regulation" to make clear that the financing provision was unconstitutional as applied to certain ads even though it was not an outright prohibition.  *See WRTL*, 127 S. Ct. at 2671 n.9 (rejecting distinction).  But the Court nowhere suggested that disclosure was also unconstitutional or that its use of the word "regulation" encompassed disclosure provisions of any kind.  Indeed, if the Court had been using the word "regulation" as imagined by plaintiff, it was tacitly deciding an issue that was not presented in the case.  It defies logic to believe that the Court would issue such a momentous ruling — striking down an act of Congress and significantly limiting *McConnell — sub silentio*.  *See Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 449 n.4 (2004) (noting that Court is unlikely to overrule its own recent decisions *sub silentio*).  Thus, there is no reasonable basis for plaintiff's claim that the term "regulation," as used in *WRTL*, includes disclosure.[5]

In summary, *McConnell* upheld the EC disclosure provisions on their face, and nothing in *WRTL* stands to the contrary.  It is true, as plaintiff contends, that the Court's "rejection of [the] facial challenge to the requirement to disclose individual donors [did] not foreclose possible future challenges to particular applications of that requirement."  *McConnell*, 540 U.S. at 199. *McConnell* reiterated the burden of proof that a plaintiff must meet to succeed in such a

---

[4]     *McConnell* had explained that "[b]ecause corporations can still fund electioneering communications with PAC money [raised in a separate segregated fund, 2 U.S.C. § 441b(b)], it is 'simply wrong' to view the provision as a 'complete ban' on expression rather than a regulation."  540 U.S. at 204 (citation omitted).

[5]     To the extent that plaintiff's motion can be read to argue that the constitutional limitations on financing and disclosure provisions are necessarily coterminous — *i.e.*, that *WRTL* ads must be exempt from disclosure because they are exempt from funding restrictions — such an argument is plainly contrary to law.  *See infra* Part IV.B (collecting cases in which courts have struck down financing restrictions but upheld disclosure provisions).

challenge, and noted that the parties — including Citizens United — had not presented enough specific evidence to meet that burden. *See infra* Part IV.D.1. Thus, Citizens United must show a substantial likelihood of success on its argument that it can now meet the as-applied burden defined in *McConnell* and earlier cases. For the reasons discussed below, plaintiff plainly cannot meet this burden.

### B.     The Disclosure Requirements Are Subject To Intermediate Scrutiny

It is well established that First Amendment challenges to disclosure statutes are analyzed under an "exacting scrutiny" standard, which requires that the compelled disclosure bear a "substantial relation" to an important government interest. *Buckley*, 424 U.S. at 64, 66, 75; *see also McConnell*, 540 U.S. at 196, 231; *Buckley v. Am. Constitutional Law Found., Inc.*, 525 U.S. 182, 202 (1999) ("In [*Buckley*], we stated that 'exacting scrutiny' is necessary when compelled disclosure of campaign-related payments is at issue [and] upheld, as substantially related to important governmental interests, the recordkeeping, reporting, and disclosure provisions of [FECA] . . . ."); *Alaska Right To Life Comm. v. Miles*, 441 F.3d 773, 788 (9th Cir. 2006) (describing standard applied in *McConnell*).[6]  As the Ninth Circuit has explained, *McConnell* "did not apply 'strict scrutiny' or require a 'compelling state interest.'  Rather, the Court upheld the disclosure requirements as supported merely by 'important state interests.'" *Alaska Right To Life*, 441 F.3d at 788 (internal citations omitted). Thus, "exacting scrutiny," as courts apply it to disclosure statutes, is identical to the constitutional standard more commonly known as

---

[6]      *See also Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 663 (5th Cir. 2006); *Jones v. Unknown Agents of FEC*, 613 F.2d 864, 875 (D.C. Cir. 1979) (citing *Buckley*); *Jackson v. Leake*, 476 F. Supp. 2d 515, 525 (E.D.N.C. 2006) (citing *Buckley* and *McConnell*); *Colo. Right To Life Comm., Inc. v. Davidson*, 395 F. Supp. 2d 1001, 1015 (D. Colo. 2005) (citing *Buckley*); *Herschaft v. New York City Campaign Fin. Bd.*, 127 F. Supp. 2d 164, 167 (E.D.N.Y. 2000) ("[T]he government's interests must be 'sufficiently important to outweigh the possibility of infringement' and there must be a 'relevant correlation' or 'substantial relation' between the governmental interests and the information required to be disclosed.") (quoting *Buckley*).

intermediate scrutiny.  *See Adarand Constr., Inc. v. Pena*, 515 U.S. 200, 220 (1995) (noting that intermediate scrutiny standard requires statute to be "substantially related to the achievement of an important governmental objective").

Under this standard, the government need not demonstrate that the disclosure provision is the least restrictive means of furthering a government interest.  Nevertheless, in the electoral context the Supreme Court has found it significant that disclosure provisions are considerably less restrictive than contribution or expenditure restrictions.  *See Buckley*, 424 U.S. at 81-82 ("[T]he disclosure requirement … [is] a minimally restrictive method of furthering First Amendment values by opening the basic processes of our federal election system to public view."); *Homans v. Albuquerque*, 366 F.3d 900, 907-08 (10th Cir. 2004) ("[*Buckley*] rejected the anti-corruption rationale in reviewing FECA's campaign-expenditure limits, concluding that the interest in preventing corruption was served adequately in that case by . . . disclosure provisions.").  Thus, the Court has frequently upheld disclosure requirements even when striking down substantive restrictions on the funds to be disclosed.  *See, e.g.*, *FEC v. Mass. Citizens for Life, Inc.*, 479 U.S. 238, 262 (1986) ("*MCFL*") (striking down independent expenditure restrictions on certain non-profit organizations in part because "reporting obligations provide precisely the information necessary to monitor MCFL's independent spending activity"); *Citizens Against Rent Control v. Berkeley*, 454 U.S. 290, 298-99 (1981) (striking down contribution limits governing ballot initiative groups because "there is no risk that the Berkeley voters will be in doubt as to the identity of those whose money supports or opposes a given ballot measure since contributors must make their identities known under . . . the ordinance, which requires publication of lists of contributors in advance of the voting"); *id*. at 303 ("Berkeley need not impose a $250 ceiling on contributions to encourage disclosure so long as it vigorously

12

enforces its already stringent disclosure laws.") (Blackmun, J., concurring in judgment); *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 791-92 n.32 (1978) (striking down prohibition on corporate expenditures to support or oppose ballot initiatives but noting that "[i]dentification of the source of advertising may be required as a means of disclosure, so that the people will be able to evaluate the arguments to which they are being subjected"); *R.I. Affiliate Am. Civil Liberties Union, Inc. v. Begin*, 431 F. Supp. 2d 227, 239 (D.R.I. 2006) (citing *Berkeley* and *MCFL* as cases in which Supreme Court found funding restrictions unnecessary in light of disclosure requirements).

Citizens United does not argue that a different standard of review applies. Instead, plaintiff states that, "regardless of the level of scrutiny," the first constitutional inquiry in the disclosure context must be whether the activity giving rise to the disclosure requirement is "unambiguously campaign related." (Pl.'s Mem. at 20 (quoting *Buckley*, 424 U.S. at 80).) Plaintiff argues, in effect, that the First Amendment always prohibits the government from mandating disclosure regarding advertising — unless the speech unambiguously advocates the election or defeat of candidates. This assertion lacks any basis in law and misinterprets *Buckley* and its progeny.

Plaintiff distorts *Buckley* by contending that the decision enshrined the phrase "unambiguously campaign related" as a stand-alone constitutional "test" or "requirement" (Pl.'s Mem. at 14) that all disclosure statutes must pass. On the contrary, this phrase was merely part of the Court's explanation that its statutory construction of "expenditure" in one part of the Act's disclosure provisions would resolve "serious problems of vagueness," *Buckley*, 424 U.S. at 76 — a problem that the Court has explicitly noted does not arise in the context of BCRA's EC definition. *McConnell*, 540 U.S. at 194 ("[W]e observe that [BCRA's] definition of

13

'electioneering communication' raises none of the vagueness concerns that drove our analysis in *Buckley*.").  To the extent that *Buckley* caused any confusion on this point, the Court put the question to rest in *McConnell*, which, in upholding BCRA's EC provisions, noted that *Buckley*'s "express advocacy limitation, in both the expenditure and the disclosure contexts, was the product of statutory interpretation rather than a constitutional command."  *McConnell*, 540 U.S. at 191-92.  Thus, *Buckley*'s interpretation of the term independent "expenditure" (when made by individuals or groups other than political committees) to mean spending that is "unambiguously related" to the campaign of a candidate, 424 U.S. at 80, has no bearing on the electioneering communication disclosure provisions; as the *McConnell* Court has explained, the definition of that term requires no narrowing construction to avoid vagueness.

Plaintiff's misinterpretation of *Buckley* is further demonstrated by the Supreme Court's subsequent cases addressing disclosure.  Indeed, plaintiff discusses (Pl.'s Mem. at 14-15 & n.6) several of these cases without ever mentioning the most salient fact about them:  The Supreme Court, while striking down certain *funding* restrictions, upheld the *disclosure* requirements in every decision that plaintiff cites.  First, in *Bellotti*, the Court struck down restrictions on corporate expenditures relating to ballot initiatives but upheld the disclosure requirements governing those expenditures.  435 U.S. at 791-92 n.32.  Second, in *Citizens Against Rent Control*, the Court struck down limits on contributions to ballot-initiative groups but upheld the disclosure requirements for those contributions.  454 U.S. at 298-99.  Third, in *MCFL*, the Court struck down limits on independent expenditures made by certain non-profit corporations, but it also held that the corporations could still be required to disclose those expenditures and the contributions received to help pay for them.  479 U.S. at 262; *see also infra* Part IV.C.2.

Moreover, in *McConnell* the Court upheld the disclosure requirements as "to *the entire range* of 'electioneering communications.'" 540 U.S. at 196 (emphasis added). Because *McConnell* recognized that "the entire range" of ECs includes both express advocacy and non-express advocacy, *id*. at 207 (discussing inclusion of some "pure issue ads" within EC definition), the Court's decision upholding the disclosure requirements necessarily means that it is constitutional to require disclosure for some advertising that is not express advocacy or "unambiguously campaign related." *See id*. In sum, plaintiff's proposition that the Constitution prohibits disclosure requirements that are not "unambiguously campaign related" is unsupported in the Supreme Court's disclosure jurisprudence.

Plaintiff's interpretation of *Buckley* is belied still further by the fact that courts since *Buckley* have repeatedly employed intermediate scrutiny — with no application of any "unambiguously campaign related" requirement — in assessing disclosure statutes governing non-campaign, issue advocacy. Specifically, courts have applied this standard and upheld disclosure of advertising that supports or opposes ballot initiatives and referenda, which the Supreme Court has explicitly found to be issue advertising, not advocacy about candidate elections. *See Buckley v. Am. Constitutional Law Found.*, 525 U.S. at 204 (applying exacting scrutiny and upholding requirement to disclose donations made to organizations to pay ballot-initiative petition circulators); *Citizens Against Rent Control*, 454 U.S. at 298-99; *Bellotti*, 435 U.S. at 791-92 n.32. This is particularly noteworthy because, as discussed below, the Court has found that ballot-initiative advertising poses none of the corruption risks of campaign-related expenditures but may still be subject to disclosure requirements. *See infra* Part IV.C.1. Thus, because the Constitution has no "campaign related" requirement for mandatory disclosure

regarding "pure" issue speech, Citizens United's argument that BCRA's disclosure requirements cannot be applied constitutionally to plaintiff's *WRTL* ads lacks merit.

Finally, in addition to contending that its planned advertising is "issue advocacy," (Pl.'s Mem. at 29) plaintiff also points out that the ads are actually commercial speech, *i.e.*, advertising the sale of a product. (*See*, *e.g.*, Pl.'s Mem. at 6 ("[The] Ads will promote showings of *Hillary: The Movie* in theaters and sales of *Hillary* in DVD format . . . . from major retailers such as Amazon.com."), at 7 (stating that ads will be timed "to maximiz[e] box office and DVD sales").) To the extent that plaintiff contends that the ads are commercial speech, mandatory disclosure of such speech is subject to even fewer constitutional restrictions than those governing disclosure of political advertising. *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 562-63 (1980) ("The Constitution . . . accords a lesser protection to commercial speech than to other constitutionally guaranteed expression."). In sum, therefore, there is no constitutional requirement that plaintiff's ads be unambiguously campaign related to be subject to disclosure requirements. Citizens United must demonstrate a substantial likelihood that this Court will declare the disclosure requirements unconstitutional under either an intermediate scrutiny standard or the lower standard applicable to commercial speech, and plaintiff cannot do so.

## C.    Disclosure Regarding Electioneering Communications Furthers Important Government Interests

The important government interests relating to disclosure of political activity are well recognized: "[D]isclosure serves informational functions, as well as the prevention of corruption and the enforcement of the contribution limitations." *Buckley*, 424 U.S. at 83; *see also McConnell*, 540 U.S. at 196. More specifically, courts have identified disclosure-related governmental interests in (a) encouraging maximum transparency in political activity by providing financial information to the public, (b) facilitating enforcement of substantive funding

16

regulations, and (c) deterring actual or apparent corruption.[7]  The informational and enforcement interests apply with full force to plaintiff's planned ads, as discussed below.

### 1.    Providing Information to the Public

The government's interest in providing information to the public was recognized in *Buckley*, which held the interest sufficient to justify mandatory disclosure of campaign financing and express advocacy.  *Buckley*, 424 U.S. at 66-67.  *McConnell* then applied *Buckley*'s holding regarding this interest to uphold the EC disclosure provisions.  *McConnell*, 540 U.S. at 196, 200-01; *see also id.* at 237-43 (upholding broadcast station record-keeping requirements in part to "help both the regulatory agencies and the public … determine the amount of money that individuals or groups, supporters or opponents, intend to spend to help elect a particular candidate").  Plaintiff engages in no analysis of *Buckley* or *McConnell*'s holdings on these points, instead resting its entire argument again on the premise that the government's only interest is in disclosure of "unambiguously campaign related" speech.  (*See* Pl.'s Mem. at 31.) Once more, however, plaintiff's assertion is contrary to law.

The government's informational interest has repeatedly been found to justify mandatory disclosure relating to two different forms of "pure" issue advocacy.  First, the informational interest has been recognized extensively in the context of issue advocacy regarding ballot initiatives.  *See, e.g.*, *Buckley v. Am. Constitutional Law Found.*, 525 U.S. at 204 (upholding requirement to disclose donations made to organizations to pay ballot-initiative petition

---

[7]    Regarding independent communications that meet the statutory definition of ECs, the government's anti-corruption interest under FECA has been judicially limited to express advocacy or its functional equivalent.  *See WRTL*, 127 S. Ct. at 2672.  Thus, because the Commission assumes for purposes of this motion that at least two of plaintiff's planned ads are not the functional equivalent of express advocacy (*see* Def.'s Mem. in Opp. to Pl.'s Mot. for Consol. at 8-9), the Commission is not relying upon an anti-corruption interest to justify disclosure requirements as applied to plaintiff's *WRTL* ads.

circulators); *Bellotti*, 435 U.S. at 792 n.32 ("Identification of the source of advertising may be required as a means of disclosure, so that the people will be able to evaluate the arguments to which they are being subjected."); *Calif. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1107 (9th Cir. 2003) (holding that state's informational interest, where factually supported, is sufficient to justify mandatory financial disclosure regarding ballot-initiative advocacy); *R.I. Affiliate*, 431 F. Supp. 2d at 236 (citing *Calif. Pro-Life Council*). This is particularly noteworthy here because the Supreme Court has held that ballot-initiative activity is inherently issue-focused and does not have the same corruptive potential as spending to influence candidate elections. *Bellotti*, 435 U.S. at 790 ("The risk of corruption perceived in cases involving candidate elections simply is not present in a popular vote on a public issue.") (internal citations omitted); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 353 n.15 (1995) (quoting *Bellotti*). For this reason, the *WRTL* Court itself considered ballot-initiative advertising to be analogous to *WRTL* ads for First Amendment purposes. *See WRTL*, 127 S. Ct. at 2664-65 (citing *Bellotti*), 2671-73 (same); *see also id*. at 2677 (Scalia, J., concurring) (noting that "nonexpress advocacy" is "protected under *Buckley* and *Bellotti*"). Thus, any claim by plaintiff that the government has no interest in disclosure of non-campaign issue advocacy is contrary to Supreme Court precedent and must fail: The interest necessarily extends to issue speech "so that the people will be able to evaluate the arguments to which they are being subjected." *Bellotti*, 435 U.S. at 792 n.32.

Second, courts are nearly unanimous in upholding mandatory disclosure of lobbying expenditures on the basis of the government's interest in informing the public of who is attempting to sway the resolution of public issues and how they are attempting to do so. *See*, *e.g.*, *United States v. Harris*, 347 U.S. 612, 625 (1954) ("[F]ull realization of the American ideal of government by elected representatives depends to no small extent on their ability to properly

evaluate such pressures."); *Fla. League of Prof'l Lobbyists, Inc. v. Meggs*, 87 F.3d 457,

460 (11th Cir. 1996) (upholding state lobbyist disclosure statutes in light of state interest in

helping citizens "apprais[e] the integrity and performance of officeholders and candidates, in

view of the pressures they face"); *Minn. State Ethical Practices Bd. v. Nat'l Rifle Ass'n of Am.*,

761 F.2d 509, 512 (8th Cir. 1985) (quoting *Harriss*).[8]  Lobbying, like issue advocacy, is not

directed at candidate campaigns; it is issue-oriented political activity protected by the First

Amendment, and it therefore shares most of the key characteristics of *WRTL* advertising that the

Supreme Court found significant in that case.  See *WRTL*, 127 S. Ct. at 2667 ("The ads focus on

a legislative issue [and] take a position on the issue . . . .  The ads do not mention an election,

candidacy, political party, or challenger . . . .").  Thus, these cases make clear that the

government's interest in providing information to the public extends beyond speech about

candidate elections and encompasses activity that attempts to sway public opinion on issues, just

as plaintiff claims to wish to do here.[9]

---

[8]     *See also Comm'n on Indep. Coll. & Univ. v. N.Y. Temp. State Comm'n on Regulation of Lobbying*, 534 F. Supp. 489, 494-95 (N.D.N.Y. 1982) ("The lobby law serves to apprise the public of the sources of pressure on government officials, thus better enabling the public to access their performance."); *Am. Civil Liberties Union of N.J. v. N.J. Election Law Enforcement Comm'n*, 509 F. Supp. 1123, 1129 (D.N.J. 1981) ("The voting public should be able to evaluate the performance of their elected officials in terms of representation of the electors' interest in contradistinction to those interests represented by lobbyists.") (citation omitted); *Kimbell v. Hooper*, 665 A.2d 44, 49 (Vt. 1995) ("Vermont's lobbyist disclosure law is a reasonable means of evaluating the lobbyist's influence on the political process.").

[9]     As Chief Justice Roberts noted when he reaffirmed *Buckley*'s holding that the "'distinction between discussion of issues and candidates and advocacy of election or defeat of candidates may often dissolve in practical application,'" *WRTL*, 127 S. Ct. at 2669 (quoting *Buckley*, 424 U.S. at 42), an ad may both resemble advocacy for or against candidates and advocate a position on an issue.  While the decision in *WRTL* is clear that BCRA's financing restriction for electioneering communications cannot be applied to corporate spending unless the ad is susceptible of no reasonable interpretation other than candidate advocacy, that constitutional requirement does not vitiate the Court's recognition that many *WRTL* ads may in fact influence elections.  It thus makes sense that Congress placed administration of the disclosure requirements for all ECs within the Commission's jurisdiction, even though not all

In sum, even accepting *arguendo* the proposition that plaintiff's *WRTL* ads are issue speech, such ads still constitute attempts to sway public opinion or action on the specified issues, just as ballot-initiative advertising and lobbying activities are. In each of these areas, the government's informational interest has been uniformly recognized, and mandatory disclosure provisions have been consistently upheld.[10]

## 2.    *Facilitating Enforcement of Funding Regulations*

The second important government interest courts have recognized in upholding disclosure statutes is the interest in enabling enforcement of substantive funding regulations. In the electoral context, *Buckley* upheld FECA's disclosure requirements as advancing the government's interest in "gathering the data necessary to detect violations of the contribution limitations." 424 U.S. at 68. *McConnell* similarly held that mandatory disclosure was constitutional in light of the interest in "gathering the data necessary to enforce more substantive electioneering restrictions." 540 U.S. at 196; *see also id.* at 200-01 (upholding compelled disclosure of executory contracts where to hold otherwise would "open a significant loophole" in disclosure requirements); *id.* at 237 (upholding broadcast station record-keeping provisions to "provide an independently compiled set of data for purposes of verifying candidates' compliance

---

ECs contain express advocacy or its functional equivalent. This situation is analogous to *McConnell*'s holding accepting the FCC's argument that its BCRA-mandated regulations regarding issue advertising were substantially related to the government's interest in detecting violations of FECA, even though the FCC has no other oversight responsibilities over that Act. *See McConnell*, 540 U.S. at 237; *see also Alaska Right to Life*, 441 F.3d at 793 ("[E]ven if there were some relevant protection of issue advocacy, and even if disclosures of the nongroup entity's identity were required in connection with such issue advocacy, there is a compelling state interest justifying such a requirement.").

[10]    To the extent that plaintiff's *WRTL* ads are commercial speech, the government's informational interest and ability to require disclosure may be even stronger. *See Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 651-52 (1985) (upholding disclaimer requirements in attorney advertising); *Central Hudson*, 447 U.S. at 562-63 (noting "lesser protection" accorded to commercial speech).

with the disclosure requirements and source limitations of BCRA and [FECA]"); *cf. Daggett v. Comm'n on Gov't Ethics & Election Practices*, 205 F.3d 445, 466 (1st Cir. 2000) (upholding expenditure disclosure statutes to enable administration of public campaign financing system); *Jackson*, 476 F. Supp. 2d at 525 (same).

This enforcement interest is not limited to spending by candidates or those coordinating their spending with candidates. The Supreme Court has recognized Congress's "legitimate fear" that, if disclosure were limited to such spending, "efforts would be made, as they had been in the past, to avoid the disclosure requirements by routing financial support of candidates through avenues not explicitly covered by the general provisions of the Act." *Buckley*, 424 U.S. at 76 (internal quotation marks omitted). Thus, the government's interest as it relates to disclosure of independent campaign-related spending "can be as strong as it is in coordinated spending." *See Buckley*, 424 U.S. at 81; *Citizens for Responsible Gov't State Political Action Comm. v. Davidson*, 236 F.3d 1174, 1197 (10th Cir. 2000) (upholding state disclosure requirements for independent expenditures); *Daggett*, 205 F.3d at 466 (same); *Adventure Commc'ns, Inc. v. Ky. Registry of Election Fin.*, 191 F.3d 429, 443 (4th Cir. 1999) (upholding mandatory disclosure of data regarding advertising for or against state candidates).

Nor is the enforcement interest limited to mandatory disclosure of disbursements by entities whose major purpose is campaign activity. For example, the Supreme Court in *MCFL* held that the defendant corporation must be allowed to finance independent expenditures with its corporate treasury funds because it presented no "threat at all" of corruption due to its particular lack of business activity and funding. 479 U.S. at 263. Nevertheless, the Court held that MCFL would have to report its independent expenditures so that the public would have information, the

Commission could monitor its independent spending, and the Commission could review whether

the corporation's major purpose has become campaign activity:

> Even if [the contribution limit] is inapplicable, an independent expenditure
> of as little as $250 by MCFL will trigger the disclosure provisions of
> § 434(c).  As a result, MCFL will be required to identify all contributors
> who annually provide . . . funds intended to influence elections, will have
> to specify all recipients of independent spending . . ., and will be bound to
> identify all persons making contributions . . . who request that the money
> be used for independent expenditures.  *These reporting obligations
> provide precisely the information necessary to monitor MCFL's
> independent spending activity and its receipt of contributions*. . . .
>
> Furthermore, should MCFL's independent spending become so extensive
> that the organization's major purpose may be regarded as campaign
> activity, the corporation would be classified as a political committee.  As
> such, it would automatically be subject to the obligations and restrictions
> applicable to those groups whose primary objective is to influence
> political campaigns.  In sum, there is no need for the sake of disclosure to
> treat MCFL any differently than other organizations that only occasionally
> engage in independent spending on behalf of candidates.

*Id. at* 262 (internal citation omitted and emphasis added); *see also McConnell*, 540 U.S. at

209-211 (interpreting BCRA to exempt *MCFL* corporations from prohibition on using corporate

treasury funds to finance ECs).  In other words, even though *MCFL* corporations may finance

independent expenditures and all electioneering communications with their general treasury

funds, FECA's disclosure provisions remain applicable to such corporations so that the

government can determine if and when they cross the line from exempt to regulable activity.

Analogously, even though the prohibition on corporate spending cannot constitutionally

be applied when corporations run *WRTL* ads, the EC disclosure provisions remain applicable to

such ads because the government has an important enforcement interest in determining which

ECs are exempt under *WRTL* and which are regulable.  The Ninth Circuit recognized such an

interest in *Alaska Right to Life*, in which the court analyzed a state disclosure statute similar in

both the reporting and disclaimer areas to FECA's disclosure provisions regarding ECs.  *See* 441

F.3d at 788-93.  The plaintiff in that case, an *MCFL* corporation, argued that "to the degree

disclosure . . . is required for 'issue advocacy' communications . . . , there is no compelling state

interest that would justify such a requirement."  *Id*. at 793.  The court rejected ARTL's

contention, noting that the *MCFL* Court itself had found sufficient state interests, including an

enforcement interest, to justify mandatory disclosure regarding MCFL's activities.  *Id*. at 791-93.

The Ninth Circuit therefore held that ARTL could constitutionally be compelled to make

disclosures regarding advertising that met the statutory definition of an EC but that consisted

only of issue advocacy — *i.e.*, what would now be known as *WRTL* ads.

This analysis applies with equal force to BCRA's EC disclosure provisions:  Without

disclosure, the Commission would have difficulty knowing when or where ECs are being

broadcast, and would therefore be seriously harmed in its ability to ensure that communications

purporting to be *WRTL* ads meet the criteria to be financed by corporate or union general

treasury funds.  Thus, requiring all EC advertisers to disclose serves the government's important

interest in "gathering the data" necessary to ensure that the Act is properly enforced.

**D.     Plaintiff Demonstrates No Constitutional Burden Arising From The Disclosure Provisions**

Citizens United cannot demonstrate any cognizable First Amendment burden arising

from the EC disclosure provisions.  In fact, plaintiff provides no evidence whatsoever of any

burden as to its claims against the reporting requirements, and its allegations of burdens from EC

disclaimers are so minimal that they cannot reasonably outweigh any important government

interests.

***1.   Plaintiff Presents No Evidence That Its Donors Will Suffer Reprisals***

Both *Buckley* and *McConnell* held that as-applied challenges to disclosure requirements

might be appropriate in a single situation:  when an organization's disclosure would result in a

23

"reasonable probability" of "threats, harassment, and reprisals" of its members.  *McConnell*, 540

U.S. at 198-99 (citing *Buckley*, *NAACP v. Alabama*, 357 U.S. 449 (1958), and *Brown v. Socialist*

*Workers '74 Campaign Comm.*, 459 U.S. 87 (1982)); *see also Buckley*, 424 U.S. at 69-74, 82

n.109 (citing *NAACP*).  This appears to be the burden to which plaintiff refers in claiming that its

donors "may then be subject to various forms of retaliation by political opponents."  (Compl.

¶ 23; Pl.'s Mem. at 8.)  Proof of burdensome reprisal has been demonstrated, however, only in

cases involving organizations, such as the NAACP and the Socialist Workers Party, whose

members faced actual, documented danger at the relevant time.  *See Buckley*, 424 U.S. at 69

(noting that plaintiffs in *NAACP* faced "economic reprisal, loss of employment, physical

coercion, and other manifestations of public hostility") (citation omitted); *McConnell*, 540 U.S.

at 198-99 (noting that *Brown* Court found "reasonable probability" of "threats, harassment, and

reprisals").  The *Buckley* and *McConnell* Courts, while recognizing harassment as a *potential*

burden, specifically found no evidence of *actual* harassment in the FECA/BCRA context and

held that such evidence would be required to mount a reprisal-based, as-applied First

Amendment challenge to the Act's disclosure provisions.  *Buckley*, 424 U.S. at 69 ("No

harassment on a similar scale was found in this case."); *McConnell*, 540 U.S. at 199 (upholding

lower court finding that "concerns" of plaintiffs regarding harassment were unsupported due to

"lack of specific evidence"); *see also Alaska Right To Life*, 441 F.3d at 793-94 (rejecting

harassment-based, as-applied challenge to disclosure requirements).[11]  Accordingly, in the

---

[11]     *See also Mariani v. United States*, 212 F.3d 761, 775 (3d Cir. 2000) (citing *Buckley* for
proposition that FECA disclosure provisions did not give rise to "reasonable probability" of
"threats, harassment, or reprisals"); *Jones*, 613 F.2d 864, 876-77 (rejecting minor party's claim
that FEC investigation subjected party to threats or harassment); *Colo. Right To Life*, 395
F. Supp. 2d at 1016 n.17 (rejecting First Amendment claim because plaintiff did not provide
evidence of threats or harassment arising from disclosure); *cf. In re Grand Jury Proceedings*,
776 F.2d 1099, 1103-04 (2d Cir. 1985) (holding that party asserting First Amendment

absence of specific evidence that a particular organization (or its members) faces a reasonable probability of *NAACP*-type harassment arising from the mandated disclosures, a plaintiff alleging this kind of burden cannot prevail in an as-applied challenge to the EC disclosure provisions.

Plaintiff provides no evidence whatsoever to support its conclusory allegation regarding reprisals against its members. The only support plaintiff can muster (Compl. ¶ 23; Pl.'s Mem. at 8) is a newspaper article, which, in addition to being inadmissible hearsay, has nothing to do with Citizens United.[12] In fact, plaintiff's statements to the public contradict any suggestion that Citizens United might make in this lawsuit that it is a marginalized group afraid of publicity; instead, it has portrayed itself as a large, well-connected, mainstream organization. *See* Joe Murray, *Lawsuit Threatened Over CNN's 'Campaign Killers'* The Bulletin (Dec. 6, 2007) (quoting written statement by plaintiff's spokesman that "Citizens United [is] hardly a 'fringe' group (unless consistent and open association with the former Speaker of the House, a current leading presidential candidate and numerous other leading Republicans can be considered 'fringe')"). Plaintiff has recently even threatened to file suit against a news organization for referring to Citizens United as a "fringe militia." *See* Press Release, Citizens United to Sue CNN, http://www.citizensunited.org/press/?entryid=1972618 (Dec. 4, 2007). Thus, for plaintiff to suggest that its members face the same level of reprisals as did the NAACP (in the 1950s) and

---

associational privilege to withhold organization's membership information from grand jury "must show a reasonable probability that compelled disclosure would subject an organization's members to threats, harassment, or reprisals from either government officials or private parties") (citing *Buckley*).

[12] The Local Rules prohibit plaintiff from attempting to cure its motion's evidentiary deficiencies with after-the-fact affidavits or declarations. LCvR 65.1(c) ("The application [for a preliminary injunction] shall be supported by *all* affidavits on which the plaintiff intends to rely.") (emphasis added).

the Socialist Workers Party would be facially absurd, and plaintiff's allegations of a reprisal

burden must accordingly fail.[13]

### 2. *Plaintiff Presents No Evidence That The Disclosure Requirements Will Chill Its Speech*

Plaintiff's second alleged constitutional burden appears to be a claim that the disclosure

requirements will chill its speech.  (*See* Compl. ¶¶ 26-27; Pl.'s Mem. at 33.)  To the extent that

this allegation is based on speculation that the reporting requirements may cause donors not to

contribute to plaintiff because of a fear of reprisal, the argument fails for the reasons stated

above.  *See supra* Part IV.D.1; *see also Buckley*, 424 U.S. at 68 (holding disclosure requirements

constitutional even though "[i]t is undoubtedly true that public disclosure of contributions . . .

will deter some individuals who otherwise might contribute.").  To the extent plaintiff claims that

the disclosure requirements will chill its speech directly, this argument has been explicitly

rejected in *McConnell* and numerous other cases holding that financial reporting relating to

speech is, as a matter of law, too removed in time and space from the speech act to constitute a

constitutional infringement.[14]  *See McConnell*, 540 U.S. at 197-99, 201 ("[FECA's] disclosure

---

[13]     If a donor faced a real threat of reprisal, the corporation could request that the Commission exempt disclosure of that donor from the relevant disclosure requirements on constitutional grounds, as the Socialist Workers Party has done repeatedly and successfully.  *See* FEC Advisory Opinions 1990-13 (granting party exemption from disclosure requirements due to substantiated threat of reprisals), 1996-46 (same), 2003-02 (same); *see also* Electioneering Communications, http://www.fec.gov/law/cfr/ej_compilation/2007/notice_2007-26.pdf, at 11 (approved Dec. 14, 2007, publication in Federal Register pending) ("Organizations with significant and serious threats of reprisal or harassment may seek as-applied exemptions to the disclosure requirements under *Socialist Workers* through advisory opinions and court filings.").  All FEC Advisory Opinions are available on the Commission's website at http://saos.nictusa.com/saos/searchao.

[14]     *McConnell* also quoted with approval the lower court's finding that the corporate plaintiffs challenging the disclosure provisions purported to seek "wide-open" speech, yet "[c]uriously" sought to hide such speech behind "dubious and misleading" organizational identities, thereby "ignor[ing] the competing First Amendment interests of individual citizens seeking to make informed choices in the political marketplace."  *McConnell*, 540 U.S. at 196-97.

requirements are constitutional because they 'd[o] not prevent anyone from speaking.'") (quoting *McConnell v. FEC*, 251 F. Supp. 2d 176, 241 (D.D.C. 2003)); *see also Buckley v. Am. Constitutional Law Found.*, 525 U.S. at 198 (rejecting challenge to requirement that petition circulators file affidavits); *Majors v. Abell*, 361 F.3d 349, 354 (7th Cir. 2004); *Citizens for Responsible Gov't*, 236 F.3d at 1199; *Am. Civil Liberties Union of Nev. v. Heller*, 378 F.3d 979, 1002 (9th Cir. 2004); *cf. Harriss*, 347 U.S. at 626 (rejecting First Amendment challenge to federal lobbyist disclosure statute because "hazard" of speech being silenced by financial disclosure was "too remote" to outweigh government's interest in protecting legislative process). Plaintiff provides no evidence whatsoever regarding any direct connection between the reporting requirements and plaintiff's allegedly chilled speech, much less any authority for the proposition that such a connection would be legally significant. Accordingly, the reporting requirements cannot be the grounds for the constitutional burden plaintiff must demonstrate to show a substantial likelihood of success on the merits of its case.

As to the disclaimer requirements, plaintiff states that these requirements "will preclude Citizens United from running its 10-second ads." (Compl. ¶ 27; Pl.'s Mem. at 9.) The Commission is aware of no authority — and plaintiff cites none — stating that a requirement to use a portion of a television commercial to convey important information relevant to that commercial creates a cognizable chill on the advertiser's ability to advertise. Indeed, federal and state governments often require extensive oral and written information to be included in various communications, such as advertising for attorneys, pharmaceuticals, securities, etc. As the Second Circuit has stated in rejecting a First Amendment challenge to a state labeling law:

> [W]e note the potentially wide-ranging implications of [plaintiff's] First Amendment complaint. Innumerable federal and state regulatory programs require the disclosure of product and other commercial information. *See*, *e.g.*, 2 U.S.C. § 434 (reporting of federal election

campaign contributions); 15 U.S.C. § 78l (securities disclosures); 15 U.S.C. § 1333 (tobacco labeling); 21 U.S.C. § 343(q)(1) (nutritional labeling); 33 U.S.C. § 1318 (reporting of pollutant concentrations in discharges to water); 42 U.S.C. § 11023 (reporting of releases of toxic substances); 21 C.F.R. § 202.1 (disclosures in prescription drug advertisements); 29 C.F.R. § 1910.1200 (posting notification of workplace hazards); Cal. Health & Safety Code § 25249.6 ("Proposition 65"; warning of potential exposure to certain hazardous substances); N.Y. Envtl. Conserv. Law § 33-0707 (disclosure of pesticide formulas).  To hold that the Vermont statute is insufficiently related to the state's interest in reducing mercury pollution would expose these long established programs to searching scrutiny by unelected courts.  Such a result is neither wise nor constitutionally required.

*Nat'l Elec. Mfrs. Ass'n v. Sorrell*, 272 F.3d 104, 116 (2d Cir. 2001).  In each of these areas, the advertiser undoubtedly would prefer to use its time and space for content other than a disclaimer, but the disclaimer requirements do not prevent plaintiff from advertising — they only result in plaintiff, like all advertisers subject to regulation, having to purchase a few seconds of additional advertising time, which is not a burden of constitutional dimension.[15]

### 3.    The Disclosure Requirements Do Not "Mislead The Public"

Plaintiff's third alleged burden, arising from both the disclaimer and reporting requirements, is that the requirements will cause plaintiff to "mislead the public" by "identifying its speech as electioneering speech."  (Compl. ¶ 27; Pl.'s Mem. at 9.)  This allegation has no basis in fact or law.  As noted *supra* Part II, BCRA requires the following disclosures relating to televised ECs:

(1)    A statement filed with the Commission identifying (a) the entity making the EC disbursement, (b) the amount, date, and recipient of the disbursement, and (c) the

---

[15]    Although plaintiff conflates the written and spoken disclaimer provisions into a single "Disclaimer Requirement" (Compl. ¶ 1) that allegedly "deprives Citizens United of valuable time in its short and expensive broadcast Ads" (Compl. ¶ 27), the written disclaimer provision has no effect on an advertiser's ability to use its time as it wishes.  *See* 11 C.F.R. §110.11(c)(4)(iii)(A) (providing that written disclaimer may be as small as four percent of vertical height of television screen).

names and addresses of each person who donated at least $1,000 "for the purpose of furthering electioneering communications";

(2)    A written statement on the screen (a) listing "the name and permanent street address, telephone number, or World Wide Web address of the person who paid for the communication," (b) stating that "that the communication is not authorized by any candidate or candidate's committee," and (c) stating that the entity funding the EC "is responsible for the content of this advertising"; and

(3)    An oral statement that the entity funding the EC "is responsible for the content of this advertising."

Contrary to plaintiff's unexplained assertion, none of these provisions requires Citizens United to identify its ads as "electioneering speech."  In fact, the disclaimer requirements are precisely worded so that plaintiff need only take responsibility "for the content of *this advertising*," with no additional characterization or definition.  Plaintiff does not explain how such a statement could "mislead" the public.

In *Meese v. Keane*, 481 U.S. 465 (1987), the Supreme Court considered and rejected an argument identical to the one now raised by Citizens United.  The *Meese* plaintiff, who wished to exhibit certain films, claimed his First Amendment rights were violated by a statute that required the films to be labeled "political propaganda."  *Id*. at 467-68.  The Court denied this claim and held that the plaintiff's rights were not violated because: (a) the plaintiff was free to go beyond the required disclosures to explain to his audience that the films were not "propaganda" in the common understanding of the term, *id*. at 480-81; (b) the statute did not require any information to be withheld from the public, *id*. at 481-82; (c) "a zeal to protect the public from too much information" does not state a constitutional claim, *id*. at 482 (internal quotation marks omitted); (d) there was no evidence on the record that the public misunderstood the label, *id*. at 483; and (e) "no constitutional provision prohibits the Congress" from using whatever labels it wishes to use in defining terms within legislation, *id*. at 484-85.  Each of these rationales applies with equal force here:  Plaintiff is free to explain the meaning of the term "electioneering" as much as

29

it wishes, the statute withholds no information from the public, there is no evidence that the public is confused by EC disclaimers, and Congress was entirely within its power to use the term "electioneering communication" instead of whatever term plaintiff would prefer.

In sum, therefore, plaintiff fails to state a cognizable claim that the disclosure requirements unconstitutionally burden Citizens United by misleading the public, and plaintiff accordingly cannot demonstrate that its burden outweighs the government's important interests sufficiently to warrant the entry of a preliminary injunction.

### 4.    Administrative Burdens Do Not Infringe On Plaintiff's Constitutional Rights

Plaintiff's final alleged burden is that compliance with the disclosure requirements will cost Citizens United "valuable time and resources." (Compl. ¶ 27; Pl.'s Mem. at 9.) This allegation does not state a claim under the First Amendment. As a nonprofit corporation (particularly one engaged in commercial activity), plaintiff is required to file statements with the Internal Revenue Service, state regulators, and any number of other government agencies, with each such filing demanding the "time and resources" of the corporation and its agents. The Commission has located no case — and plaintiff cites none — in which such requirements have been found significant enough to outweigh *any* government interest, much less the important government interests that underlie BCRA's disclosure requirements. *See McConnell*, 540 U.S. at 235 (upholding BCRA's broadcaster record-keeping requirement against administrative burden challenge); *Adventure Commc'ns*, 191 F.3d at 443 (rejecting administrative burden argument); *Davis v. FEC*, 501 F. Supp. 2d 22, 32-33 (D.D.C. 2007) (rejecting administrative burden challenge to BCRA requirement that spending statement be filed within twenty-four hours of expenditure).

E.    **The Important Government Interests In Disclosure Outweigh All Of Plaintiff's Alleged Constitutional Burdens**

For the foregoing reasons, the Commission has important government interests in the disclosure provisions at issue here.  Specifically, the Commission has important interests in providing information to the public regarding the financing of plaintiff's issue/commercial speech, and in enforcing the substantive restrictions applicable to ECs.  Plaintiff has provided neither factual evidence nor legal authority for the proposition that the disclosure provisions constitute a burden on Citizens United's First Amendment rights.  Accordingly, plaintiff has not demonstrated a likelihood of success on the merits of its case, and its motion for a preliminary injunction must therefore fail.

## V.    PLAINTIFF FAILS TO DEMONSTRATE IRREPARABLE INJURY

Citizens United fails to meet its burden of demonstrating that it will suffer irreparable harm in the absence of a preliminary injunction, the second factor that the Court must consider.  The D.C. Circuit "has set a high standard for irreparable injury."  *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006).  The "injury must be both certain and great," and "actual and not theoretical."  *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985).  Plaintiff must also "show that [t]he injury complained of [is] of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm."  *Id.* (internal citation and quotation marks omitted).  Further, the prospective injury must be "beyond remediation."  *Chaplaincy*, 454 F.3d at 297.

In addition, if the requested relief "would alter, not preserve, the *status quo* . . . [a plaintiff] must meet a higher standard than [if] the injunction [plaintiff] sought [were] merely prohibitory."  *Veitch v. Danzig*, 135 F. Supp. 2d 32, 35 (D.D.C. 2001).  In the area of First Amendment rights, "[a] litigant must do more than merely *allege* the violation" to demonstrate

31

irreparable harm. *Wagner v. Taylor*, 836 F.2d 566, 576 n.76 (D.C. Cir. 1987); *see also NTEU v. United States*, 927 F.2d 1253, 1254-55 (D.C. Cir. 1991).

### A.  Plaintiff's Alleged Injuries Are Neither Actual Nor Certain

Even outside the context of a preliminary injunction, as explained above, plaintiff fails to establish a constitutional burden resulting from the EC disclosure provisions. *See supra* Part IV.D.  Plaintiff presents no evidence that that its donors will suffer threats, harassment, and reprisals as a result of disclosure. *See supra* Part IV.D.1.  Plaintiff's failure is striking given that it has been disclosing the names and addresses of its members who have donated to its separate segregated fund (commonly referred to as a "PAC") for more than thirteen years. *See* Citizens United Political Victory Fund, Stmt. of Org. (June 15, 1994), http://query.nictusa.com/cgi-bin/fecimg/?_94039043287+0; Citizens United Political Victory Fund, Disclosure Reports, http://query.nictusa.com/cgi-bin/fecimg/?C00295527.  It has disclosed approximately 1,000 contributions from individuals in amounts of $200 or more during that time, complete with address and employer information for most of the individuals.  Citizens United Political Victory Fund, Individual Contributions, http://query.nictusa.com/cgi-bin/com_ind/C00295527/.  In spite of this considerable past disclosure regarding its members, Citizens United submits no evidence regarding any of its actual donors, let alone any evidence that they have suffered reprisals.

Far from being the subject of harassment, plaintiff has this month contended that it is a "mainstream" organization associated with former Speaker of the House Newt Gingrich and "numerous other leading Republicans." *See supra* Part IV.D.1.  "[T]o state the obvious, no comparable stigma attaches to association with Speaker Gingrich . . . as once attached to members of the Socialist Workers Party." *FEC v. GOPAC, Inc.*, 897 F. Supp. 615, 618 (D.D.C. 1995).  Plaintiff's sole support, a newspaper article discussing the location of FBI files during the

time that Senator Clinton's husband was President, falls considerably short of the "specific

evidence" of a "reasonable probability" of threats, harassment, and reprisals required.

*McConnell*, 540 U.S. at 198-99.  The conclusion plaintiff asks the Court to draw from its

purported evidence rests on a series of unstated assumptions and causal connections, and is

"highly speculative."  *Herschaft v. New York City Campaign Fin. Bd.*, 139 F. Supp. 2d 282, 285

(E.D.N.Y. 2001) (newspaper articles and testimony about "recent acts of violence against Jews

in New York City . . . [provide] simply no basis thereupon to conclude that contributors to

plaintiff's campaign for City Council will be targeted for threats or harassment").  Moreover, on

its face, plaintiff's allegation is based only "[o]n information and belief."  (Compl. ¶ 23.)

   Plaintiff also fails to show that disclosure related to its ads will unconstitutionally chill its

own corporate speech, mislead the public, or impose administrative burdens.  *See supra* Parts

IV.D.2-4.  Because Citizens United is unable to establish any such constitutional burden,

plaintiff clearly falls short of meeting the "high standard" necessary for a preliminary injunction,

the showing that the injury is "certain and great," "actual and not theoretical."

   Finally, the Court should reject plaintiff's attempt to recast the burden at issue as whether

plaintiff may air its advertisements.  (Compl. ¶ 26; Pl.'s Mem. 32-33.)  As explained *supra* Part

IV.D.1, the Supreme Court has recognized only a reasonable probability of harassment and

reprisal as proper grounds for an as-applied challenge to disclosure requirements.  Here, given

plaintiff's utter failure to establish any cognizable harm that would result from making the

necessary disclosures, there does not appear to be any reason for plaintiff not to proceed with its

advertisements and the necessary disclosures.  Thus, just as the Second Circuit rejected a claim

that filing financial disclosure forms would force school board members to resign absent a

preliminary injunction, this Court should reject plaintiff's unnecessary self-censorship as a

reason for preliminarily enjoining the Commission.  *Kaplan v. Bd. of Educ.*, 759 F.2d 256, 259 (2d Cir. 1985).  "[I]t would be the acts of non-compliance and not the implementation of the regulation which would be the cause of any such chaos."  *Id.*

**B.      Plaintiff Faces No Imminent Injury**

Plaintiff also fails to establish that "[t]he injury complained of [is] of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm."  *Wisconsin Gas*, 758 F.2d at 674 (internal citation and quotation marks omitted).  Several of plaintiff's allegations are by definition unlikely to occur soon, let alone imminently.

With respect to the alleged retaliation against disclosed donors, such retaliation could occur only after (1) plaintiff has raised over $1,000 from donors specifically for the purpose of furthering ECs, 11 C.F.R. § 104.20(c)(7)(ii),(9) (the complaint alleges only that plaintiff "will" have donors that it will be required to disclose), (2) plaintiff has run ECs, (3) plaintiff has filed disclosure reports, (4) potentially retaliatory third parties have viewed plaintiff's disclosure reports, and (5) those third parties have an opportunity to retaliate.  Particularly because Citizens United has failed to provide evidence that any of its donors fear retaliation, failed to name or describe who might be likely to engage in such retaliation, and failed to specify what the purported retaliation would encompass, plaintiff has provided only a long hypothetical sequence of events, which demonstrates that there is no "clear and present need for equitable relief." *Wisconsin Gas*, 758 F.2d at 674.  Hypothetical injuries are "far too speculative to warrant preliminary injunctive relief."  *Chaplaincy*, 454 F.3d at 298.

Similarly, plaintiff's alleged irreparable harm related to "criminal penalties" depends upon the institution and completion of an investigation.[16] (Pl.'s Mem. at 32.) Even setting aside the fact that the Commission has no criminal jurisdiction and that never in its history has it tried to enforce a prior restraint on anyone's speech, the harm plaintiff fears is far from imminent. Congress carefully designed the Act's enforcement procedures "to ensure fairness . . . to respondents." *See Perot v. FEC*, 97 F.3d 553, 559 (D.C. Cir. 1996). As Congress presumably was aware, under the Act's elaborate enforcement procedures — which include multiple opportunities for a respondent to file briefs and permit only a court to impose a remedy on a respondent unwilling to agree to one — "complaints filed shortly before elections . . . might not be investigated and prosecuted until after the event." *Id.* at 558-559 (recounting statutory enforcement procedures). Accordingly, the likelihood that plaintiff would suffer anything beyond an investigative proceeding during the life of a preliminary injunction is remote. *Wisconsin Right to Life, Inc.*, 2006 WL 2666017, at *5 ("[A]n FEC administrative investigation . . . carries little threat of imminent or certain sanction."). Even if an administrative proceeding during that time then concluded with the institution of an enforcement suit against plaintiff, Citizens United would then have a full opportunity to present its constitutional argument *de novo* to a federal court before it could be subject to any penalties for its conduct. *See* 2 U.S.C. § 437g(a)(4)-(6). That distant eventuality is manifestly not imminent. *Wisconsin Right to Life, Inc.*, 2006 WL 2666017, at *5 ("It is clear that even if an administrative investigation is opened, the investigation likely would not conclude until long after the . . . ad has been broadcast.").

---

[16]    The Commission has "exclusive jurisdiction with respect to the civil enforcement" of FECA, 2 U.S.C. § 437c(b)(1), and the Department of Justice has criminal jurisdiction, 28 U.S.C. § 516.

**C.     None of Plaintiff's Alleged Harms Is Beyond Remediation**

Finally, plaintiff must demonstrate that its alleged injury is "beyond remediation," *Chaplaincy*, 454 F.3d at 297, or "*irreparable*," *Wisconsin Gas*, 758 F.2d at 674.  As the D.C. Circuit has explained, "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough.  The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation weighs heavily against a claim of irreparable harm." *Chaplaincy*, 454 F.3d at 297-98.

None of plaintiff's claimed harms is irreparable.  For example, the administrative burdens that plaintiff claims arise from complying with the disclosure requirements constitute "[m]ere injuries" of "money, time and energy." *Id.* at 297.  Similarly, even if some of plaintiff's donors might donate less than $1,000 to Citizens United in the absence of a preliminary injunction, if plaintiff prevails on the merits such donors could make larger donations later to replace what they otherwise might have donated sooner.  In addition, the mere institution of an administrative enforcement proceeding is simply not irreparable harm.  As the Supreme Court has explained:

> [The plaintiff] argues that the expense and disruption of defending itself in
> protracted adjudicatory proceedings constitutes irreparable harm.  As indicated
> above, we do not doubt that the burden of defending this proceeding will be
> substantial. . . .  As we recently reiterated:  "Mere litigation expense, even
> substantial and unrecoupable cost, does not constitute irreparable injury."
> *Renegotiation Board v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974).

*FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980); *see also Sears Roebuck & Co. v. NLRB*, 473 F.2d 91, 93 (D.C. Cir. 1973).  Thus, any burden associated with responding to a possible future FEC enforcement proceeding cannot constitute irreparable harm warranting preliminary injunctive relief.  None of these alleged harms is "beyond remediation." *Chaplaincy*, 454 F.3d at 297.

In addition, a delay in moving for a preliminary injunction may "indicate [the] absence of irreparable harm required to support a preliminary injunction." *Rodriguez v. DeBuono*, 175 F.3d 227, 235 n.9 (2d Cir. 1999) (citations omitted); *Scott-Blanton v. Universal City Studios Prods. LLLP,* 495 F. Supp. 2d 74, 80 (D.D.C. 2007) ("[D]elay in bringing the motion weighs against a finding of irreparable harm."). Here, Citizens United has planned since at least January 2007 to distribute its movie about Senator Clinton "in all of the early primary states," yet it waited to file its preliminary injunction motion until December 13. *See supra* Part I.C. "[D]elay in seeking a remedy is an important factor bearing on the need for a preliminary injunction. Absent a good explanation, a substantial period of delay militates against the issuance of a preliminary injunction by demonstrating that there is no apparent urgency to the request for injunctive relief." *Gonannies, Inc. v. Goupair.Com, Inc.,* 464 F. Supp. 2d 603, 609 (N.D. Tex. 2006) (citations omitted); *see also* 11A Wright & Miller, *Federal Practice and Procedure* § 2948.1, 156 n.12 (2007). Plaintiff's failure to provide a "good explanation" for its delay is another indication that it faces no danger of irreparable harm. *Gonannies*, 464 F. Supp. 2d at 609.

### D. The Precedent That Plaintiff Relies Upon In Support Of Its Claim Of Irreparable Harm Is Inapposite

Plaintiff's legal support for its irreparable harm argument rests entirely upon cases that do not bolster its position. Most important, the instant case is entirely different from *Elrod v. Burns*, 427 U.S. 347 (1976). In that case the Supreme Court held that employee dismissal based on political party patronage was an unconstitutional infringement on employees' First Amendment rights. *Id.* at 372. But that holding rested on the specific finding that government employees had already been "threatened with discharge or had agreed to provide support for the Democratic Party in order to avoid discharge," and it was "clear therefore that First Amendment interests were either threatened or in fact being impaired at the time relief was sought." *Id.* at 373. Here,

37

however, plaintiff has not alleged any governmental action against it of any kind, let alone the

kind of imminent or actual threats that were present in *Elrod*. The D.C. Circuit has clearly

explained that *Elrod* did not eliminate a First Amendment plaintiff's burden to show that its

interests are actually threatened or in fact being impaired. *NTEU*, 927 F.2d at 1254-55; *Wagner*,

836 F.2d at 576-77 n.76; *see also Christian Knights of the Ku Klux Klan Invisible Empire, Inc. v.

District of Columbia*, 919 F.2d 148, 149-150 (D.C. Cir. 1990) (rejecting preliminary injunction

sought by Ku Klux Klan to require local government to issue parade permit for planned march

longer than one for which it had received permit, finding *Elrod* not controlling on irreparable

harm because shorter parade allowed in permit was not total denial of First Amendment rights);

*Wisconsin Right to Life, Inc. v. FEC*, Civ. No. 04-1260, 2004 WL 3622736, at *4 (D.D.C. Aug.

17, 2004) (rejecting WRTL's reliance on *Elrod*).[17]

Plaintiff's reliance upon *Virginia v. American Bookseller's Ass'n Inc.*, 484 U.S. 383, 393

(1988), is also meritless, because the quotation upon which plaintiff relies was part of the Court's

discussion of *standing*, not irreparable harm in the context of a request for a preliminary

injunction. That case involved a facial challenge to a statute, and the Supreme Court found that

if the plaintiffs' "interpretation of the statute [were] correct, [they would] have to take significant

and costly compliance measures or risk criminal prosecution." *Id.* at 392. The Court found

that kind of alleged infringement was sufficient to allege an injury in fact under Article III, but

---

[17]     *See also*, *e.g.*, *Hohe v. Casey*, 868 F.2d 69, 72-73 (3d Cir. 1989) ("[A]ssertion of First
Amendment rights does not automatically require a finding of irreparable injury, thus entitling a
plaintiff to a preliminary injunction if he shows a likelihood of success on the merits."); *Time
Warner Cable of New York City v. Bloomberg L.P.*, 118 F.3d 917, 924 (2d Cir. 1997) ("[It is
often] more appropriate to determine irreparable injury by considering what adverse factual
consequences the plaintiff apprehends if an injunction is not issued, and then considering
whether the infliction of those consequences is likely to violate any of the plaintiff's rights.");
*Piscottano v. Murphy*, 317 F. Supp. 2d 97, 102 (D. Conn. 2004).

the case had nothing to do with the showing of irreparable harm necessary to obtain a preliminary injunction.

Because plaintiff has made "no showing of irreparable injury, 'that alone is sufficient' for a district court to refuse to grant preliminary injunctive relief." *Hicks v. Bush*, 397 F. Supp. 2d 36, 40 (D.D.C. 2005) (citing *CityFed Fin. Corp.*, 58 F.3d at 747); *see also Wisconsin Gas*, 758 F.2d at 674 ("[A]nalysis of [irreparable harm] disposes of these motions . . . .").

## VI. THE RELIEF PLAINTIFF REQUESTS WOULD HARM THE COMMISSION AND UNDERCUT THE PUBLIC INTEREST IN DISCLOSURE

Permitting plaintiff to air its advertisements anonymously and without timely disclosure as to its ads' financing would hinder the public interest and substantially injure the Commission. To prevail on its application for a preliminary injunction, plaintiff must establish precisely the opposite. *CityFed. Fin. Corp.*, 58 F.3d at 746. Because of the strong public and Commission interest in enforcement of the disclosure laws, plaintiff's proposed injunction would substantially injure other parties and would not further the public interest. Plaintiff's case thus fails to meet these two important requirements for preliminary injunctive relief.

"The public has a strong interest in the enforcement of laws passed by Congress and signed by the President." *Wisconsin Right to Life, Inc.*, 2006 WL 2666017, at *5. As explained above, *see supra* Part III, there is a "presumption of constitutionality which attaches to every Act of Congress," and that presumption is "an equity to be considered in favor of . . . [the government] in balancing hardships," *Walters*, 468 U.S. at 1324 (1984). As the Supreme Court stated in the similar context of a requested injunction pending appeal, "barring the enforcement of an Act of Congress would be an extraordinary remedy, particularly when this Court recently held [that Act] facially constitutional." *Wisconsin Right to Life, Inc.*, 542 U.S. at 1306 (citing

*McConnell*, 540 U.S. at 189-210, and denying request regarding BCRA's EC financing restrictions).

The public interest in the EC disclosure provisions is abundantly clear because the Supreme Court has already held that they further "important state interests," including "providing the electorate with information," and "gathering the data necessary to enforce more substantive electioneering restrictions." *McConnell*, 540 U.S. at 196, 231 (quotation omitted). A temporary lifting of the EC disclosure provisions during the 2008 election would deprive viewers of information about who is airing and paying to finance advertisements that Congress mandated be disclosed.

Citizens United's proposed relief would end disclosure not just in the ways that plaintiff discusses and regarding communications similar to the three proposed ads attached to the Complaint, but also to a vast array of other advertisements and other entities, most of which plaintiff ignores. The proposed relief would even end the disclosure of the entities responsible for airing the advertisements — a portion of the disclosure requirements about which plaintiff itself does not allege any harm whatsoever. Such relief would temporarily return the nation to the unaccountable, essentially anonymous airing of ECs that existed before BCRA was enacted. In those days, entities were able to fund broadcast ads "while concealing their identities from the public," including by "hiding behind dubious and misleading names." *McConnell*, 540 U.S. at 196-97. By asking for relief as to *all WRTL* ads, plaintiff effectively asks the Court to end disclosure related to ECs run by individuals and unincorporated associations, as well as by all corporations and labor organizations.

In that event, the public would have no information about a host of ads that have more than one interpretation — one of which could be advocating a candidate's election. The

Supreme Court recognized that "the distinction between campaign advocacy and issue advocacy 'may often dissolve in practical application. Candidates, especially incumbents, are intimately tied to public issues involving legislative proposals and governmental actions.'" *WRTL*, 127 S. Ct. at 2659 (quoting *Buckley*, 424 U.S. at 42). Because of the speech-restrictive effects of the EC funding restrictions, the Court held in *WRTL* that the funding restrictions could only be constitutionally applied to ads that are "susceptible of no reasonable interpretation other than as an appeal to vote for or against a specific candidate." *Id.* at 2667. The Court intentionally protected a considerable amount of election-related advertising, *i.e.,* ads that reasonably could be construed as candidate advocacy and also could reasonably be construed as something else, because BCRA § 203 was a direct restraint on spending by corporations and unions of their general treasury funds. When the Court in *WRTL* acknowledged that elements of issue advocacy and electoral advocacy could exist in the same message, it did not suggest that the First Amendment prohibited disclosure about such messages or that there was no public interest in learning about their funding. Thus, the relief sought by Citizens United would prevent the achievement of Congress's goals of "'shed[ding] the light of publicity' on campaign financing," *McConnell*, 540 U.S. at 231 (quoting *Buckley*, 424 U.S. at 81), and protecting the "'First Amendment interests of individual citizens seeking to make informed choices in the political marketplace,'" *id.* at 197 (quoting *McConnell*, 251 F. Supp. 2d at 237).

Granting plaintiff's motion for preliminary injunction would also "substantially injure" the Commission and the public. *CityFed Fin.*, 58 F.3d at 746. If granted, plaintiff's motion would prohibit the Commission from enforcing the EC disclosure provisions as to a considerably large class of advertisements. As Justice Rehnquist explained, "any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers . . . injury."

41

*New Motor Vehicle Bd. of Calif. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers).  The Commission and the public are similarly harmed when a court proscribes enforcement of a federal statute.  "[E]njoining the FEC from performing its statutory duty constitutes a substantial injury to the FEC."  *Wisconsin Right to Life, Inc.*, 2006 WL 2666017, at *5; *see also Christian Civic League of Maine, Inc.*, 433 F. Supp. 2d at 90.

## CONCLUSION

For the foregoing reasons, the Commission respectfully requests that the Court deny plaintiff's motion for a preliminary injunction.

Respectfully submitted,

Thomasenia P. Duncan (D.C. Bar No. 424222)
General Counsel

David Kolker (D.C. Bar No. 394558)
Associate General Counsel

Kevin Deeley
Acting Assistant General Counsel

_____/s/ Adav Noti_____
Adav Noti (D.C. Bar No. 490714)
Attorney

COUNSEL FOR DEFENDANT
FEDERAL ELECTION COMMISSION
999 E Street NW
Washington, DC 20463
Dated:  December 20, 2007            (202) 694-1650

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
CITIZENS UNITED,                        )
                                        )
                    Plaintiff,          )
                                        )
            v.                          )        Civ. No. 07-2240 (RCL)
                                        )
FEDERAL ELECTION COMMISSION,            )
                                        )
                    Defendant.          )
_____)


**ORDER**

    This matter having come before the Court upon plaintiff Citizen United's Motion for

Preliminary Injunction and Defendant Federal Election Commission's Memorandum in

Opposition to Plaintiff's Motion for Preliminary Injunction, and the Court having read and

considered the positions of all parties therein, it is hereby

    ORDERED that plaintiff's Motion for Preliminary Injunction is DENIED.




                                        _____
                                        UNITED STATES CIRCUIT JUDGE


                                        _____
                                        UNITED STATES DISTRICT JUDGE


                                        _____
                                        UNITED STATES DISTRICT JUDGE