**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CITIZENS UNITED, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 07- 2240 (RCL) |
| | ) |
| v. | ) |
| | ) OPPOSITION |
| FEDERAL ELECTION COMMISSION, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**DEFENDANT FEDERAL ELECTION COMMISSION'S**
**MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR**
**CONSOLIDATION OF THE TRIAL ON THE MERITS WITH THE HEARING ON**
**THE PRELIMINARY INJUNCTION**

On December 13, 2007, the same day that Citizens United filed its complaint and motion

for preliminary relief, plaintiff also filed a motion to consolidate the hearing on its motion for

preliminary injunction with the trial on the merits in this case under Federal Rule of Civil

Procedure 65(a)(2).  Citizens United purports to bring an as-applied constitutional challenge to

provisions of the Federal Election Campaign Act ("FECA" or "Act"), 2 U.S.C. §§ 431-55, that

require persons to include disclaimers on, 2 U.S.C. § 441d(a), and report disbursements for

"electioneering communications," 2 U.S.C. § 434(f).  The Federal Election Commission

("Commission" or "FEC") opposes Citizens United's motion to combine the trial on the merits

with the hearing on the preliminary injunction because the constitutionality of this important

federal statute should not be decided by giving the agency entrusted with its enforcement only

five business days to prepare a proper defense.

At issue in this litigation is the constitutionality of disclosure and disclaimer provisions applicable to "electioneering communications," *i.e.*, any broadcast, cable, or satellite communication that refers to a candidate for federal office and is broadcast within 30 days of a federal primary election or 60 days of a federal general election in the jurisdiction in which that candidate is running.  2 U.S.C. §§ 434(f)(3), 441d(a).[1]  Citizens United alleges that it intends to broadcast three electioneering communications that it argues are not constitutionally regulable because the ads may be interpreted as something other than an appeal to vote for or against a specific candidate.  *See FEC v. Wisconsin Right to Life, Inc.* ("*WRTL*"), 127 S. Ct. 2652 (2007). Although *WRTL* held that the *financing* restriction in 2 U.S.C. § 441b could not constitutionally be applied to certain communications that meet the statutory definition of "electioneering communication," the decision did not address the constitutionality of the Act's disclosure and disclaimer provisions as applied to such communications.  This important constitutional question should not be decided in haste.

## BACKGROUND

In *McConnell v. FEC*, 540 U.S. 93, 196-99, 203-11, 230-31 (2003), the Supreme Court upheld against facial constitutional challenge BCRA's electioneering communication disclosure and disclaimer provisions.  The Court explained that electioneering communication disclosure

---

[1]    Enacted as Section 201 of the Bipartisan Campaign Reform Act of 2002 (BCRA), Pub. L. No. 107-155, 116 Stat. 81, 88-90, the electioneering communication disclosure provisions, 2 U.S.C. § 434(f), generally require "persons," including any organization or group of persons, who make disbursements for such communications to disclose, *inter alia*, that they ran the ads as well as the identity of those who contributed $1,000 or more to finance them.  Enacted as section 311 of BCRA, 116 Stat. at 105-06, the electioneering communication disclaimer provisions, 2 U.S.C. § 441d(a), require that such communications include, in the case of those not authorized by a candidate or a candidate's authorized committee, a clear statement identifying the name, address, telephone number or World Wide Web address of the person who paid for the communication, and a clear statement that the communication was not paid for by a candidate or candidate's committee.

served the important state interests of "providing the electorate with information, deterring actual

corruption and avoiding any appearance thereof, and gathering the data necessary to enforce

more substantive electioneering restrictions." *McConnell*, 540 U.S. at 196.  The Court similarly

upheld the electioneering communication disclaimer provisions, finding that such disclaimers

bear a "sufficient relationship to the important governmental interest of 'shed[ding] the light of

publicity' on campaign financing." *Id*. at 231 (quoting *Buckley v. Valeo*, 424 U.S. 1, 81 (1976)).

Another provision of the FECA, enacted as BCRA § 203, Pub. L. No. 107-155, 116 Stat.

81, 91-92, prohibits corporations and labor organizations from using general treasury funds to

pay for electioneering communications.  2 U.S.C. § 441b(b)(2).  In *WRTL*, the Court held that

BCRA § 203 could be constitutionally applied only to communications that were "susceptible of

no reasonable interpretation other than as an appeal to vote for or against a specific candidate."

127 S. Ct. at 2667.  Electioneering communications that did not fall under this rubric —

hereinafter "*WRTL* ads" — could be financed with corporate and labor organization treasury

funds.  The Court made no mention, however, of BCRA's electioneering communication

disclosure or disclaimer provisions.  Indeed, WRTL challenged neither set of provisions.[2]

On December 14, 2007, the Commission adopted a final rule implementing *WRTL*.  In

the Commission's Explanation and Justification for its final rule, the Commission explained

that it

> decided to implement the [*WRTL*] decision by promulgating an exemption from
> the corporate and labor organization funding prohibitions in part 114 of the
> Commission's rules.  Under the final rule, [electioneering communications] that
> qualify for the [*WRTL*] exemption may be funded with corporate and/or labor

---

[2]      *See* Verified Complaint ¶ 36 (July 28, 2004) in *Wisconsin Right to Life, Inc. v. FEC*
(D.D.C. No. 04-1260), available at http://fecds005.fec.gov/law/litigation_related.shtml#wrtl_dc
("WRTL does not challenge the reporting and disclaimer requirements for electioneering
communications, only the prohibition on using its corporate funds for its grass-roots lobbying
advertisements.").

> organization funds, including general treasury funds, but are subject to
> [electioneering communication] reporting and disclaimer requirements.

Final Rule Explanation and Justification, "Electioneering Communications" at 5, available at

http://www.fec.gov/law/cfr/ej_compilation/2007/notice_2007-26.pdf.

## ARGUMENT

**I.     CONSOLIDATION AS PROPOSED BY CITIZENS UNITED WILL
DEPRIVE THE COMMISSION OF A FULL OPPORTUNITY TO
PRESENT ITS CASE AND DEFEND THE ACT**

Although BCRA § 403 provides for expedited judicial review of certain constitutional

challenges, Congress did not intend courts to ignore the need to act with care in evaluating

constitutional challenges to the statute that Congress enacted after years of legislative effort.  On

the contrary, as one of BCRA's principal Senate sponsors stated during floor debate:

> Finally, and most importantly, although [BCRA § 403] provides for the
> expedition of these cases to the greatest possible extent, we do not intend to
> suggest that the courts should not take the time necessary to develop the factual
> record and hear relevant testimony if necessary. . . .  By expediting the case, we
> in no way want to rush the Court into making its decision without the benefit of
> a full and adequate record….

147 Cong. Rec. S3189 (Mar. 30, 2001) (remarks of Sen. Feingold); s*ee also id.* at S3189-90

(remarks of Sen. Dodd).  This case implicates exactly these concerns, and it is critical that the

courts have such a "full and adequate" record to support their decisions.  Accordingly, while this

case can be resolved under an expedited schedule providing the Commission a reasonable

opportunity to present its case defending the constitutionality of the statute, the Court should

deny the plaintiff's motion to consolidate.[3]

---

[3]     When plaintiff's counsel contacted the Commission's counsel on December 12, 2007, to
inquire whether the Commission would oppose plaintiff's various motions, the Commission's
counsel asked whether plaintiff would be willing to negotiate a schedule for the case, especially
in light of the impending holidays.  Plaintiff's counsel refused.  The Commission is therefore

Because a party is "not required to prove his case in full at a preliminary injunction hearing . . . and the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding in a trial on the merits . . .  it is generally inappropriate for a federal court at the preliminary injunction stage to give a final judgment on the merits." *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981); s*ee also West Virginia Ass'n of Cmty. Health Ctrs., Inc. v. Heckler*, 734 F.2d 1570, 1578 (D.C. Cir. 1984).  Although Rule 65(a)(2) permits a court to "order the trial of the action on the merits to be advanced and consolidated with the hearing of the application," the Supreme Court has cautioned that "the parties should normally receive clear and unambiguous notice of the court's intent to consolidate the trial and the hearing either before the hearing commences or at a time which will still afford the parties a *full opportunity to present their respective cases.*"  *Camenisch*, 451 U.S. at 395 (emphasis added, internal citations and quotations marks omitted).  Consolidation should not be granted, therefore, if it would prevent a party from developing and presenting all of its evidence on the merits.  *See CFTC v. Board of Trade of City of Chicago*, 657 F.2d 124, 127 (7th Cir. 1981) ("Numerous appellate courts have upset judgments granting relief on the merits where it appeared that the failure to give adequate notice of consolidation may have deprived a party of

---

responding to plaintiff's motion for a preliminary injunction within five business days, as required by LCvR 65.1(c).

The Supreme Court's decision in *WRTL* was issued almost six months ago, plaintiff's film has been in production since at least June (*see* Jonathan Darman & Mark Hosenball, *The New War on Hillary*, Newsweek, June 18, 2007, at 30), and plaintiff has had ample time to prepare its constitutional challenge.  In light of plaintiff's own ability to plan ahead, opposing counsel's refusal to negotiate a schedule, and the short time the Commission has had to respond to the application for a preliminary injunction, plaintiff's motion for consolidation is exceptionally unjustified.  Moreover, we note that LCvR 65.1(c) does not provide for a reply in support of an application for a preliminary injunction.  *Hicks v. Bush*, 2007 WL 902303 at \*4 n.4 (D.D.C. 2007) ("Local Civil Rule 65.1(c) does not provide for the filing of reply briefs on applications for a preliminary injunction . . . .").  If plaintiff were to move this Court to accept such a filing, the Commission would strongly oppose it.

the opportunity fully to present the case on the merits.") (listing cases).  This caution is fully

applicable to constitutional challenges to the federal campaign finance laws.  *See, e.g., Colorado*

*Republican Fed. Campaign Comm. v. FEC*, 518 U.S. 604, 626 (1996) ("[G]iven the important

competing interests involved in campaign finance issues, we should proceed cautiously . . . .");

*FEC v. Colorado Republican Fed. Campaign Comm.*, 96 F.3d 471, 473 (10th Cir. 1996) ("[T]he

issues are too important to be resolved in haste.").

The Commission needs more than five business days to prepare an adequate record of all

the relevant facts and fully present its defense of the statute on the merits.  Federal courts have

long recognized the need for a "concrete factual setting that sharpens the deliberative process

especially demanded for constitutional decision."  *United States v. UAW*, 352 U.S. 567, 591

(1957) (declining to resolve constitutional challenge to statutory restriction on political spending

by unions before development of factual record).  The D.C. Circuit has found it "undesirable to

decide a constitutional issue abstracted from its factual context."  *International Ass'n of*

*Machinists v. FEC*, 678 F.2d 1092, 1097 (D.C. Cir. 1982) (en banc).  In fact, courts have

repeatedly emphasized the importance of creating a full factual record before resolving

constitutional challenges, like the one here, to the federal campaign finance statutes.  *See, e.g.,*

*Bread Political Action Comm. v. FEC*, 455 U.S. 577, 580 (1982) (district court is required to

make findings of fact before certifying constitutional question to en banc court of appeals under

2 U.S.C. § 437h); *California Med. Ass'n v. FEC*, 453 U.S. 182, 192 n.14 (1981) ("[I]mmediate

adjudication of constitutional claims through a section 437h proceeding would be improper in

cases where the resolution of such questions required a fully developed factual record.").[4]  And

---

[4]      *See also Khachaturian v. FEC,* 980 F.2d 330, 331-32 (5th Cir. 1992) (en banc); *FEC v.*
*Central Long Island Tax Reform Immediately Comm.*, 616 F.2d 45, 49 (2nd Cir. 1980) (en banc);
*Buckley v. Valeo*, 519 F.2d 817, 818 (D.C. Cir. 1975) (en banc).

in *Colorado Republican*, 518 U.S. at 618, Justice Breyer pointed out the importance of record

evidence in reviewing the constitutionality of the Act's limit on political party expenditures

made in coordination with their own candidates, 2 U.S.C. § 441(a)(d).

     **A.**    **A Full and Adequate Record Is Particularly Important Given the
Scope of Plaintiff's Challenge**

     Although Citizens United's as-applied challenge includes three particular advertisements

it intends to run, its complaint is actually much broader.  Citizens United claims (Complaint

¶¶ 30, 31) that the Act's electioneering communications disclosure and disclaimer provisions are

unconstitutional as applied to *all WRTL* ads, and asks this Court (Prayer for Relief ¶¶ 1, 2) to

declare that such provisions cannot be applied to *any* such ad, not just plaintiff's three ads.

     As the Commission has explained (FEC's Memorandum in Opposition to Plaintiff's

Motion for Preliminary Injunction ("FEC Mem."), at Part IV.A), the Supreme Court scrutinizes

campaign disclosure and disclaimer provisions to determine whether compelled disclosure bears

a substantial relationship to an important government interest.  In addition, we have explained

(FEC Mem. at Part IV.D.1) that the Supreme Court has also repeatedly examined whether in

particular circumstances the First Amendment might prohibit compelled disclosure if persons or

groups could establish a reasonable probability of threats, harassment, and reprisals.[5]  Plaintiff's

sweeping claims and requests for relief, however, ask this Court to engage in this type of

fact-intensive constitutional analysis for a large subset of electioneering communications (all

---

[5]     *See*, *e.g.*, *Buckley*, 424 U.S. at 69 (noting that plaintiffs in *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958), faced "economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility" and finding that "no harassment on a similar scale was found in this case") (citation omitted); *McConnell*, 540 U.S. at 198-99 (noting that Court in *Brown v. Socialist Workers '74 Campaign Comm.*, 459 U.S. 87 (1982), found "reasonable probability" of "threats, harassment, and reprisals," and upholding lower court finding that plaintiffs' concerns regarding harassment in case at bar were unsupported by evidence).

*WRTL* ads) broadcast by a variety of organizations, based upon a record compiled in less than one week. In fact, there is no factual record at all in the case, other than the facts alleged in plaintiff's complaint. Citizens United has not even alleged that its donors face any specific threats, harassment, or reprisals, let alone has it speculated that other corporations or organizations who might finance *WRTL* ads may have donors who might face such harm.

The universe of ads for which Citizens United seeks an exemption from the Act's disclosure and disclaimer requirements is remarkably broad. It includes numerous types of ads, from communications that purport to be about issues to those that appear to propose a commercial transaction, from communications that merely lobby elected officials to those that may attack them as well, yet still qualify as *WRTL* ads. The universe of hypothetical speakers is just as large, from Fortune 500 companies that are unlikely to establish a reasonable probability of threats, harassment, and reprisals from disclosure, to peripheral organizations that might make such a showing more easily. Five business days is simply not enough time for the Commission to develop a factual record sufficient to allow the Court a reasonable opportunity to evaluate the constitutionality of the disclosure and disclaimer requirements as applied to the diversity of ads and speakers not presently before the Court, for which and for whom Citizens United seeks permanent relief. [6]

Even regarding plaintiff's own proposed ads, the Commission has not had a sufficient opportunity to consider whether plaintiff's third ad (titled "Questions") qualifies as a *WRTL* ad under the Commission's new regulation. Although plaintiff's first two proposed ads appear to

---

[6]     In *NOW v. Operation Rescue*, 747 F. Supp. 760 (D.D.C. 1990), upon which plaintiff relies, this Court held that Rule 65(a)(2) consolidation in a case pending in federal court in Virginia involving identical parties did not deprive the defendant of a full and fair opportunity to litigate issues for collateral estoppel purposes. Critical to the court's holding, however, was that the "defendants neither objected to the accelerated trial nor requested any continuance to prepare rebuttal evidence." *Id.* at 768. That is not the case here.

come within the *WRTL* exemption — thus placing Citizens United's constitutional claim

squarely before the Court as applied to those two ads — "Questions" poses a closer question that

the Commission has not had an adequate opportunity to address.  Moreover, the Commission has

not been asked through the advisory opinion process (*see* 2 U.S.C. § 437f) to apply its new

regulation to that or any other ad.  Accordingly, the Commission is not yet prepared to present its

full case on the merits concerning the "Questions" ad.[7]

### B.    The Commission Would Be Unfairly Prejudiced, and Judicial Economy Thwarted, If the Commission Does Not Have an Opportunity to Develop an Adequate Factual Record

The type of broad constitutional challenge that Citizens United has brought often requires

courts to evaluate legislative facts that may or may not have been before Congress when it

enacted the statute at issue.

> The constitutionality of statutes is typically determined by reference to general considerations, values, intuitions, and other "legislative facts" (in the sense of considerations that typically influence legislative judgments) rather than to facts presented through testimony and other formal evidence subject to rules of evidence developed largely for the control of lay juries.

---

[7]    Indeed, the Commission has been particularly busy in the handful of days since Citizens United filed suit.  Since receiving plaintiff's complaint, the Commission has, *inter alia*, finalized and approved Final Rules with Explanation and Justification for Electioneering Communications implementing the Supreme Court's ruling in *WRTL*, approved Final Rules regarding campaign travel on non-commercial aircraft as required by the Honest Leadership and Open Government Act of 2007 (HLOGA), Pub. L. No. 110-81, 121 Stat. 735, and issued four advisory opinions. *See* Press Release, FEC Approves Candidate Travel Regulations and Explanation and Justification of Electioneering Communications Rule, Four Advisory Opinions, December 17, 2007, http://www.fec.gov/press/press2007/1217CommissionMeetingSummary.shtml.  In addition, the Commission has been working diligently to complete another rulemaking regarding the disclosure of information regarding certain bundled contributions, also required by HLOGA. *See* Press Release, FEC Approves a Notice of Proposed Rulemaking on Reporting Contributions Bundled by Lobbyists, Registrants and Their PACs, October 30, 2007, http://www.fec.gov/press/press2007/20071030meeting.shtml.  Finally, the Commission is currently considering a number of pending advisory opinion requests, which the Commission must answer within 60 days.  *See* 2 U.S.C. § 437f(a)(1).

*Metzl v. Leininger*, 57 F.3d 618, 622 (7th Cir. 1995); *see also Missouri Republican Party v. Lamb*, 270 F.3d 567, 570 (8th Cir. 2001) ("[A] statute is constitutional if there is objective evidence of facts sufficient to render that statute valid, even if those facts were not operating subjectively in the minds of the legislators to motivate them when they enacted that statute."). In *Buckley*, for example, the D.C. Circuit instructed the district court to "[t]ake whatever may be necessary in the form of evidence over and above submissions that may suitably be handled through judicial notice, as of legislative facts." 519 F.2d 817, 818 (1975). Similarly, in *Daggett v. Commission on Governmental Ethics and Election Practices*, 172 F.3d 104, 112 (1st Cir. 1999), involving a constitutional challenge to a Maine campaign finance statute, the circuit court approved of reliance on "so-called 'legislative facts,' which go to the justification for a statute [and] usually are not proved though trial evidence but rather by material set forth in briefs, the ordinary limits on judicial notice having no application to legislative facts."

Because the FEC has not yet had a reasonable opportunity to prepare a record of such legislative facts, consolidation would deprive the Commission of a full opportunity to develop critical evidence and present its best case defending the constitutionality of the statute, and deprive this Court — and the Supreme Court in the likely event of an appeal — of a full and adequate record for constitutional adjudication. Such an outcome would only further delay final resolution of this case by postponing the building of a record until after remand from the Supreme Court. *See, e.g., Colorado Republican Fed. Campaign Comm.*, 518 U.S. 604, 625-26 (1996) (remanding for further consideration of constitutional issues). Providing the Commission with a full opportunity to develop the record at this stage would therefore expedite final resolution of the case by ensuring that such a remand by the Supreme Court would not be necessary.

The Commission recognizes that the principal opinion in *WRTL* warned against intrusive discovery and inquiry into an advertisement's intent and effects, and we are not suggesting that such intrusive discovery is contemplated or necessary. *See* 127 S. Ct. at 2666 ("[A]s-applied challenge to [the financing restriction in] BCRA § 203 must . . . entail minimal if any discovery."). Rather, the fact development described above consists mostly of legislative facts that the Commission may choose to develop without propounding any discovery to Citizens United. *See, e.g., WRTL*, 127 S. Ct. at 2667 n.6 (Chief Justice Roberts' reliance on public opinion poll). For example, the Commission may seek information about the alleged costs of complying with the disclosure and disclaimer requirements, similar to evidence it has gathered during rulemakings. *See Republican Nat'l Comm. v. FEC*, 76 F.3d 400, 407-08 (D.C. Cir. 1996) (analyzing evidence compiled by the Commission concerning the costs of making follow-up requests to obtain donor identification information); *see also* Complaint ¶ 27 (alleging harm from spending "time and resources in complying with reporting requirements"). The Commission may also consider developing a record of the frequency and type of *WRTL* ads that are likely to be run to help the Court evaluate the extent to which the public would be deprived of information about the funding of such ads.

Finally, the Court's resolution of Citizens United's challenge as applied to three of its own ads necessarily depends on facts specific to this plaintiff — facts that the Commission has had no opportunity to develop in the few days it has had to respond to plaintiff's application for a preliminary injunction. Citizens United bears the burden of demonstrating that the Act's electioneering communication disclosure and disclaimer requirements are unconstitutional as applied to its proposed ads. But apart from an irrelevant, unsubstantiated reference to FBI files once in the possession of a former administration (*see* Complaint ¶ 23), Citizens United has not

11

even attempted to allege that disclosure of its electioneering communications would

unconstitutionally burden plaintiff or its donors by exposing them to threats, harassment, or

reprisals.  That failure of proof should be dispositive on the question of harm as relevant to

plaintiff's application for preliminary injunction.  FEC Mem. at Part IV.D.1.  But if the Court

should hold otherwise, the Commission should have a reasonable opportunity to defend the

statute by developing facts and to consider conducting "minimal" discovery, *WRTL*, 127 S. Ct.

at 2666, to demonstrate that Citizens United cannot make such a showing.

## II.    CONCLUSION

For the reasons stated above, the Court should deny plaintiff's motion for consolidation

of the trial on the merits with the hearing for preliminary injunction.


Respectfully submitted,

Thomasenia P. Duncan
General Counsel

David Kolker
Associate General Counsel

Kevin Deeley
Acting Assistant General Counsel

/s/ Steve N. Hajjar
Steve N. Hajjar
Attorney


FOR THE DEFENDANT
FEDERAL ELECTION COMMISSION
999 E Street, NW
Washington, D.C. 20463
(202) 694-1650
December 20, 2007                        (202) 219-0260 (fax)

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | ) | |
| CITIZENS UNITED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 07-2240 (RCL) |
| | ) | |
| FEDERAL ELECTION COMMISSION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**ORDER**

This matter having come before the Court upon plaintiff Citizen United's Motion for

Consolidation of the Trial on the Merits with the Hearing on the Preliminary Injunction and

Defendant Federal Election Commission's Memorandum in Opposition to Plaintiff's Motion for

Consolidation of the Trial on the Merits with the Hearing on the Preliminary Injunction, and the

Court having read and considered the positions of all parties therein, it is hereby

ORDERED that plaintiff's Motion for Consolidation of the Trial on the Merits with the

Hearing on the Preliminary Injunction is DENIED.

_____
UNITED STATES CIRCUIT JUDGE


_____
UNITED STATES DISTRICT JUDGE


_____
UNITED STATES DISTRICT JUDGE