United States District Court
District of Columbia

| | |
|---|---|
| **Citizens United**,<br>    1006 Pennsylvania Ave., SE<br>    Washington, DC 20003,<br>                                *Plaintiff*,<br>*v.*<br>**Federal Election Commission**,<br>    999 E Street, NW<br>    Washington, DC 20463,<br>                                *Defendant*. | Case No. 07-2240-RCL<br><br>THREE-JUDGE COURT |

# Amended Verified Complaint for Declaratory and Injunctive Relief

Citizens United complains as follows:

## Introduction

1. This is an as-applied challenge to the constitutionality of **(a) § 201** of the Bipartisan Campaign Reform Act of 2002 ("BCRA"), Pub. L. No. 107-155, 116 Stat. 81, 88-89, entitled "Disclosure of Electioneering Communications," which added a new subsection "(f)" to § 304 of the Federal Election Campaign Act ("FECA") that requires reporting of electioneering communications and **(b)** BCRA **§ 311**, 116 Stat. 105, requiring that electioneering communications contain "disclaimers." *See* 11 C.F.R. § 110.11. BCRA § 201 is called herein the "**Reporting Requirement**," BCRA § 311 is called the "**Disclaimer Requirement**," and the requirements together are called the "**Disclosure Requirements**" for ease of identification. The Reporting Requirement is codified at 2 U.S.C. § 434(f). The Disclaimer Requirement is codified at 2 U.S.C. § 441d(a). It is also an as-applied and facial challenge to BCRA

**Amended Verified Complaint**          1

§ 203, the "**Prohibition**," which is codified at 2 U.S.C. § 441b.

2. Citizens United intends to publish advertisements and broadcast a movie that will meet the statutory definition of electioneering communications, 2 U.S.C. § 434(f)(3), but are not properly considered electioneering communications for any purpose, including disclosure, because they "may reasonably be interpreted as something other than as an appeal to vote for or against a specific candidate, . . . are not the functional equivalent of express advocacy, and therefore fall outside the scope of *McConnell*'s holding." *FEC v. Wisconsin Right to Life*, 127 S. Ct. 2652, 2670 (2007) ("*WRTL II*"). The Disclosure Requirements are unconstitutional as applied to such ads and movie, and the Prohibition is unconstitutional as applied to the movie and the "Questions" ad (*see Exhibit 1*), and it should also be declared unconstitutional on its face.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this case, brought under 42 U.S.C. § 1983, pursuant to 28 U.S.C. §§ 1331 and 2201 and BCRA § 403, 116 Stat. at 113-14, because Plaintiff "elects such provisions to apply to this action." BCRA § 403(d)(2), 116 Stat. at 114.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) and BCRA § 403, 116 Stat. at 113-14.

## PARTIES

5. Plaintiff Citizens United is a nonstock, nonprofit (under 26 U.S.C. § 501(c)(4)), membership, Virginia corporation with its principal office in Washington, District of Columbia.

6. Defendant Federal Election Commission ("FEC") is the government agency with

**Amended Verified Complaint**    2

enforcement authority over FECA.

## FACTS

7. Citizens United was founded in 1988. Its purpose is to promote the social welfare through informing and educating the public on conservative ideas and positions on issues, including national defense, the free enterprise system, belief in God, and the family as the basic unit of society. Its current annual budget is about $12 million. Citizens United has a related § 501(c)(3) entity called Citizens United Foundation ("CUF").

8. Citizens United is not a "qualified nonprofit corporation" because it receives corporate donations and engages in business activities. *See* 11 C.F.R. § 114.10 (exempting certain ideological, nonstock, nonprofit corporations from the electioneering communication prohibition),

9. One of the principal means by which Citizens United fulfills its purposes is through the production and distribution of documentary films. Its first major documentary film, in 2004, was entitled *Celsius 41.11: The Temperature at Which the Brain Begins to Die*. The film was a conservative response to Michael Moore's documentary *Fahrenheit 9/11* and was shown in over 100 theaters in 2004. It continues to be sold in DVD format.

10. In 2005, Citizens United and CUF co-produced *Broken Promises: The United Nations at 60*, which was an exposé on the United Nations narrated by noted actor Ron Silver. This film was released in DVD format.

11. In 2006, Citizens United and CUF co-produced two films: *Border War: The Battle Over Illegal Immigration* and *ACLU: At War With America*. *Border War* had a limited theatrical release and was sold on DVD. *ACLU* was released only in DVD format.

12. *Broken Promises* and *Border War* have competed for and won a number of awards from the motion picture industry. *Broken Promises* won a Special Jury Remi Award at the 2006 Houston International Film Festival. *Border War* won best feature documentary at the 2006 Liberty Film Festival, a Silver Remi Award at the 2007 Houston International Film Festival, and best feature documentary film honors from the American Film Renaissance in February 2007. *Border War* also qualified for consideration under the Academy of Motion Picture Arts and Sciences demanding criteria for nomination to the 79th Academy Awards in February 2007.

13. In 2007, CUF produced *Rediscovering God in America*, which is narrated by Newt and Calista Gingrich. This film premiered in Washington, D.C., and New York City and is now available in DVD format only. As of December 11, 2007, the film was the top selling historical documentary on Amazon.com.

14. Citizens United is in the final stages of production on a feature length documentary film on Senator Hillary Clinton entitled *Hillary: The Movie.* This issue-advocacy film will be released somewhere in the December 2007 to February 2008 time-frame and is slated for theaters, cable on-demand broadcast, and DVD sales. It includes interviews with numerous individuals and many scenes of Senator Clinton at public appearances. It is about 90 minutes in length. It does not expressly advocate Senator Clinton's election or defeat, but it discusses her Senate record, her White House record during President Bill Clinton's presidency, and her presidential bid. Some interviewees also express opinions on whether she would make a good president. A compendium book is being published by Thomas Nelson Publishers, which has purchased the book rights to the film and is paying Citizens United an

**Amended Verified Complaint**                    4

advance royalty on sales. Neither of the Disclosure Requirements applies to the documentary itself (unless it is broadcast, *see infra*).

15. When Citizens United produced *Celsius 41.11* in 2004, it ran national broadcast ads promoting the film. The original version of the ads had images and sound bites of President George Bush and Senator John Kerry, but those images and sound bites had to be deleted from the ads due to the electioneering communication prohibition. Prior to running the ads, Citizens United received FEC Advisory Opinion 2004-30, stating that its film and film ads would qualify as electioneering communications and would not be exempt under the Press Exemption.

16. Citizens United intends to fund television ads ("Ads") to promote *Hillary: The Movie* that will meet the electioneering communication definition at 2 U.S.C. § 434(f)(3), *see* ¶ 17 *infra*, but will not properly be an electioneering communication for any purpose, including disclosure, because the Ads "may reasonably be interpreted as something other than as an appeal to vote for or against a specific candidate, . . . [is] not the functional equivalent of express advocacy, and therefore fall[s] outside the scope of *McConnell*'s holding." *FEC v. Wisconsin Right to Life*, 127 S. Ct. 2652, 2670 (2007) ("*WRTL II*"). A true and correct transcript of the Ads is attached. *See Exhibit 1*. Citizens United has not, and will not, coordinate the production and broadcast of the Ads with any candidate, campaign committee, political committee, or political party.

17. The Ads that Citizens United intends to broadcast will meet the electioneering communications definition at 2 U.S.C. § 434(f)(3) and 11 C.F.R. § 100.29 because they **(a)** will be broadcast on Fox News cable and major network stations so that they **(b)** will be

**Amended Verified Complaint**                5

receivable by more than 50,000 persons, *see* http://gullfoss2.fcc.gov/ecd (Federal Communications Commission's Electioneering Communications Database), in states where caucuses, conventions, or primary elections will be selecting a Democratic party nominee, (**c**) will clearly reference Senator Clinton, a presidential candidate, and (**d**) will be made within 30 days before the following caucuses, conventions, or primaries in the identified states (with electioneering communication periods indicated) where she will be on the ballot: **Iowa** Presidential Caucus (12/04/07 - 01/03/08); **New Hampshire** Presidential Primary (12/09/07 - 01/08/08); **Michigan** Presidential Primary (12/16/07 - 01/15/08); **Nevada** Presidential Caucus (12/20/07 - 01/19/08); **South Carolina** Presidential Primary (D) (12/27/07 - 01/26/08); **Florida** Presidential Primary (12/30/07 - 01/29/08). *See* http://www.fec.gov/info/charts_ec_dates_prez.shtml (electioneering communication periods).

18. Citizens United will broadcast the 30-second, issue-advocacy ad entitled "Questions" on Fox News cable, and may broadcast it on major television network stations, too. Citizens United will broadcast the 10-second ads "Wait" and "Pants" on major television network stations, but not on Fox News. The disclaimer language mandated by FEC rule, *see* 11 C.F.R. § 110.11, takes about 4 seconds to narrate, making 10-second ads virtually impossible and 30-second ads extremely difficult to do and have any significant time left for substantive communication.

19. Citizens United's Ads will promote showings of *Hillary: The Movie* in theaters and sales of *Hillary* in DVD format, which may be pre-ordered while the movie is in theaters, and refer viewers to www.hillarythemovie.com for more information about the documentary and how to see or purchase it. When publicly released, the DVD form of *Hillary* will be

available from major national retailers, such as Amazon.com.

20. Citizens United would like to begin broadcasting its Ads on Monday, December 17, 2007, and run them through the middle of January for its initial media buy. However, because it will not run the Ads absent the requested relief from this Court, Citizens United intends to begin broadcasting its ads when it gets the relief requested herein and run them through the middle of January for its initial media buy. If Senator Clinton becomes the presidential nominee of her party, Citizens United will again plan to run the Ads (and possibly materially-similar ads) on Fox News cable (and possibly other broadcast outlets) within 30 days before the Democratic National Committee Convention (electioneering communication period is 07/29/08 - 08/28/08) and within 60 days of the November general election (electioneering communication period is 09/05/08 - 11/04/08). *See* http://www.fec.gov/info/charts_ec_dates_prez.shtml. At these times, the Ads will also meet the electioneering communication definition. Citizens United believes that these are the times when the public's interest in Senator Clinton will be at its peak, which is the key to maximizing box office, cable on-demand, and DVD sales for *Hillary*.

21. In addition to being protected issue advocacy, the 10-second ads meet the requirements of the recently-enacted FEC rule recognizing a commercial-transaction safe-harbor exception to the electioneering communication prohibition because each (**a**) "[p]roposes a commercial transaction, such as purchase of a book, video, or other product or service, or such as attendance (for a fee) at a film exhibition or other event," 11 C.F.R. § 114.15(b)(3)(ii); (**b**) "[d]oes not mention any election, candidacy, political party, opposing candidate, or voting by the general public," *id.* at § 114.15(b)(1); and (**c**) "[d]oes not take a

position on any candidate's or officeholder's character, qualifications, or fitness for office." *Id.* at § 114.15(b)(2). Citizens United is uncertain as to whether the 30-second "Questions" ad fits this safe-harbor because the FEC has expressed doubt on that question. *See infra.*

22. The Ads are subject to the Disclosure Requirements because the FEC recently refused requests to exclude from the Disclosure Requirements "electioneering communications" that meet the Supreme Court's issue-advocacy safe harbor, *WRTL II*, 127 S. Ct. at 2667 (no-other-reasonable-interpretation test), or the FEC's own commercial-transaction safe harbor. *See* http://www.fec.gov/law/law_rulemakings.shtml#ec07 (rulemaking documents, including requests to eliminate disclosure for ads not subject to electioneering communication prohibition).

23. One of the chief concerns with the Reporting Requirement is the disclosure of donors who may then be subject to various forms of retaliation by political opponents. On information and belief, the Clinton White House had in its possession over 1,000 FBI files on political opponents. *See*, *e.g.*, Neil A. Lewis, *White House Got More Files Than Disclosed*, N.Y. Times, June 12, 2007 (available by query at google.com).

24. Citizens United will have donors that it will be required to disclose (as to name and address), absent the judicial relief requested here, because it will pay for the Ads "exclusively from a segregated bank established to pay for electioneering communications permissible under 11 C.F.R. § 114.15" (rule implementing *WRTL II* by permitting corporate electioneering communications), to which donors will have "donated an amount aggregating $1,000 or more . . . since the first day of the preceding calendar year." 11 C.F.R. § 104.20.

25. Citizens United intends to broadcast materially-similar ads mentioning public

**Amended Verified Complaint** 8

figures who are candidates in materially-similar situations during future electioneering communication periods when public interest is at a peak. There is a strong likelihood that such similar situations will recur, given the facts that Plaintiff has engaged in similar activity in the past and that such activity is common and regularly recurring for it—as are conflicting electioneering communication periods.

26. Citizens United intends to broadcast its Ads without complying with the Disclosure Requirements, but it will not broadcast its Ads if it does not obtain the judicial relief presently requested. It also will not broadcast the "Questions" ad unless it obtains the judicial relief requested as to the Prohibition.

27. If Citizens United does not obtain the judicial relief presently requested, it will not proceed with its activities as planned. Instead, it will be forced to include the compelled speech of a disclaimer, which (**a**) requires it to mislead the public by identifying its speech as electioneering speech when it is not because the U.S. Supreme Court has held that such speech is not sufficiently related to elections to be regulated as electioneering and (**b**) deprives Citizens United of valuable time in its short and expensive broadcast Ads, which deprivation and burden is not justified by any constitutional or congressional authority. Adding the disclaimer will preclude Citizens United from running its 10-second ads and will require it to revise its 30-second ad so as to be much less effective—both as the issue advocacy that it is and as a vehicle for promoting *Hillary: The Movie*. And Citizens United will be compelled to file reports of its activity, which (**1**) requires it to mislead the public by reporting its speech as electioneering speech when it is not because the U.S. Supreme Court has held that such speech is not sufficiently related to elections to be regulated; (**2**) deprives

Citizens United of valuable time and resources in complying with reporting requirements, which deprivation and burden is not justified by any constitutional or congressional authority; and (**3**) will, in Citizens United's belief based on long experience, substantially reduce the number of donors and amount of donations to Citizens United because many potential donors do not wish to be publicly so identified for a variety of legitimate reasons. However, Citizens will not even broadcast the "Questions" ad unless it obtains the judicial relief requested as to the Prohibition. If the foregoing events occur, Citizens United will be deprived of its constitutional rights under the First Amendment to the United State Constitution by these substantial burdens on its highly-protected, core "political speech," *WRTL II*, 127 S. Ct. at 2659 (twice), 2660, 2664, 2665 (thrice), 2666 (twice), 2669, 2671-74, and will suffer irreparable harm.

28. On December 20, 2007, a company that markets nationwide Video on Demand ("VOD") broadcasting of programs on cable television made an offer to Citizens United to broadcast *Hillary: The Movie*, for a fee to be paid by Citizens United, to cable viewers nationwide (or to such markets as remain appropriate when the judicial relief requested herein is provided). *Hillary* would be broadcast under a "Political Movies" component of "Elections '08, a new channel sponsored by the cable industry. The contract offered would be for 4 weeks. A true and correct copy of the current (not finalized) script of *Hillary* is filed separately under seal. *See Exhibit 2* (under seal). Citizens United expects further opportunities to put *Hillary* on television in the near future by other means.

29. This broadcasting would bring *Hillary* within the electioneering communication definition because the movie (**a**) will be broadcast on cable stations so that it (**b**) will be

receivable by more than 50,000 persons, in states where caucuses, conventions, or primary elections will be selecting a Democratic party nominee, (**c**) will clearly reference Senator Clinton, a presidential candidate, and (**d**) will be made within 30 days before the caucuses, conventions, or primaries in the states identified in ¶ 17 where she will be on the ballot.

30. Citizens United intends to accept this offer to broadcast its documentary, but will not do so unless it receives the judicial relief requested herein because (**a**) it will have donors who would have to be disclosed and it does not wish to comply with the Disclosure Requirements as to the movie for the reasons stated in ¶¶ 23 & 27 and (**b**) the communication would be a prohibited "electioneering communication" under BCRA because it is not exempt from the "electioneering communication" prohibition under the FEC's regulation at 11 C.F.R. § 114.15 (creating an exception to the electioneering communication prohibition).

31. If Citizens United does not obtain the judicial relief presently requested as to *Hillary*, it will not proceed with its activities as planned. In such an event, Citizens United will be deprived of its constitutional rights and will suffer irreparable harm.

32. On the evening of December 20, 2007, the FEC filed its memorandum opposing preliminary injunction (Doc. #18), in which it stated that "the Commission has not had a sufficient opportunity to consider whether plaintiff's third ad (titled 'Questions') qualifies as a *WRTL* ad under the Commission's new regulations. Although plaintiff's first two proposed ads appear to come within the *WRTL* exemption — thus placing Citizens's United's constitutional claim squarely before the Court as applied to those two ads — 'Questions' poses a closer question that the Commission has not had an adequate opportunity to address." Doc. #18 at 8-9. If the FEC can't tell by looking at an ad whether it meets the FEC's own excep-

**Amended Verified Complaint**               11

tion to the Prohibition, then Citizens United can't know whether it may even broadcast the ad without being subject to FEC investigation, enforcement, and penalties. Therefore, CU will not broadcast this ad unless it receives the judicial relief sought herein and will be irreparably harmed by violation of its constitutional rights to free speech and association.

33. There is no adequate remedy at law.

## Count 1

34. Citizens United realleges and incorporates by reference all of the allegations contained in all of the preceding paragraphs.

35. As applied to (**a**) communications that may not be prohibited as electioneering communications under *WRTL II*, 127 S. Ct. 2652, and (**b**) Citizens United's Ads, the Disclosure Requirements, i.e., BCRA §§ 201 and 311, are unconstitutional because the activity is not "unambiguously related to the campaign of a particular federal candidate." *Buckley*, 424 U.S. at 80. Failing this threshold requirement, the Disclosure Requirements do not come within congressional authority to regulate elections and are overbroad for sweeping in First Amendment activity without authority.

36. As applied to (**a**) communications that may not be prohibited as electioneering communications under *WRTL II*, 127 S. Ct. 2652, and (**b**) Citizens United's Ads, the Disclosure Requirements are unconstitutional under the First Amendment guarantees of free expression and association.

## Count 2

37. Citizens United realleges and incorporates by reference all of the allegations contained in all of the preceding paragraphs.

38. As applied to the broadcasting of *Hillary*, the Disclosure Requirements, i.e., BCRA §§ 201 and 311, are unconstitutional because the activity is not "unambiguously related to the campaign of a particular federal candidate." *Buckley*, 424 U.S. at 80. Failing this threshold requirement, the Disclosure Requirements do not come within congressional authority to regulate elections and are overbroad for sweeping in First Amendment activity without authority.

39. As applied to *Hillary*, the Disclosure Requirements are unconstitutional under the First Amendment guarantees of free expression and association.

## Count 3

**40.** Citizens United realleges and incorporates by reference all of the allegations contained in all of the preceding paragraphs.

41. As applied to the broadcasting of *Hillary*, the Prohibition is unconstitutional because the documentary is not "unambiguously related to the campaign of a particular federal candidate," *Buckley*, 424 U.S. at 80, and because the movie "may reasonably be interpreted as something other than as an appeal to vote for or against a specific candidate." *WRTL II*, 127 S. Ct. at 2670. Failing this threshold requirement, the Prohibition does not come within congressional authority to regulate elections and is overbroad for sweeping in First Amendment activity without authority.

42. As applied to *Hillary*, the Prohibition is unconstitutional under the First Amendment guarantees of free expression and association.

## Count 4

**43.** Citizens United realleges and incorporates by reference all of the allegations

contained in all of the preceding paragraphs.

44. As applied to the broadcasting of the ad entitled "Questions," the Prohibition is unconstitutional because the ad is not "unambiguously related to the campaign of a particular federal candidate," *Buckley*, 424 U.S. at 80, and because the ad "may reasonably be interpreted as something other than as an appeal to vote for or against a specific candidate." *WRTL II*, 127 S. Ct. at 2670. Failing this threshold requirement, the Prohibition does not come within congressional authority to regulate elections and is overbroad for sweeping in First Amendment activity without authority.

45. As applied to the ad entitled "Questions," the Prohibition is unconstitutional under the First Amendment guarantees of free expression and association.

## Count 5

**46.** Citizens United realleges and incorporates by reference all of the allegations contained in all of the preceding paragraphs.

47. The Prohibition should be declared unconstitutional on its face because it has not proven workable in application, as required by *Wisconsin Right to Life v. FEC*, 126 S. Ct. 1016 (2006).

48. The Prohibition is unconstitutional under the First Amendment guarantees of free expression and association.

### PRAYER FOR RELIEF

Wherefore, Citizens United prays for the following relief:

1. a declaratory judgment declaring BCRA §§ 201, 203, and 311 unconstitutional as applied to (**a**) communications that may not be prohibited as electioneering communications

under *WRTL II*, 127 S. Ct. 2652, (**b**) Citizens United's Ads, and (**c**) *Hillary: The Movie.*

2. a preliminary and permanent injunction enjoining the FEC from enforcing the challenged provisions as applied to (**a**) communications that may not be prohibited as electioneering communications under *WRTL II*, 127 S. Ct. 2652, (**b**) Citizens United's Ads, and (**c**) *Hillary: The Movie.*

3. a declaratory judgment that BCRA § 203 is unconstitutional on its face, and preliminary and permanent injunction enjoining the FEC from enforcing it.

4. costs and attorneys fees pursuant to any applicable statute or authority; and

5. any other relief this Court in its discretion deems just and appropriate.

## VERIFICATION

I, David N. Bossie, declare as follows:

1. I am the Chairman of the Board and President of Citizens United.

2. I have personal knowledge of Citizens United and its activities, including those set out in the foregoing *Amended Complaint*, and if called upon to testify I would competently testify as to the matters stated herein.

3. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this *Amended Complaint* concerning Citizens United and its planned activity are true and correct. Executed on December 21, 2007.

/s/ David N. Bossie
David N. Bossie
Citizens United

**Amended Verified Complaint**

Respectfully submitted,

/s/ James Bopp, Jr.
James Bopp, Jr.

/s/ Richard E. Coleson
Richard E. Coleson*

/s/ Jeffrey P. Gallant
Jeffrey P. Gallant*

/s/ Clayton J. Callen
Clayton J. Callen*

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, IN 47807-3510
812/232-2434 telephone
812/234-3685 facsimile
  *pro hac vice motion pending
*Counsel for Plaintiff*

# Exhibit 1—Citizens United's Ads

**"Wait"**

:10

[Image(s) of HRC on screen]

If you thought you knew everything about Hillary Clinton . . . wait 'til you see the movie.

[Film Title Card]

[Visual Only] Hillary: The Movie.

[Visual Only] www.hillarythemovie.com

**"Pants"**

:10

[Image(s) of HRC on Screen]

First, a kind word about Hillary Clinton: [Ann Coulter Speaking & Visual] She looks good in a pant suit.

Now, a movie about everything else.

[Film Title Card]

[Visual Only] Hillary: The Movie

[Visual Only] www.hillarythemovie.com

**"Questions"**

:30

[Image(s) of HRC on Screen]

Who is Hillary Clinton?

[JEFF GERTH Speaking & Visual] [S]he's continually trying to redefine herself and figure out who she is . . .

[ANN COULTER Speaking & Visual] [A]t least with Bill Clinton he was just good time Charlie. Hillary's got an agenda . . .

[DICK MORRIS Speaking & Visual] Hillary is the closest thing we have in America to a European socialist . . .

If you thought you knew everything about Hillary Clinton . . . wait 'til you see the movie.

[Film Title Card]

[Visual Only] Hillary: The Movie. In theaters [on DVD] January 2007.

[Visual Only] www.hillarythemovie.com

**Complaint**

**Exhibit 2**—Script of *Hillary: The Movie* **(filed separately under seal)**

## Certificate of Service

I certify that on December 21, 2007, the foregoing document was served by first class mail and by email in PDF form to the following:

Thomasenia P. Duncan, General Counsel
Adav Noti
FEDERAL ELECTION COMMISSION
999 E Street, NW
Washington, D.C. 20436
(202) 694-1650
tduncan@fec.gov
anoti@fec.gov

/s/ James Bopp, Jr.
James Bopp, Jr.
BOPP, COLESON & BOSTROM