**United States District Court**
**District of Columbia**

| | |
|---|---|
| **Citizens United**, | |
| *Plaintiff*, | **Case No. 07-2240-RCL** |
| *v.* | |
| **Federal Election Commission**, | THREE-JUDGE COURT |
| *Defendant.* | |

## Second Motion for Preliminary Injunction

Citizens United moves for a preliminary injunction as set out below and for the reasons set out in the accompanying *Memorandum* and *Amended Verified Complaint for Declaratory and Injunctive Relief*. Fed. R. Civ. P. 65(a).

In its first preliminary injunction motion, Citizens United challenged the constitution-ality of **(a) § 201** (the "**Reporting Requirement**") of the Bipartisan Campaign Reform Act of 2002 ("BCRA") and **(b)** BCRA **§ 311** (the "**Disclaimer Requirement**") as applied to communications that meet the statutory definition of electioneering communications, 2 U.S.C. § 434(f)(3), but are not properly considered electioneering communications for any purpose, including disclosure, because the "ads may reasonably be interpreted as something other than as an appeal to vote for or against a specific candidate, . . . are not the functional equivalent of express advocacy, and therefore fall outside the scope of *McConnell*'s holding," *FEC v. Wisconsin Right to Life*, 127 S. Ct. 2652, 2670 (2007) ("*WRTL II*"), and, specifically, Citizens United's planned advertising (the "Ads") promoting a new documentary shortly to be released in theaters and in DVD format. Citizens United continues that challenge in its

**Second PI Motion**                    1

*Amended Complaint* and continues to seek the relief requested in the prior preliminary injunction.

The present preliminary injunction motion additionally challenges the constitutionality of the Disclosure Requirements as applied to a documentary film entitled *Hillary: The Movie*. It also challenges the electioneering communication prohibition at BCRA **§ 203** ("**Prohibition**"), codified at 2 U.S.C. § 441b, as applied to the *Hillary* film, as applied to the "Questions" ad, and facially.

Citizens United submits that it meets the standards for a preliminary injunction, i.e., it has probable success on the merits, it will be irreparably harmed, others will not be substantially harmed, the public interest will be served, and there is no adequate remedy at law.

Pursuant to Local Rule of Civil Procedure 7(m), Citizens United has conferred with legal counsel for the FEC regarding this motion. The FEC states that it takes no position on this motion because of inadequate time to consider it.

Because a preliminary injunction presents no monetary risks to the FEC, Citizens United requests that bond be set at $1. Fed. R. Civ. P. 65(c).

For the reasons stated in the accompanying *Memorandum* and *Amended Complaint*, Citizens United prays that the Court grant this motion and preliminarily enjoin the FEC from enforcing the challenged provisions as applied, and the Prohibition facially, until a final hearing on the merits.

Oral argument is requested on this motion because of the complex legal arguments involved in this case.

**Second PI Motion**                    2

Respectfully submitted,


/s/ James Bopp, Jr.
James Bopp, Jr., D.C. Bar #CO0041
Richard E. Coleson*
Jeffrey P. Gallant*
Clayton J. Callen*
Bopp, Coleson & Bostrom
1 South Sixth Street
Terre Haute, IN 47807-3510
812/232-2434 telephone
812/234-3685 facsimile
   * pro hac vice motion pending
*Counsel for Plaintiff*

**United States District Court**
**District of Columbia**

| | | |
|---|---|---|
| Citizens United, | | |
| | *Plaintiff*, | Case No. 07-2240-RCL |
| *v.* | | |
| Federal Election Commission, | | THREE-JUDGE COURT |
| | *Defendant.* | |

# Memorandum in Support of
# Second Motion for Preliminary Injunction

———————

James Bopp, Jr., D.C. Bar #CO0041
Richard E. Coleson*
Jeffrey P. Gallant*
Clayton J. Callen*
BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, IN  47807-3510
812/232-2434 telephone
812/234-3685 facsimile
    *pro hac vice motion pending
*Counsel for Plaintiff*

**Second PI Memorandum**

# Table of Contents

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    I.     Plaintiff Has a Substantial Likelihood of Success on the Merits. . . . . . . . . . . 3

    II.    Plaintiff Will Suffer Irreparable Injury Without the Injunction. . . . . . . . . . . 12

    III.   The Injunction Will Not Substantially Injure Others. . . . . . . . . . . . . . . . . . . 14

    IV.   The Injunction Furthers the Public Interest. . . . . . . . . . . . . . . . . . . . . . . . . . 16

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

# Table of Authorities

**Cases**

*Buckley v. Valeo*, 424 U.S. 1 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5

*FEC v. Wisconsin Right to Life*, 127 S. Ct. 2652 (2007) . . . . . . . . . . . . . . . . . . . . . . . *passim*

*McConnell v. FEC*, 540 U.S. 93 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-4, 9

**Statutes, Rules, and Constitutional Provisions**

11 C.F.R. § 114.15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-7

2 U.S.C. § 441b . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Bipartisan Campaign Reform Act of 2002 ("BCRA") . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Pub. L. No. 107-155 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*U.S. Const. amend. I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

# Introduction

Citizens United has filed a prior preliminary injunction motion and memorandum, which it still wants decided. But a new fact pattern arose on December 20, 2007, which gives rise to the need for the *Amended Complaint* that has been filed, providing the new verified facts and adding counts based thereon. This present preliminary injunction and memorandum address the new facts and counts and are supplemental to the ones previously filed by Citizens United. Plaintiff will therefore not burden the Court by cutting and pasting materials already briefed. Rather, the Court will be cited to the prior memorandum ("First PI Memo") for much of the material herein, in order to facilitate the Court's reading and analysis as to the new facts, claims, and motion.

Both the First PI Memo and the present one address as-applied challenges—on the pattern of *FEC v. Wisconsin Right to Life*, 127 S. Ct. 2652 (2007) ("*WRTL II*")—to provisions of the Bipartisan Campaign Reform Act of 2002 ("BCRA"), Pub. L. No. 107-155, 116 Stat. 81, that had been facially upheld in *McConnell v. FEC.* 540 U.S. 93 (2003). In addition, the present memorandum addresses a facial challenge to the electioneering communication prohibition at BCRA § 203 (prohibiting corporations and labor unions from making electioneering communications) for reasons raised in *WRTL II.*

Specifically, this memorandum addresses the challenges to the constitutionality of BCRA **§ 201 (**"Disclosure Requirement") and BCRA **§ 311** ("Reporting Requirement"), collectively the "**Disclosure Requirements**," as applied to *Hillary: The Movie.* And it addresses the challenge to BCRA **§ 203**, the "**Prohibition**," codified at 2 U.S.C. § 441b, as applied to *Hillary* and the "Questions" ad, and also the facial challenge to the Prohibition.

**Second PI Memorandum**                                    1

As set out in the Introduction to the First PI Memo, from *Buckley v. Valeo,* 424 U.S. 1 (1976), to *WRTL II*, the Supreme Court has required that Congress only regulate communications that are "unambiguously related to the campaign of a particular federal candidate," *id.* at 80, because they call for a vote for or against that candidate. *See id.* (connecting unambiguous campaign related requirement with solicitation to vote for or against a candidate). *Buckley* expressly applied this unambiguously-campaign-related requirement to the *disclosure of expenditures*. *Id.* at 80. Therefore, it has direct application here.

*McConnell* facially upheld the Disclosure Requirements. 540 U.S. at 194-202. As set out below, the Disclosure Requirements are unconstitutional as applied to the activities planned by Citizens United, which activities are not unambiguously campaign related—in that they do not urge a vote for against a candidate—and so are beyond Congress' authority to regulate and are protected by the First Amendment. *McConnell* also facially upheld the Prohibition, *id.* at 206, which *WRTL II* narrowed, 127 S. Ct. at 2667, and for which *WRTL II* left the door open to facial invalidation based on the sort of circumstances that have now arisen. *See id.* at 2674 (Alito, J., concurring).

## Facts

Citizens United incorporates by reference the facts set out in ¶¶ 5-33 of the verified *Amended Complaint*.

## Argument

Citizens United refers the Court to the standards governing preliminary injunctions and the arguments set out in the introductory part of its Argument section in its prior memorandum. First PI Memo at 9-12.

**Second PI Memorandum**                         2

# I. Plaintiff Has a Substantial Likelihood of Success on the Merits.

The Court is respectfully referred to Part I.A, of the First PI Memo for argument concerning the implications of the Supreme Court's requirement that restrictions on what *WRTL II* styled "issue advocacy," 127 S. Ct. at 2659, 2667, 2671-73, or "political speech," *id.* at 2659-60, 2664-66, 2669, 2671-74, are not permitted unless the speech is "unambiguously related to the campaign of a particular federal candidate," *id.* at 80, because it calls for a vote for or against that candidate. Electioneering speech is referred to in *WRTL II* as "campaign speech," *id.* at 2659, 2668, 2671-73, to distinguish it from fully-protected "political speech" or "issue advocacy."

The Court is referred to Part I.B of the First PI Memo for argument concerning *WRTL II*'s mandate that as-applied challenges must be workable and protect core political speech. The workability and protection requirements have clear applicability to the as-applied challenges to the Disclosure Requirements, but they govern particularly powerfully the as-applied and facial challenge to the Prohibition, as developed further *infra*.

The Court is referred to Part I.C of the First PI Memo for argument concerning the fact that *McConnell* did not decide the present issues so as to preclude the present as-applied challenges. Of course, *WRTL II* itself established that there could be both as-applied and facial challenges to the Prohibition.

In Part I.D of the First PI Memo, Citizens United explained why its Ads were not unambiguously campaign related (by soliciting a vote for or against a candidate) and why they were the sort of highly-protected, non-electioneering, core "political speech" that *WRTL II* said could not constitutionally be permitted to fall within the definition of "electioneering

**Second PI Memorandum**                    3

communication." *Id.* at 2667. *WRTL II* reiterated that such communications could not be "regulated" or "restricted,"[1] not just that it was forbidden to *prohibit* them. Given that *WRTL II* said that "issue advocacy" or "political speech" is not "campaign speech" or electioneering, *see supra*, there is no more justification for regulating such protected speech as an "*electioneering* communication" by the Disclosure Requirements than there was to regulate it by a prohibition. If it is not campaign speech (i.e., calling for a vote for or against a candidate), Congress has no authority to regulate it.

The Disclosure Requirement is also unconstitutional as applied to *Hillary: The Movie*. The script of *Hillary* has been filed under seal because it is copyrighted, intellectual property

---

[1]The controlling opinion made this clear by repeatedly stating that ads that are not the functional equivalent of express advocacy under the no-other-reasonable interpretation test are to be free from "regulation," not just prohibition. *See WRTL II*, 127 S. Ct. at 2671 ("we reject the contention that issue advocacy may be **regulated** because express election advocacy may be"); *id.* ("A corporate ad expressing support for the local football team could not be **regulated** on the ground that such speech is less "core" than corporate speech about an election"); *id.* ("This Court has never recognized a compelling interest in **regulating** ads, like WRTL's, that are neither express advocacy nor its functional equivalent. The District Court below considered interests that might justify **regulating** WRTL's ads here, and found none sufficiently compelling. We reach the same conclusion"); *id.* at 2664 ("BCRA survives strict scrutiny to the extent it **regulates** express advocacy or its functional equivalent"); *id.* at 2672 ("Issue ads like WRTL's are by no means equivalent to contributions, and the *quid-pro-quo* corruption interest cannot justify **regulating** them"); *id.* ("such a prophylaxis-upon-prophylaxis approach to **regulating** expression is not consistent with strict scrutiny"); *id.* at 2673 ("the interest recognized in *Austin* as justifying **regulation** of corporate campaign speech and extended in *McConnell* to the functional equivalent of such speech has no application to issue advocacy of the sort engaged in by WRTL"); *id.* at 2672 ("to justify **regulation** of WRTL's ads, this interest must be stretched yet another step to ads that are *not* the functional equivalent of express advocacy. Enough is enough"); *id.* at 2659 ("We further conclude that the interests held to justify **restricting** corporate campaign speech or its functional equivalent do not justify **restricting** issue advocacy"); *id.* ("we have recognized that the interests held to justify the **regulation** of campaign speech and its "functional equivalent" might not apply to the **regulation** of issue advocacy") (citations and quotations omitted); *id.* at 2671 ("That a compelling interest justifies **restrictions** on express advocacy tells us little about whether a compelling interest justifies **restrictions** on issue advocacy").

**Second PI Memorandum**          4

of Citizens United, who intends to market *Hillary* in theaters, in broadcasts, on DVDs, and in a compendium book to be sold with the DVDs. However, the Court is able to review the script and see that the following representations are accurate. *Hillary* contains no express advocacy, so it is not an "independent expenditure." But it does mention Senator Clinton, a candidate, and because it will be broadcast to sufficient potential viewers in electioneering communication periods before presidential primaries it will qualify under the statutory electioneering communication definition, which makes it subject to the Disclosure Requirements. But while, as a documentary, it discusses Hillary Clinton and has footage of numerous people discussing her, *Hillary* is not "unambiguously campaign related," *Buckley*, 424 U.S. at 80, by calling for a vote for or against her. *See id.* at 80 (unambiguously campaign related requirement connected to calling for a vote in communications). And because it "may reasonably be interpreted as something other than as an appeal to vote for or against a specific candidate, . . . [it is] not the functional equivalent of express advocacy, and therefore fall[s] outside the scope of *McConnell*'s holding," *WRTL II*, 127 S. Ct. at 2670, so that it is not properly subject to the Disclosure Requirements because it is not properly an *electioneering* communication. It is, to use *WRTL II*'s distinction, "political speech" or "issue advocacy" not "campaign speech" or "electioneering." *See supra.* Consequently, Congress has no justification for requiring disclosure concerning *Hillary: The Movie.*

Citizens United also challenges the Prohibition as applied to *Hillary*. While the movie does not properly fit the electioneering communication definition, so that it ought not to be prohibited, Citizens United remains at risk for investigation, enforcement, and penalties and is chilled from broadcasting *Hillary*. The movie does not fit within the safe harbor that the

**Second PI Memorandum**                   5

FEC has created at 11 C.F.R. § 114.15(b) because it neither focuses on a governmental issue for grassroots lobbying nor proposes a commercial transaction and, moreover, it cannot be said of the movie that it "(1) Does not mention any election, candidacy, political party, opposing candidate, or voting by the general public," or "(2) Does not take a position on any candidate's or officeholder's character, qualifications, or fitness for office." *Id.*

Nor is *Hillary* protected by the FEC's interpretation of the rule established by *WRTL II*. 127 S. Ct. at 2667. The FEC initially states it as follows: "Corporations . . . may make an electioneering communication . . . unless the communication is susceptible of no reasonable interpretation other than as an appeal to vote for or against a clearly identified candidate." 11 C.F. R. § 114.15(a). But in subsection (c), "Rules of interpretation," the FEC immediately demoted *WRTL II*'s test to just part of the FEC test:

> (c) Rules of interpretation. If an electioneering communication does not qualify for the safe harbor in paragraph (b), the Commission will consider whether the communication includes any indicia of express advocacy and whether the communication has an interpretation other than as an appeal to vote for or against a clearly identified Federal candidate in order to determine whether, on balance, the communication is susceptible of no reasonable interpretation other than as an appeal to vote for or against a clearly identified Federal candidate.
> (1)  A communication includes indicia of express advocacy if it:
>      (i)  Mentions any election, candidacy, political party, opposing candidate, or voting by the general public; or
>      (ii) Takes a position on any candidate's or officeholder's character, qualifications, or fitness for office.
> (2)  Content that would support a determination that a communication has an interpretation other than as an appeal to vote for or against a clearly identified Federal candidate includes content that:
>      (i)  Focuses on a public policy issue and either urges a candidate to take a position on the issue or urges the public to contact the candidate about the issue; or
>      (ii) Proposes a commercial transaction, such as purchase of a book, video or other product or service, or such as attendance (for a fee) at a film exhibition or other event; or

      (iii)    Includes a call to action or other appeal that interpreted in conjunction with the rest of the communication urges an action other than voting for or against or contributing to a clearly identified Federal candidate or political party.

  (3)    In interpreting a communication under paragraph (a), any doubt will be resolved in favor of permitting the communication. [11 C.F.R. § 114.15(c).]

Given the FEC's test, there is no way for Citizens United to know whether it will be subject to an investigation, enforcement, and penalties for broadcasting *Hillary*. First, as already noted, the movie (**a**) mentions election-related topics (election, candidacy, party, voting) and (**b**) takes a position on a candidate's character, qualifications and fitness for office—both of which are listed by the FEC as "indicia of express advocacy." To be sure, *WRTL II* mentioned such matters in *applying* its no-other-reasonable-interpretation test to a *specific* type of issue advocacy, i.e., grassroots lobbying, 127 S. Ct. at 2667, but it did not substitute this fact-specific application of the test for the test itself. Second, the FEC's rule requires certain "content" and restates, for the third time, the *WRTL II* test. This repeated use of the test to interpret the test is confusing and demotes the actual *WRTL II* test to a mere element in an FEC-created interpretation of the proper test. And the required "content" is either (**i**) grassroots lobbying activity or (**ii**) proposing a commercial transaction, or (**iii**) "includ[ing] a call to action . . . other than voting"—none of which applies to *Hillary*. What is missing is *WRTL II*'s recognition that "[i]ssue advocacy conveys information and educates," *id.*, which it may do without *any* call to action—as *Hillary* does.

Citizens United also challenges the Prohibition as applied to the "Questions" ad. When it filed the first Complaint, Citizens thought that the ad clearly fit within the FEC's new rule exempting communications from the Prohibition. But on the evening of December

**Second PI Memorandum**          7

20, 2007, the FEC filed its memorandum opposing preliminary injunction (Doc. #18), in

which it stated that

> the Commission has not had a sufficient opportunity to consider whether
> plaintiff's third ad (titled "Questions") qualifies as a *WRTL* ad under the
> Commission's new regulations. Although plaintiff's first two proposed ads
> appear to come within the *WRTL* exemption — thus placing Citizens's
> United's constitutional claim squarely before the Court as applied to those two
> ads — "Questions" poses a closer question that the Commission has not had
> an adequate opportunity to address." [Doc. #18 at 8-9.]

If the FEC can't tell by looking at an ad whether it meets the FEC's own exception to the

Prohibition, then Citizens United can't know whether it may even broadcast the ad without

being subject to FEC investigation, enforcement, and penalties. This highlights perfectly the

need for the declaratory and injunctive relief sought as to this ad.

So once again an advocacy group is before this Court seeking declaratory and

injunctive relief from the Prohibition for its planned activity. This return to the courts is

necessary for the sake of Citizens United, the First Amendment, and a system of participa-

tory, self-government where the people are sovereign—but it demonstrates the need for a

facial remedy, as discussed next.

Citizens United also challenges the Prohibition on its face. In BCRA, Congress

mandated that courts "advance on the docket and . . . expedite to the greatest possible extent

the disposition of the action," 116 Stat. 114, and *WRTL II* mandated that as-applied chal-

lenges must be workable and highly protective of First Amendment rights in order to make

them an adequate remedy—to avoid the necessity of overturning *McConnell*'s facial

upholding of the prohibition at issue. 127 S. Ct. at 2666-67. WRTL had expressly asked the

Supreme Court in *WRTL II* to overrule its facial upholding of the electioneering communica-

tion restrictions in *McConnell*, 540 U.S. 93, unless the Court provided the relief of both (**a**) stating a generally-applicable test to reduce the need for litigation and (**b**) making as-applied challenges an adequate remedy for protecting the First Amendment liberties of groups seeking to broadcast genuine issue ads by limiting the burdens of litigation. Brief for Appellee at i, 62, 65-70, *WRTL II*, 127 S. Ct. 2652.

WRTL described to the Supreme Court how the as-applied remedy had been wholly inadequate in vindicating its First Amendment rights due to the heavy burdens of expensive, burdensome, and intrusive discovery and litigation, with relief coming only long after the effective opportunity to run WRTL's ads had passed. *Id.* WRTL described the numerous depositions to which it was subjected and the fact that it "was required to produce a substantial volume of documents about its inner workings, plans, and finances—all information that an ideological group would otherwise keep private." *Id.* at 10 n.19. And WRTL summarized the future inadequacy of the as-applied remedy—unless the Supreme Court's holding made it adequate by limiting how future litigation should be conducted—as follows:

> So any citizen group having the temerity to want to run future ads must (1) plan well in advance to allow ample litigation time (problematic because the need for grassroots lobbying frequently arises on short notice), (2) retain a lawyer, (3) endure the invasion of its privacy by a discovery investigation at the hands of the FEC and Intervenors (which often will include their political opponents), and (4) pay the legal expenses and costs to endure the scorched-earth litigation practices of the federally-funded FEC and the statutorily-permitted Intervenors in order to get prior permission from a court to run a constitutionally-protected communication at the core of our system of self-governance by the people. [*Id.* at 66.]

*WRTL II* took explicit notice of the "chill" resulting from "'costly, fact-dependent litigation,'" 127 S. Ct. at 2665-66 (*quoting* Brief for Appellee [FEC] at 39, *Wisconsin Right*

*to Life v. FEC*, 546 U.S. 410 (2006) ("*WRTL I*")), and set out the example of the burden of

litigation imposed on WRTL in attempting to vindicate its First Amendment liberties:

> Consider what happened in these cases. The District Court permitted extensive
> discovery on the assumption that WRTL's intent was relevant. As a result, the
> defendants deposed WRTL's executive director, its legislative director, its
> political action committee director, its lead communications consultant, and
> one of its fundraisers. WRTL also had to turn over many documents related to
> its operations, plans, and finance. Such litigation constitutes a severe burden
> on political speech. [*Id.* at 2666 n.5.]

In response to these identified problems, *WRTL II* (**a**) stated a First Amendment-

protective test, *id.* at 2667, and (**b**) prescribed how as-applied challenges must be conducted

to assure adequate protection for vital First Amendment liberties. *Id.* at 2666-67. *WRTL II*

said that "the proper standard . . . must be objective, focusing on the substance of the

communication." 127 S. Ct. at 2666. There must be "minimal if any discovery, to allow

parties to resolve disputes quickly without chilling speech through the threat of burdensome

litigation." *Id.* There must not be "open-ended . . . factors" that result in "'complex argument

in a trial court and a virtually inevitable appeal.'" *Id.* (citation omitted). The litigation "must

give the benefit of any doubt to protecting rather than stifling speech." *Id.* at 2667 (citation

omitted). *See also id.* at 2669 n.7 (restating test and limitations on conduct of as-applied

litigation). In addition to joining the controlling opinion, which sought to make the as-applied

remedy workable, Justice Alito expressly noted that if as-applied challenges didn't prove

workable the Court would be asked to consider a facial overturning of the Prohibition. *Id.* at

2674.

That day has come. As shown by this case, potential speakers still cannot know for

certain whether a documentary like *Hillary* or an ad like "Questions" is protected or unpro-

tected speech. They still must bear the expense and burden of hiring a lawyer to vindicate their rights. As-applied remedies, even when expedited, still are too slow to keep up with the fast-moving world of issue advocacy and commercial ventures. Citizens United received an offer to broadcast *Hillary* on December 20 and would like to be able to immediately respond, but it cannot because it must await judicial protection. By their very nature, ads and a film of the sort at issue in this case will be hot commodities immediately before the primaries, which means that the as-applied remedies that *WRTL II* provided must be brought in the middle of the winter holidays when all involved have plans to be out of the office—some for more extended vacation time. The FEC complains that it is "particularly busy" right now, yet curiously suggests that Citizens United might have taken the slow and uncertain route of an advisory opinion. Doc. #18 at 9. The Court may take judicial notice of the widespread news accounts about whether the FEC will even have enough commissioners to issue advisory opinions at present. The FEC and the "reform" community may still be counted on to resist, rather than facilitate, the obtaining of required judicial relief. The FEC's very opposition to consolidating the hearings on the preliminary injunction and the merits is an argument for delay that proves the inadequacy of the as-applied remedy in situations such as the present. And rather than acquiescing to *WRTL II*'s clear message that all doubts must be resolved in favor of freedom of speech and against censorship, the FEC has reintroduced doubt with its recent rule—and now by questioning whether the "Questions" ad is subject to the Prohibition.

Enough is enough. Congress' burdensome experiment in restricting the free involvement of citizens and citizen groups in the marketplace of ideas must be ended. This Court

**Second PI Memorandum**                    11

should do what *WRTL II* indicated might need to be done and facially invalidate the election-eering prohibition.

## II. Plaintiff Will Suffer Irreparable Injury Without the Injunction.

In addition to having a high likelihood of success on the merits, Plaintiff will suffer irreparable harm unless it receives the requested injunctive relief. As noted in the initial discussion of the implications of *WRTL II* for the present motion, *supra* Part I, WRTL forever lost the opportunity to broadcast its fully protected issue ads because it did not receive a preliminary injunction. It was plainly irreparably harmed.

Here, too, Plaintiff wishes to engage in First Amendment activities that are "'both certain and great . . . actual not theoretical,'" *England*, 454 U.S. at 297 (citation omitted), are "of such imminence that there is a 'clear and present' need for equitable relief to prevent irreparable harm," *id.* (citation and emphasis omitted), and in which "the injury [is] beyond remediation." *Id.* Plaintiff is barred by criminal penalties from engaging in First Amendment expression and association activities it wishes to do, which "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Plaintiff has decided that it will not do its intended First Amendment activities as planned unless it receives judicial protection, and such self-censorship "[i]s a harm that can be realized even without actual prosecution." *Virginia v. American Bookseller's Ass'n Inc.*, 484 U.S. 383, 393 (1988). It has "establish[ed] that [it is] or will be engaging in constitutionally protected behavior," which demonstrate[s] that the allegedly impermissible government action would chill allowable individual conduct." *England*, 454 F.3d at 301. "[Plaintiff's] 'First Amendment interests are either threatened or in

**Second PI Memorandum**                    12

fact being impaired at the time relief is sought.'" *Id.* (citation omitted). This constitutes irreparable harm.[2]

 *WRTL II* expressly rejected a number of arguments by the FEC and Intervenors in that case that the FEC might resurrect here in arguing that Plaintiff will suffer no irreparable harm. *WRTL II* rejected the notion that, because WRTL had the option of doing its issue advocacy through a political committee ("PAC") with federal funds, it was not harmed. 127 S. Ct. at 2671 n.9. This means that neither the availability of a federal-funds option nor of an alleged alter-ego option (which alter-ego notion is erroneous as to PACs and their connected corporations because they are legally separate entities) removed the harm to WRTL in its own capacity, using state funds. And *WRTL II* rejected the notion that a speaker could just change the message, e.g., by not mentioning a federal candidate, *id.*, because "'the rule of protection under the First Amendment [is] that a speaker has the autonomy to choose the content of his own message.'" *Id.* (citation omitted).[3]

---

[2]The D.C. Circuit has advised looking to the merits in constitutional-rights cases:
 [I]n cases involving a claim by movant of interference with protected free-doms or other constitutional rights, the finding of irreparable injury cannot meaningfully be rested on a mere contention of a litigant, but depends on an appraisal of the validity, or at least the probable validity, of the legal premise underlying the claim of right in jeopardy of impairment. It often happens that when the parties present conflicting claims of rights and conflicting fears of threatened injury, one from the impact of the activity sought to be restrained, the other from the impact of any injunctive order, the situation realistically facing the court is this, that one party or the other will be injured whichever course is taken. A sound disposition in the interest of justice from the process of discerning and weighing of pertinent interests must depend on a reflective and attentive appraisal as to the outcome on the merits. [*Delaware & H. Ry. Co. v. United Transp. Union*, 450 F. 3d 603, 619-20 (D.C. Cir. 1971).]

[3]In the *WRTL II* litigation, the FEC actually opposed the preliminary injunction on the
                     (continued...)

**Second PI Memorandum**      13

Plaintiff's harms are irreparable and irremediable by monetary damages at law. Its

rights can only be protected by declaratory and injunctive relief.

### III. The Injunction Will Not Substantially Injure Others.

As noted in the discussion of the implications of *WRTL II* for the present preliminary

injunction motion in Part I of the First PI Memo, WRTL's broadcast of its fully-

constitutionally-protected issue advocacy would not, and did not, harm anyone. The questions

of harm to others and serving the public interest are, of course, inversely proportional to the

likelihood of success on the merits. As the District of Columbia Circuit said in *United*

*Transportation Union*, 450 F.3d at 620, in cases where harms are claimed on both sides, the

Court should look to the merits. *See supra* n.20. Given the high likelihood of success on the

merits, the likelihood of harm to the FEC or anyone else is proportionally diminished.

Nonetheless, the FEC will doubtless argue that it is harmed if it is denied the

opportunity to enforce a statute, as is it did in its successful effort to deny WRTL's First

Amendment right to timely broadcast its 2004 anti-filibuster ads. But that generalized "harm"

---

[3](...continued)
novel theory that this Court's preliminary injunction would not provide WRTL any effective
protection because in the event WRTL ultimately lost the FEC, or the Attorney General (if a
violation were knowing and willful), could still bring an enforcement action. *See* Defendant
Federal Election Commission's Opposition to Plaintiff's Motion for a Preliminary Injunction
at 40-43, *WRTL v. FEC*, 466 F. Supp. 2d 195 (D.D.C. 2006) (No. 04-1260). If the FEC's
novel theory were correct, this Court's preliminary injunctions would be meaningless, which
the present Plaintiff does not believe is true. And there is no reason to believe that the
Attorney General would not abide by any injunction issued by this Court. Moreover, the
FEC's novel position is contrary to the position of the four dissenting Justices in *WRTL II*
who believed that this Court's preliminary injunction would provide an adequate remedy to
protect a plaintiff's rights. *See WRTL II*, 127 S. Ct. at 2704 (Souter, J., joined by Stevens,
Ginsburg & Breyer, JJ.) It is likely that the other Justices would agree that a federal court's
preliminary injunction is efficacious.

**Second PI Memorandum**                 14

cannot control or it would ban all preliminary injunctions in all cases where the constitution-ality of a statute (or a regulation) is challenged, making Federal Rule of Civil Procedure 65 (and its authorizing statute) a meaningless rule as applied to the government. Such a generalized "harm" will always be present for any agency or other enforcement entity—even in the context of litigation over highly-protected First Amendment activities. The First Amendment is antithetical to any such strong presumption of the constitutionality of a federal statute that would underpin the notion that the FEC is automatically harmed by inability to enforce a statute that has been credibly challenged as to its compliance with First Amendment mandates.

Finally, there is no harm to anyone else from the proposed activity. Until BCRA, no one ever thought that Congress could require disclosure as to First Amendment activity that is not unambiguously related to the campaign of a candidate for federal office, and post-*WRTL II* that position has both been reaffirmed and the type of speech at issue in this case has been excluded from the electioneering category. And broadcasting a documentary movie that seems to be protected under *WRTL II*, although the FEC's enforcement policy has blurred the prior clarity, certainly cannot be a cognizable harm. To be sure, there may be those who would prefer that *Hillary* not be broadcast, but there is no cognizable interest to be consid-ered here where Congress' ability to regulate *campaign* speech is the foundation for regula-tion. So any possible perceived "harm" is not cognizable here—especially given the high likelihood of success on the merits.

## IV. The Injunction Furthers the Public Interest.

As with harm to others, the question of the public interest follows the likelihood of success on the merits. Clearly, "[t]he First Amendment, in particular, serves significant societal interests." *Bellotti*, 435 U.S. at 766. It is clearly in the public interest for Americans to be able to associate and express themselves freely where there is no cognizable governmental interest justifying restriction. And it is in the public interest to receive the information that Plaintiff will offer in *Hillary*. Therefore, the requested injunctive relief serves the public interest.

## Conclusion

The Disclosure Requirements are unconstitutional as-applied to Citizens United's intended First Amendment activities, as is the Prohibition, and the Prohibition is also unconstitutional on its face. All the required elements for a temporary restraining order and a preliminary injunctive relief are met. This Court should expeditiously grant the requested injunctive relief.

Respectfully submitted,

/s/ James Bopp, Jr.
James Bopp, Jr., D.C. Bar #CO0041
Richard E. Coleson*
Jeffrey P. Gallant*
Clayton J. Callen*
BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, IN 47807-3510
812/232-2434 telephone
812/234-3685 facsimile
  * pro hac vice motion pending
*Counsel for Plaintiff*

**Second PI Memorandum**                    16

**United States District Court**
**District of Columbia**

| | |
|---|---|
| **Citizens United**, <br><br> *Plaintiff,* <br><br> *v.* <br> **Federal Election Commission**, <br><br> *Defendant.* | **Case No.** 07-2240-RCL_____ <br><br> THREE-JUDGE COURT |

## Order

    This action is before the Court on Plaintiff's preliminary injunction motions.  Because we previously granted Plaintiff's *Motion to Consolidate Hearings on the Preliminary Injunctions with the Merits*,  we now consider the merits of this cause.  We hold that the Disclosure Requirements of § 201 and § 311 of the Bipartisan Campaign Reform Act of 2002, Pub. L. No. 107-155, 116 Stat. 81, 88-89, 105, codified at 2 U.S.C. §§ 434(f), 441d(a), are unconstitutional as-applied to Citizens United's advertisements, broadcasts of *Hillary: The Movie*, and other communications that may not be prohibited as electioneering communications because such communications are not unambiguously campaign related.  We further hold that the electioneering communications prohibition of BCRA § 203 is unconstitutional both facially and as-applied to broadcasts of *Hillary: The Movie* and the "Questions" ad.

    It is ORDERED that the Defendant FEC is permanently enjoined from enforcing the Disclosure Requirements against Plaintiff's advertisements "Wait," "Pants," "Questions," and "*Hillary: The Movie*." Defendant is also permanently enjoined from enforcing § 203 of BCRA

because it is facially unconstitutional.

      SO ORDERED this _____ day of _____2007.


_____
United States Circuit Judge

_____
United States District Judge

_____
United States District Judge

Distribution:
James Bopp, Jr.
jboppjr@aol.com
Richard E. Coleson
rcoleson@bopplaw.com
Jeffrey P. Gallant
jgallant@bopplaw.com
Clayton J. Callen
ccallen@bopplaw.com
BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, IN 47807-3510


Thomasenia P. Duncan
Adav Noti
Steve N. Hajjar
FEDERAL ELECTION COMMISSION
999 E Street, NW
Washington, D.C.  20436

**Order**                                   3