# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

)
CITIZENS UNITED,                                  )
                                                  )
                    Plaintiff,                    )
                                                  )
          v.                                      )     Civ. No. 07-2240 (ARR, RCL, RWR)
                                                  )
FEDERAL ELECTION COMMISSION,                      )     REPLY MEMORANDUM
                                                  )
                    Defendant.                    )
_____)


## DEFENDANT FEDERAL ELECTION COMMISSION'S REPLY MEMORANDUM
## IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Thomasenia P. Duncan (D.C. Bar No. 424222)
General Counsel

David Kolker (D.C. Bar No. 394558)
Associate General Counsel

Kevin Deeley
Assistant General Counsel

Adav Noti (D.C. Bar No. 490714)
Attorney

COUNSEL FOR DEFENDANT
FEDERAL ELECTION COMMISSION
999 E Street NW
Washington, DC 20463
(202) 694-1650

July 11, 2008

## TABLE OF CONTENTS

I.    THE EC DISCLOSURE REQUIREMENTS ARE SUBSTANTIALLY RELATED
      TO IMPORTANT GOVERNMENT INTERESTS............................................................ 1

      A.    Disclosure Requirements Are Subject to Intermediate Scrutiny ............................ 1

      B.    Important Government Interests Support EC Disclosure ....................................... 7

      C.    The EC Disclosure Requirements Impose Minimal Constitutional Burdens ....... 12

II.   THE EC DISCLAIMER REQUIREMENTS ARE CONSTITUTIONAL....................... 14

III.  PLAINTIFF'S FILM IS THE FUNCTIONAL EQUIVALENT OF EXPRESS
      ADVOCACY ........................................................................................................ 18

      A.    No Specific "Words of Advocacy" Are Required for a Communication
            To Be the Functional Equivalent of Express Advocacy ....................................... 18

      B.    The Duration of Plaintiff's Communication Is Irrelevant..................................... 19

IV.   CONCLUSION ........................................................................................................ 21

# TABLE OF AUTHORITIES

## Cases

*Alaska Right to Life Comm. v. Miles*, 441 F.3d 773 (9th Cir. 2006) ("*ARTL*") ...............................4

*Bates v. Little Rock*, 361 U.S. 516 (1960).....................................................................................3

*Buckley v. Am. Constitutional Law Found., Inc.*, 525 U.S. 182 (1999) ("*ACLF*").................. 3-4, 6

*Buckley v. Valeo*, 424 U.S. 1 (1976) .....................................................2-3, 5, 7-9, 11, 13

*Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088 (9th Cir. 2003)................................... 4-5, 9

*Cal. Pro-Life Council, Inc. v. Randolph*, 507 F.3d 1172 (9th Cir. 2007) ....................................4, 9

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557 (1980)...............14

*Citizens Against Rent Control v. Berkeley*, 454 U.S. 290 (1981) ................................................ 8-9

*Citizens United v. FEC*, 530 F. Supp. 2d 274 (D.D.C. 2008)...................................................... 5-6

*Comm'n on Indep. Colls. & Univs. v. N.Y. Temp. State Comm'n on Regulation of Lobbying*,
        534 F. Supp. 489 (N.D.N.Y. 1982)..................................................................................10

*Davis v. FEC*, No. 07-320, 2008 WL 2520527 (U.S. June 26, 2008) ............................... 2-3, 5, 13

*FEC v. Furgatch*, 807 F.2d 857 (9th Cir. 1987) .........................................................................19

*FEC v. Massachusetts Citizens for Life, Inc.*, 479 U.S. 238 (1986) ("*MCFL*") ........................4, 9

*FEC v. Wisconsin Right to Life, Inc.*, 127 S. Ct. 2652 (2007) ("*WRTL*")..............5-6, 11, 13, 18-20

*First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765 (1978)...................................................... 8-9

*Gibson v. Florida Legislative Comm.*, 372 U.S. 539 (1963) .........................................................3

*Majors v. Abell*, 361 F.3d 349 (7th Cir. 2004)........................................................................6, 15

*McConnell v. FEC*, 540 U.S. 93 (2003)............................................................................... *passim*

*McConnell v. FEC*, 251 F. Supp. 2d 176 (D.D.C. 2003)............................................ 13, 16, 19-20

*McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995)................................................... 6-7, 13

*Meese v. Keene*, 481 U.S. 465 (1987).........................................................................................17

*NAACP v. Alabama*, 357 U.S. 449 (1958) .................................................................3

*Nat'l Ass'n of Mfrs. v. Taylor*, 549 F. Supp. 2d 68 (D.D.C. 2008)..............................11

*Nat'l Elec. Mfrs. Ass'n v. Sorrell*, 272 F.3d 104 (2d Cir. 2001) ............................. 15-16

*N.C. Right to Life Fund for Indep. Political Expenditures v. Leake*, 524 F.3d 427
    (4th Cir. 2008)......................................................................................................5

*United States v. Harriss*, 347 U.S. 612 (1954) .................................................... 9-10

*Wash. State Grange v. Wash. State Republican Party*, 128 S. Ct. 1184 (2008)............................17

*Zauderer v. Office of Disciplinary Counsel of Sup. Ct. of Ohio*, 471 U.S. 626 (1985) .................14

## Statutes and Regulations

2 U.S.C. § 434 ......................................................................................................16

2 U.S.C. § 434(f) ....................................................................................................5

2 U.S.C. § 434(f)(3)(A)(i) ................................................................................. 19-20

2 U.S.C. § 438(a)(4) ...............................................................................................12

2 U.S.C. § 441d(a)(3) .........................................................................................14, 16

2 U.S.C. § 441d(d)(2) ..........................................................................................16

11 C.F.R. § 104.20(c)(7) .........................................................................................5

11 C.F.R. § 104.20(c)(9) .........................................................................................5

11 C.F.R. § 110.11(b)(3) .....................................................................................14, 16

11 C.F.R. § 110.11(c)(4) ........................................................................................16

Bipartisan Campaign Reform Act, Pub. L. No. 107-155 ("BCRA")................... 1-2, 4-5, 7, 11, 15

Cal. Gov't Code § 84211 ................................................................................... 4-5

Federal Election Campaign Act ("FECA")........................................... 3, 8-9, 13, 16, 19

## Other Authorities

154 Cong. Rec. S6006 (daily ed. June 24, 2008)..........................................................1

Fed. R. Civ. P. 56(c) ........................................................................................ 16-17

H.R. Rep. No. 107-131, pt. 1 (2001)............................................................................................15

Pew Research Center, *On the Campaign Trail: Media and Public Focused Mainly on Democrats* (July 3, 2008), http://pewresearch.org/pubs/887/news-interest-oil-prices ......14

Defendant Federal Election Commission ("Commission") submits this reply memorandum in further support of its Motion for Summary Judgment.  Plaintiff seeks to return the nation to the state of affairs that existed before Congress passed and the Supreme Court upheld the Bipartisan Campaign Reform Act, Pub. L. No. 107-155 ("BCRA").  Prior to BCRA, corporations ran advertisements attacking candidates for federal office without disclosing either their own identities or the identities of those who financed the advertising.  In upholding BCRA's disclosure requirements for electioneering communications ("ECs"), the Supreme Court in *McConnell v. FEC*, 540 U.S. 93 (2003), rejected such corporations' attempts to "hide themselves" and held that important government interests in providing information to the public and enforcing corporate funding restrictions "amply" justified the disclosure provisions.  These government interests apply to all ECs, including Plaintiff's communications, particularly in light of the minimal burdens that EC disclosure imposes.  Thus, the government's and the public's interests in disclosure clearly outweigh any burdens on Plaintiff, and the EC disclosure requirements are constitutional.  And because Plaintiff's film is susceptible of no reasonable interpretation other than as an appeal to vote against Senator Hillary Clinton, BCRA's corporate funding restriction is constitutional as applied to that film.[1]

## I.    THE EC DISCLOSURE REQUIREMENTS ARE SUBSTANTIALLY RELATED TO IMPORTANT GOVERNMENT INTERESTS

### A.    Disclosure Requirements Are Subject to Intermediate Scrutiny

As the Commission discussed in its opening brief, the constitutional standard relevant here is "exacting scrutiny," which, in the context of First Amendment challenges to disclosure requirements, is intermediate scrutiny:  The disclosure requirements must be substantially related

---

[1]    The Commission reiterates and incorporates by reference herein the facts set forth in the Commission's Statement of Material Facts as to Which There Is No Genuine Dispute ("Def.'s Facts"), except to add that the Commission's quorum has been restored.  *See* 154 Cong. Rec. S6006 (daily ed. June 24, 2008).

to important government interests.  (Def.'s Mem. at 11-14.)[2]  *McConnell* applied this standard specifically to the EC disclosure statutes at issue here, upholding them in light of "important state interests."  *McConnell*, 540 U.S. at 196; *see infra* Part I.B.  Plaintiff provides no contrary analysis of *McConnell*'s holding on this point.  Furthermore, less than one month ago, the Supreme Court reaffirmed this standard, reiterating its prior holdings that "there must be 'a "relevant correlation" or "substantial relation" between the governmental interest and the information required to be disclosed,' and the governmental interest 'must survive exacting scrutiny.'"  *Davis v. FEC*, No. 07-320, 2008 WL 2520527, at *12 (U.S. June 26, 2008) (quoting *Buckley v. Valeo*, 424 U.S. 1, 64 (1976)).  This is identical to the meaning of the "exacting scrutiny" test that the Commission has argued should apply throughout this case.  (Def.'s First P.I. Opp. at 11 ("[T]he compelled disclosure [must] bear a 'substantial relation' to an important government interest . . . ."); Def.'s Mem. at 11 (same); Def.'s Second P.I. Opp. at 16 ("BCRA's disclosure requirements are constitutional as to all ECs because the requirements substantially relate to the government's important interests . . . .").)  Thus, although the standard was already clear before *Davis* was decided, there is now no reasonable basis on which to argue that strict scrutiny applies to disclosure requirements.

Nonetheless, Plaintiff claims that *Davis* actually distinguished between what Plaintiff calls "the relevant-and-substantial-relation requirement" and "exacting scrutiny" by placing the word "and" between these phrases.  (Pl.'s Resp. at 22.)  Plaintiff makes the same argument

---

[2]      The Commission cites to the filings in this case as follows:  Def.'s Mem. of L. in Supp. of Its Mot. for Summ. J. and in Opp. to Pl.'s Mot. for Summ. J. (Docket No. 55) ("Def.'s Mem."); Pl.'s Mem. in Supp. of Summ. J. Mot. (Docket No. 52) ("Pl.'s Mem."); Pl.'s Statement of Undisputed Material Facts (Docket No. 52) ("Pl.'s Facts"); Pl.'s Mem. Opp. FEC's Summ. J. Mot. & Replying on [Its] Own Summ. J. Mot. (Docket No. 61) ("Pl.'s Resp."); Def.'s Mem. in Opp. to Pl.'s Mot. for Prelim. Inj. (Docket No. 18) ("Def.'s First P.I. Opp."); Def.'s Mem. in Opp. to Pl.'s Second Mot. for Prelim. Inj. (Docket No. 33) ("Def.'s Second P.I. Opp.").

regarding *Buckley* itself (Pl.'s Resp. at 4-5, 28 n.21), based on that opinion's summary of the Court's prior holdings:  "[W]e have required that the subordinating interests of the State must survive exacting scrutiny.  We *also* have insisted that there be a 'relevant correlation' or 'substantial relation' between the governmental interest and the information required to be disclosed."  *Buckley*, 424 U.S. at 64 (emphasis added).  But the "and" in *Davis* and the "also" in *Buckley* cannot bear the weight that Plaintiff places on them.  The relevant sentences in *Buckley* synthesize several earlier cases in which the Court had analyzed the constitutionality of disclosure requirements, drawing together the "exacting scrutiny" of *NAACP v. Alabama*, 357 U.S. 449, 463 (1958), the "relevant correlation" of *Bates v. Little Rock*, 361 U.S. 516, 524 (1960), and the "substantial relation" of *Gibson v. Florida Legislative Comm.*, 372 U.S. 539, 546 (1963)).  *See Buckley*, 424 U.S. at 64.  In such a context, the natural reading of the word "also" is that the *Buckley* Court was merely indicating its references to multiple prior decisions in crafting its analytical framework.  *Davis*, in turn, simply condenses *Buckley's* two sentences into a single sentence comprising two independent clauses.  *See Davis*, 2008 WL 2520527, at *12 (quoting *Buckley*, 424 U.S. at 64).  Plaintiff cites no caselaw supporting its reading of these clauses as two distinct requirements.  There is, however, a wealth of precedent interpreting exacting scrutiny as a "substantial relation" test, which is the standard applicable here.  (*See* Def.'s Mem. at 11-12 (citing, *inter alia*, *Buckley v. Am. Constitutional Law Found., Inc.*, 525 U.S. 182, 202 (1999) ("*ACLF*") ("In [*Buckley v. Valeo*], we stated that 'exacting scrutiny' is necessary when compelled disclosure of campaign-related payments is at issue.  We nevertheless upheld, as substantially related to important governmental interests, the recordkeeping, reporting, and disclosure provisions of the Federal Election Campaign Act ["FECA"].").)

In addition to attempting to graft a new test onto the exacting scrutiny analysis, Plaintiff cites *California Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088 (9th Cir. 2003), and Justice Thomas's opinion concurring in the judgment in *ACLF* for the proposition that strict scrutiny is warranted. (Pl.'s Resp. at 25, 29.) Justice Thomas's concurrence, which was joined by no other Justice, is of course not controlling. *Getman* did apply strict scrutiny, but, as the cases we have cited previously demonstrate, the great weight of authority is to the contrary. Indeed, the Ninth Circuit itself has observed that *Getman*'s application of strict scrutiny was questionable under *McConnell*. *Cal. Pro-Life Council, Inc. v. Randolph*, 507 F.3d 1172, 1177 & n.5 (9th Cir. 2007) (noting, on appeal after remand, that *Getman* applied strict scrutiny despite "a lack of clarity regarding the appropriate level of scrutiny," and that *McConnell* "may have changed the legal landscape," but applying strict scrutiny "because we are bound by the 'law of the case'").[3] Furthermore, *Getman* involved a state statute that required the disclosing political committees to file periodic reports disclosing nearly all of their income and disbursements, regardless of source or purpose — a significantly more burdensome requirement than any imposed by BCRA's EC disclosure provisions. *See Randolph*, 507 F.3d at 1187-89 (distinguishing between political committee reporting and reporting regarding source and amount of specific disbursements); *see also FEC v. Massachusetts Citizens for Life, Inc.*, 479 U.S. 238, 253-54, 262 (1986) ("*MCFL*") (finding political committee reporting requirements burdensome as-applied but noting continued application of independent expenditure reporting requirements); *compare* Cal. Gov't Code

---

[3]    As Plaintiff notes (Pl.'s Resp. at 29), the Ninth Circuit "assume[d] without deciding" that strict scrutiny applied in *Alaska Right to Life Comm. v. Miles*, 441 F.3d 773, 788 (9th Cir. 2006) ("*ARTL*"), but this was because the Court was uncertain regarding whether *McConnell* applied to the case, and because the statutes were constitutional under any standard of scrutiny. *ARTL*, 441 F.3d at 787-88; *see also Cal. Pro-Life Council v. Randolph*, 507 F.3d at 1177 n.5 (discussing scrutiny applied in *ARTL*). The *ARTL* court nonetheless made clear that "'[e]xacting scrutiny,' in the words of *Buckley*, required that a 'substantial relation' be shown 'between the governmental interest and the information required to be disclosed.'" *ARTL*, 441 F.3d at 787.

§ 84211 *with* 2 U.S.C. § 434(f) *and* 11 C.F.R. § 104.20(c)(7),(9).  In any event, as the Fourth

Circuit has plainly stated, in a decision post-dating *Getman*, "having a substantial relation to an

important state interest is all that is required by *Buckley* and *McConnell*."  *N.C. Right to Life*

*Fund for Indep. Political Expenditures v. Leake*, 524 F.3d 427, 440 (4th Cir. 2008).

Plaintiff makes three additional arguments for the application of strict scrutiny, none of

which has merit.  Plaintiff's first argument is that the Court in *FEC v. Wisconsin Right to Life,*

*Inc.*, 127 S. Ct. 2652 (2007) ("*WRTL*") applied strict scrutiny to "regulation" of ECs, and,

according to Plaintiff, such "regulation" includes disclosure.  (Pl.'s Resp. at 25, 27 & n.20.)

However, as the Commission has discussed previously and this Court preliminarily held,

disclosure was not at issue in *WRTL*.  *See Citizens United v. FEC*, 530 F. Supp. 2d 274, 280-81

(D.D.C. 2008); *see also* Def.'s Mem. at 8-10 & n.5 (noting that *WRTL* plaintiff disclaimed any

challenge to disclosure requirements).  It is, therefore, highly implausible that the word

"regulation" in *WRTL* tacitly decided a disclosure issue that was not before the Court.  *Citizens*

*United*, 530 F. Supp. 2d at 280-81 ("Under Citizens' reading of *WRTL*, anything that is not

[subject to the EC funding restriction] cannot be constitutionally regulated by Congress under

BCRA.  We do not believe *WRTL* went so far."); *see also* Def.'s Mem. at 10 (explaining that

*WRTL* turned, in part, on whether EC funding restriction was a "complete ban" or a

"regulation").  Thus, *WRTL* is simply irrelevant to the question of what scrutiny to apply to the

EC disclosure provisions.[4]

Second, Plaintiff argues that, in Supreme Court opinions, "[c]onfusing synonyms are

often used without any intent to change the analysis," and "[s]o the fact that *McConnell* spoke of

---

[4]     In addition to misinterpreting *WRTL* as applying strict scrutiny to disclosure, Plaintiff
asserts that *WRTL* "is the latest, and controlling, word on the subject."  (Pl.'s Resp. at 30.)  This
is inaccurate; *Davis*, which applied intermediate scrutiny, is the "latest word" on the subject of
disclosure.  *See supra* pp. 2-3.

'important state interests' instead of 'compelling state interests' in upholding the electioneering communication reporting and disclaimer requirements facially cannot alter *WRTL II*'s subsequent statement of the law." (Pl.'s Resp. at 27-28.) Because this argument is premised on the same misinterpretation of *WRTL* discussed above, it must fail. In addition, Plaintiff's attempt to conflate intermediate scrutiny with strict scrutiny — on the grounds that constitutional tests sometimes use "confusing" terminology — is contrary to a fundamental legal principle: The Supreme Court must be presumed to mean what it says, unless and until it revisits its own opinions. *See Citizens United*, 530 F. Supp. 2d at 278.

Finally, Plaintiff cites *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995), for the proposition that the EC disclaimer requirements are subject to strict scrutiny. (Pl.'s Resp. at 23-24.) But *McIntyre* presented a unique situation thoroughly distinguishable from the disclaimers in the instant case.[5] Indeed, *McIntyre* expressly limited its holding to "leaflets of the kind Mrs. McIntyre distributed" and disclaimed any application to "communications uttered over the broadcasting facilities of any radio or television station." *McIntyre*, 514 U.S. at 338 n.3. As the Supreme Court subsequently explained, the crucial aspect of *McIntyre* was that the plaintiff was an individual distributing a pamphlet by hand to other individuals: It was "a one-on-one communication." *ACLF*, 525 U.S. at 199. Citizens United's communications, in contrast, are televised (not in-person), and they are distributed by an organization (not an individual). "Several cases, signally *McIntyre* itself, expressly or implicitly contrast the fragility of the small independent participant in political campaigns with large corporations or other organizations." *Majors v. Abell*, 361 F.3d 349, 355 (7th Cir. 2004) (citing, *inter alia*, *ACLF*, and upholding disclaimer statute). Thus, because Plaintiff's communications lack the determinative

---

[5]    The Commission discussed in its opening brief why *McIntyre* is inapplicable to the EC reporting requirements. (Def.'s Mem. at 13-14.)

characteristics of those in *McIntyre*, Plaintiff's as-applied challenge to the EC disclaimer

requirements should be evaluated under the same standard as the remainder of the disclosure

requirements.  *See McConnell*, 540 U.S. at 231 (upholding disclaimer provisions in light of

"important governmental interest"); *infra* Part II (analyzing constitutionality of EC disclaimer

provisions).

### B.    Important Government Interests Support EC Disclosure

The Commission identified in its opening brief two important government interests

served by EC disclosure:  (1) providing information to the public, and (2) facilitating

enforcement of the EC funding restrictions.  (Def.'s Mem. at 18-25.)  Plaintiff does not respond

to the Commission's enforcement interest,[6] which alone is sufficient to warrant this Court's

upholding the application of the EC disclosure provisions to all ECs, including those exempt

from the BCRA's corporate financing restriction ("*WRTL* ads").  (*See id.* at 22-25.)

As to the interest in providing information regarding ECs to the public, Plaintiff does not

explain how depriving the public of such information would further First Amendment objectives.

*See McConnell*, 540 U.S. at 197 (upholding EC disclosure in light of "First Amendment interests

of individual citizens seeking to make informed choices in the political marketplace" (internal

quotation marks omitted)).  Instead, Plaintiff asserts that this interest only applies to

communications that are "unambiguously campaign related."  (*See* Pl.'s Resp. at 1-21, 38-39.)

The Commission has discussed at length why Plaintiff's argument is manifestly inconsistent with

Supreme Court caselaw in a number of areas, including not only ECs themselves, but also other

---

[6]     Plaintiff states that the informational and enforcement interests identified in *Buckley* regarding campaign *contributions* do not apply here.  (Pl.'s Resp. at 32-33.)  This does not respond to the Commission's argument; the Commission has never asserted that its interests in enforcing limits on direct contributions to candidates or providing information about candidate contributions apply to disclosure of *WRTL* advertisements.  (*See* Def.'s Mem. at 18-25 (discussing Commission's interests in EC disclosure).)

First Amendment–protected activities such as ballot-initiative advocacy and lobbying. (See Def.'s Mem. at 14-18.) Yet Plaintiff now claims that even in these areas — indeed, in *all* mandatory disclosure contexts — the government's informational interest is limited to disclosure regarding "unambiguous" advocacy for or against some person or topic. (See Pl.'s Mem. at 13-17.) This novel argument lacks merit.

Plaintiff derives its proposed restriction from *Buckley*, where the Court construed particular statutory language, to avoid problems of vagueness, as applying only to "communications that in express terms advocate the election or defeat of a clearly identified candidate for federal office." *Buckley*, 424 U.S. at 44. In *McConnell* (which Plaintiff neglects to discuss in this context), the Court made absolutely clear that *Buckley*'s narrowing was *not* a constitutional limit; it "was the product of statutory interpretation rather than a constitutional command." *McConnell*, 540 U.S. at 191-92. Thus, the very premise of Plaintiff's argument — *i.e.*, that *Buckley*'s statutory construction established a constitutional requirement that the EC statutes also must meet — has been conclusively rejected by the Supreme Court.

Despite the lack of foundation for its argument in the FECA context, Plaintiff expands its "unambiguously campaign related" argument to other areas of protected speech in which the Supreme Court has upheld disclosure requirements. Disclosure related to ballot initiatives, according to Plaintiff, must be "unambiguously related to the ballot-initiative campaign," and disclosure regarding lobbying must be unambiguously related to lobbying. (Pl.'s Resp. at 14, 17.) For the former proposition, Plaintiff cites *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765 (1978), and *Citizens Against Rent Control v. Berkeley*, 454 U.S. 290 (1981), arguing that they must have applied *Buckley*'s (non-existent) constitutional requirement *sub silentio* because each case included construction of a statute that contained a phrase that *Buckley* had construed in

the context of FECA.  (Pl.'s Resp. at 16-17.)[7]  There is no logic to this argument.  *Buckley*'s statutory construction of "contributions" to "committees" under FECA simply had nothing to do with the "contributions" to state "committees" under the statute in *Citizens Against Rent Control*, where the Court employed no narrowing construction at all, much less the FECA-specific construction applied in *Buckley*.  *See Citizens Against Rent Control*, 454 U.S. at 298-99 (analyzing statute without reference to *Buckley*'s construction of FECA).  *Buckley*'s construction of FECA's "influencing" requirement was likewise completely unrelated to the "influencing" provision in *Bellotti*'s state statute.  *Bellotti*, 435 U.S. at 775-95 (conducting constitutional analysis without reference to *Buckley*'s statutory construction); *see also* Def.'s Mem. at 16-17. Thus, Plaintiff's unsupported importation of its faulty interpretation of *Buckley* into later cases is nothing more than an attempt to lift that interpretation to legitimacy by its bootstraps.  The proper application of *Bellotti* and *Citizens Against Rent Control* to this case is in their recognition of the importance and constitutionality of disclosure in situations where the disclosures relate to funds constitutionally exempt from substantive limitations.  (Def.'s Mem. at 15-17.)

As to lobbying, Plaintiff makes two other flawed arguments.  First, Plaintiff claims that *United States v. Harriss*, 347 U.S. 612, 625 (1954), the seminal case upholding lobbying

---

[7]     Plaintiff also cites (Pl.'s Resp. at 14-16) *Getman*, which applied a narrow-tailoring analysis to disclosure statutes.  *See* 328 F.3d at 1101.  The court's analysis, however, was premised on the application of strict scrutiny, which, as discussed above, has been called into question by the Ninth Circuit itself and not followed elsewhere.  *See supra* Part I.A; *Cal. Pro-Life Council v. Randolph*, 507 F.3d at 1177 & n.5.  As for Plaintiff's extended discussion (Pl.'s Resp. at 18-21) of *MCFL*, the Commission respectfully refers the Court to the Commission's opening brief, which (a) discussed *MCFL*'s recognition of the government's enforcement interest in the context of disclosure regarding communications that were constitutionally exempt from funding regulations, and (b) explained that, because the communications at issue in *MCFL* contained express advocacy, the case had no occasion to consider or impose an "unambiguously campaign related" requirement on all disclosure regimes.  (*See* Def.'s Mem. at 15-17, 23-24.)

disclosure requirements, adopted a constitutionally mandated statutory construction similar to the *Buckley* construction from which Plaintiff draws its "unambiguously campaign related" requirement. (Pl.'s Resp. at 17 n.15.) But *Harriss* did not do so; the Court in that case found that the text of the statute itself, along with its legislative history, pointed to a construction of the statute that was not impermissibly vague. *See Harriss*, 347 U.S. at 620-23 ("It is . . . clear that Congress would have intended the Act to operate on [a] narrower basis, even if a broader application . . . were not permissible."). Thus, no constitutional narrowing was required, and there is no merit to Plaintiff's claim that the Court applied a constitutional requirement that lobbying disclosure must be unambiguously related to direct lobbying. Indeed, numerous subsequent decisions have interpreted *Harriss* as recognizing the governmental interest in providing information to the public about those attempting to influence government policy. (*See* Def.'s Mem. at 21 & n.13 (collecting cases).)

This governmental interest gives rise to Plaintiff's second argument, which is that the Commission cannot claim to have a disclosure interest "any time a speaker attempts to persuade the public." (*See* Pl.'s Resp. at 11.) Plaintiff's hyperbole misunderstands *Harriss* and its progeny, which establish that the government is constitutionally permitted to require those engaging in non-campaign issue advocacy to disclose who they are and who is funding their operations, so that the public may know "the sources of pressure on government officials, thus better enabling the public to assess their performance." *Comm'n on Indep. Colls. & Univs. v. N.Y. Temp. State Comm'n on Regulation of Lobbying*, 534 F. Supp. 489, 494-95 (N.D.N.Y. 1982). This is not a constitutional "line" created by the Commission (Pl.'s Resp. at 12-13); it is the law of the land, as recognized by federal and state courts throughout the country, and fully applicable here. (*See* Def.'s Mem. at 21 & n.13.)

Plaintiff's final argument against the Commission's interest in providing information to the public is that the "Federal *Election* Commission" cannot have an interest under the "Federal *Election Campaign* Act" in disclosure of communications that are not unambiguously related to an "*election*." (Pl.'s Resp. at 10-12 & n.10, 17.) ECs exempt from the corporate funding restriction under *WRTL*, however, are not necessarily unrelated to an election. Indeed, the EC provisions only come into play when broadcast communications clearly identify a candidate in the immediate pre-election timeframe, *WRTL*, 127 S. Ct. at 2669 n.7 ("[K]eep in mind that this test is only triggered if the speech meets the brightline requirements of BCRA § 203 in the first place."), and the "'distinction between discussion of issues and candidates and advocacy of election or defeat of candidates may often dissolve in practical application.'" *WRTL*, 127 S. Ct. at 2669 (quoting *Buckley*, 424 U.S. at 42); *see also McConnell*, 540 U.S. at 193 ("[A]lthough . . . advertisements do not urge the viewer to vote for or against a candidate in so many words, they are no less clearly intended to influence the election."). When the Court in *WRTL* acknowledged that elements of issue advocacy and electoral advocacy could exist in the same message, it did not suggest that the First Amendment prohibited disclosure about such messages or that there was no public interest in learning about their funding. *See WRTL*, 127 S. Ct. at 2667. Thus, Plaintiff's request for relief as to all *WRTL* ads (*see* Am. Compl. ¶¶ 35(a), 36(a)) is contrary to Congress's interest in protecting the "First Amendment interests of individual citizens seeking to make informed choices in the political marketplace," *McConnell*, 540 U.S. at 197 (internal quotation marks omitted), by helping "the public . . . . gain[ ] access to the very information Congress sought to have revealed." *Nat'l Ass'n of Mfrs. v. Taylor*, 549 F. Supp. 2d 68, 77 (D.D.C. 2008), *appeal docketed*, No. 08-5085 (D.C. Cir.) (denying preliminary injunction against enforcement of lobbying disclosure statute). Congress has assigned to the Commission

the duty of providing information to the public regarding all ECs, *see* 2 U.S.C. § 438(a)(4) (requiring Commission to make all filings publicly available within forty-eight hours of receipt), and Plaintiff has provided no legally tenable argument refuting the importance of this governmental interest.

In sum, the Commission's unrebutted enforcement interest and its interest in providing information to the public are important and substantially related to disclosure regarding ECs. These interests are not limited to unambiguously campaign-related communications, but rather apply in full to all communications that meet the statutory definition of an EC.

**C.      The EC Disclosure Requirements Impose Minimal Constitutional Burdens**

As the Supreme Court has noted, the EC disclosure requirements "do not prevent anyone from speaking." *McConnell*, 540 U.S. at 201 (internal quotation marks and alteration omitted). Accordingly, any First Amendment burden arising from the requirements must be a second-hand burden related to unwillingness of the disclosing party to identify itself or its donors. The Commission has acknowledged that such a burden may rise to a constitutionally significant level in cases where the disclosure will cause the disclosing party to be subject to "threats, harassment, and reprisals." (Def.'s Mem. at 25-27 (quoting *McConnell*, 540 U.S. at 198-99).) Plaintiff, however, now disavows any allegation that its donors will be subject to such harassment. (Pl.'s Resp. at 34-35.)[8] This concession ends the case, for, as far as the Commission is aware, no court

---

[8]      Its concession notwithstanding, Plaintiff has hedged its bets throughout this case by referring to some "retaliation" below the threshold recognized by the Supreme Court, repeatedly claiming that "[o]ne of the chief concerns with the Reporting Requirement is the disclosure of donors who may then be subject to various forms of retaliation by political opponents." (Pl.'s Facts ¶ 35; Pl.'s Mem. in Supp. of Prelim. Inj. Mot. at 8; Am. Compl. ¶ 23.) As recently as its opening summary judgment brief, Plaintiff stated that "Citizens has . . . affirmed its reasonable belief that . . . retaliation is a concern . . . ." (Pl.'s Mem. at 28; *see also id.* (discussing evidence of retaliation submitted by *McConnell* plaintiffs); Pl.'s Statement of Material Issues & Objections to Def.'s Statement of Undisputed Facts ¶ 28 (alleging that Plaintiff "ha[s] prominent political *opponents* in influential positions").)

has ever sustained an as-applied challenge to a facially valid disclosure statute on any basis other than threats, harassment, and reprisals.

Lacking any such basis for its claim, Plaintiff argues that disclosure is per se an unconstitutional burden.  (Pl.'s Resp. at 22, 35.)  In support, Plaintiff cites *Buckley*'s statement that "compelled disclosure, in itself, can seriously infringe on privacy of association and belief guaranteed by the First Amendment."  *Buckley*, 424 U.S. at 64; *Davis*, 2008 WL 2520527, at *12 (quoting *Buckley*).[9]  Plaintiff interprets this statement as holding that "compelled disclosure in this candidate election campaign context *is* a per se burden on First Amendment privacy rights." (Pl.'s Resp. at 22 (emphasis added).)  Neither *Buckley* nor *Davis*, however, says any such thing; each case says that disclosure "can" be a burden.  In fact, *Buckley* immediately followed this statement by analyzing whether the allegations of burden were supported by evidence showing a "reasonable probability that the compelled disclosure . . . will subject [the plaintiffs] to threats, harassment, or reprisals."  *See Buckley*, 424 U.S. at 64-74 (quotation at 74).  Finding the evidence insufficient to demonstrate such a probability, *Buckley* upheld FECA's disclosure provisions.  *Id*. at 74.  The *McConnell* Court employed the same mode of analysis and arrived at the same conclusion.  *See McConnell*, 540 U.S. at 197-99; *see also McConnell v. FEC*, 251 F. Supp. 2d 176, 246-49 (D.D.C. 2003) (per curiam).  In *Davis*, the Court did not even reach the issue of constitutional burdens, for the government's sole interest in the disclosure provisions at issue was the administration of contribution limits that the Court had struck down facially.  *See Davis*, 2008 WL 2520527, at *12.  Unlike in the instant case — where the EC statute has been

---

[9]    Plaintiff also cites *McIntyre* and *WRTL*.  (Pl.'s Resp. at 35-36.)  As discussed above, Plaintiff's reliance on *McIntyre* is inapposite because of the "one-on-one" nature of the communication at issue therein, *see supra* pp. 6-7, and *WRTL*'s discussion of the burden arising from the EC funding restriction is irrelevant to consideration of the EC disclosure requirements, *see supra* p. 5.

upheld on its face and the Commission has important informational and enforcement interests in its disclosure requirements — there simply was no constitutional governmental interest in *Davis* in continuing to require the disclosures.  Thus, none of these cases supports Plaintiff's claims regarding "per se burdens," while those that have addressed the issue have held that the government's interests were sufficient to justify disclosure in the absence of evidence of threats, harassment, and reprisals.[10]  (*See also* Def.'s Mem. at 26 & n.16 (collecting cases).) Accordingly, Citizens United's failure to present such evidence is fatal to its case.

## II.     THE EC DISCLAIMER REQUIREMENTS ARE CONSTITUTIONAL

As discussed above, the EC disclaimer requirements are subject to intermediate scrutiny. *See supra* pp. 6-7.  The government's interest in providing information to the public is at least as strong in the context of disclaimers as it is in reporting, for, without the EC disclaimers, television ads mentioning candidates could be run shortly before elections without any indication of whether the ads were funded by a candidate (or his or her opponent).  *See* 2 U.S.C. § 441d(a)(3); 11 C.F.R. § 110.11(b)(3) (requiring to be printed on screen that EC is "not authorized by any candidate or candidate's committee").  This lack of disclaimers could cause

---

[10]      In addition to claiming a per se burden, Plaintiff alleges that it "was chilled from broadcasting its Ads at the most opportune time. . . .  [T]he marketability of a movie about Senator Clinton has declined with the decline of her political fortunes . . . ."  (Pl.'s Resp. at 36-37.)  To the extent a decrease in the "marketability" of a DVD states a constitutional claim, such a claim would be analyzed under the lesser standard of scrutiny applicable to commercial speech. *See Zauderer v. Office of Disciplinary Counsel of Sup. Ct. of Ohio*, 471 U.S. 626, 651-52 (1985); *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 562-63 (1980) ("The Constitution . . . accords a lesser protection to commercial speech than to other constitutionally guaranteed expression.").  As to the broadcasting of Plaintiff's film regarding Senator Barack Obama (Pl.'s Resp. at 37), the Commission notes again that Plaintiff could be advertising the film right now without any restrictions or disclosure requirements until July 29 (s*ee* Def.'s Facts ¶ 12) but apparently is not doing so, even though public interest in Senator Obama is extremely high.  *See* Pew Research Center, *On the Campaign Trail: Media and Public Focused Mainly on Democrats* (July 3, 2008), http://pewresearch.org/pubs/887/news-interest-oil-prices (tracking public interest in, and news coverage of, candidates).

significant confusion among the public as to the source of the advertising; for example, the

public may believe that ads explicitly or implicitly criticizing the candidate (such as Plaintiff's

"Questions" ad) are actually "attack" ads run by the opposing candidate. *See generally* H.R.

Rep. No. 107-131, pt. 1, at 50-51 (2001) (describing, in report on BCRA, sources of viewer

confusion in issue advertisements that mention candidates). The reporting requirements alone do

not solve this problem:

> [T]he very thing that makes reporting less inhibiting than notice in the ad
> itself — fewer people are likely to see the report than the notice — makes
> reporting a less effective method of conveying information . . . . It's as if
> cigarette companies, instead of having to disclose the hazards of smoking
> in their ads, had only to file a disclosure statement with the Food and Drug
> Administration.

*Majors*, 361 F.3d at 353 (upholding disclaimer requirement for campaign advertising); *see also*

*McConnell*, 540 U.S. at 197 (characterizing plaintiffs' claims as attempts to "hide themselves

from the scrutiny of the voting public" (internal quotation marks omitted)). Accordingly,

requiring self-identification in the ads is crucial to furthering the important (indeed, compelling)

informational interests underlying the disclaimer requirements, and Plaintiff provides no

argument to the contrary.

Plaintiff asserts two burdens arising from the disclaimer requirements. First, Plaintiff

claims that "the challenged disclaimer provision, which takes at least 4 seconds to intone, so

limits Citizens' 10-second ads that they are effectively restricted. And the disclaimer seriously

limits a 30-second ad." (Pl.'s Resp. at 23.) These are merely conclusory allegations: There is

no evidence in the record of this case showing, as a factual matter, that corporations wishing to

run *WRTL* ads are "effectively restricted" or "seriously limit[ed]" from doing so. The

Commission also is not aware of any legal support for Plaintiff's proposition that the time

required to speak the disclaimer is of constitutional dimension. *See Nat'l Elec. Mfrs. Ass'n v.*

*Sorrell*, 272 F.3d 104, 116 (2d Cir. 2001).[11]  Indeed, *McConnell* upheld the disclaimer

requirements despite the evidence in the record of that case regarding the importance of each

second of political advertising.  *See McConnell*, 251 F. Supp. 2d at 530 (quoting political

consultant's testimony that "[i]t is amazing how short thirty seconds really is when you are

trying to craft a political ad").  Thus lacking factual support or legal authority, Plaintiff's

allegation of burden fails.

> Plaintiff's second argument is that
>
> > [p]utting the same disclaimer on an ad that *WRTL II* said is not the
> > functional equivalent of express advocacy as one would put on an ad that
> > is functionally equivalent to express advocacy tells the public that this is
> > really the functional equivalent of express advocacy, i.e., a campaign ad,
> > an electioneering ad.  That misleads the public. . . .  The government may
> > not compel misleading speech.

(Pl.'s Resp. at 37.)  The disclaimers about which Plaintiff complains are the spoken words

"Citizens United is responsible for the content of this advertising," *see* 2 U.S.C. § 441d(d)(2); 11

C.F.R. § 110.11(c)(4), and the printed words "Not authorized by any candidate or candidate's

committee," *see* 2 U.S.C. § 441d(a)(3); 11 C.F.R. § 110.11(b)(3).  In effect, therefore, Plaintiff

argues that the viewing public (a) knows that a disclaimer stating that the ad is "*not* authorized

by any candidate" means that the ad has nonetheless been statutorily defined as "electioneering,"

(b) knows that some "electioneering" is the functional equivalent of express advocacy, but (c) is

incapable of realizing when a given ad is not the functional equivalent of express advocacy.

Even if this claim were plausible on its face, Plaintiff could only be awarded summary judgment

thereon if there were undisputed evidence in the record supporting its factual premises.  Fed. R.

---

[11]    Although Plaintiff attempts to distinguish *Sorrell* as relating to "securities . . . tobacco
labeling . . .  and the like" (Pl.'s Resp. at 38), Plaintiff neglects to mention that *Sorrell*
specifically included FECA provisions in its discussion of why the space and time used to satisfy
disclaimer requirements do not constitute a constitutional burden.  *Sorrell*, 272 F.3d at 116
(citing 2 U.S.C. § 434).

Civ. P. 56(c); *see Wash. State Grange v. Wash. State Republican Party*, 128 S. Ct. 1184, 1193-94 (2008) (holding that plaintiffs' "sheer speculation" regarding "mere possibility" that "voters will be confused" was "fatal flaw" in challenge to statute regarding candidate ballot listings); *Meese v. Keene*, 481 U.S. 465, 484 (1987) (rejecting disclaimer challenge where, *inter alia*, plaintiff had "no evidence" to support his claim that "a partially informed audience" might misunderstand disclaimer). There is no such evidence.

Furthermore, as the Commission discussed in its opening brief, the Supreme Court rejected this same claim regarding "misleading" disclaimers in *Meese*. (Def.'s Mem. at 32.) Plaintiff attempts to distinguish *Meese* on the grounds that the plaintiff there could add an explanation of "propaganda" to his movies, while Citizens United cannot explain "electioneering" in its ads. (Pl.'s Resp. at 37.)[12] This misstates the Court's holding, which included that the plaintiff was free to explain "propaganda" *outside* his films: "[T]he Act allows appellee to combat any . . . bias simply by explaining — before, during, or after the film, or in a wholly separate context — that [the reason for the propaganda label] does not necessarily undermine the integrity or the persuasiveness of its advocacy." *Meese*, 481 U.S. at 481. Citizens United is free to do the same here. In any event, the numerous other rationales under which *Meese* rejected that First Amendment challenge apply in full to Citizens United's disclaimer arguments. (*See* Def.'s Mem. at 32.)

---

[12]    Plaintiff also states that the public will be more misled by the EC disclaimer than it was by the "propaganda" disclaimer at issue in *Meese*. (Pl.'s Resp. at 37.) This assertion fails for the same lack of evidence discussed above regarding whether the public is "misled."

### III.     PLAINTIFF'S FILM IS THE FUNCTIONAL EQUIVALENT OF EXPRESS ADVOCACY

#### A.     No Specific "Words of Advocacy" Are Required for a Communication To Be the Functional Equivalent of Express Advocacy

The Commission has discussed at length the ways in which Plaintiff's film fails the test for exemption set out in *WRTL*, including the film's indicia of express advocacy and its absence of discussion regarding legislative issues.  (Def.'s Mem. at 37-45.)  Plaintiff now appears to concede that its film does not focus on "some public issue" (Pl.'s Resp. at 45), but Plaintiff maintains that, under *WRTL*, indicia of express advocacy can only be found if the communication contains "some verb calling for some action."  (*Id*. at 42.)  As we have shown (Def.'s Mem. at 39-41), the history of the Supreme Court's express-advocacy jurisprudence and the text of *WRTL* itself reject such a wooden analysis.  Instead, they mandate a holistic examination of the communication to determine whether it is, on the whole, susceptible of no reasonable interpretation other than as an appeal to vote for or against a specific candidate.  (*Id*.)  When *WRTL* analyzed the content of WRTL's ads for "indicia of express advocacy," the Court reviewed whether the ads "mention an election, candidacy, political party, or challenger," and whether they "take a position on a candidate's character, qualifications, or fitness for office," not whether the ads contain specific words exhorting viewers to vote for or against a candidate.  *See WRTL*, 127 S. Ct. at 2667.  *WRTL* simply never states that the communication must *contain* a verb-based appeal to vote to be subject to the EC funding restriction.  In sum, *WRTL* means what it says:  The absence of issue discussion, plus "indicia of express advocacy" (not, as Plaintiff would have it, "words of express advocacy"), indicates that a communication is the functional

18

equivalent of express advocacy.  *See WRTL*, 127 S. Ct. at 2667.[13]  Because Plaintiff's film does

not focus on any issue and contains pervasive attacks on Senator Clinton's "character,

qualifications, [and] fitness for office," *id.*, it is not constitutionally exempt from the EC funding

restriction.

> **B.      The Duration of Plaintiff's Communication Is Irrelevant**

Plaintiff asserts, without any citation to authority, that "movies, like books, retain their

historic First Amendment protection against government regulation. The movie may not be

prohibited for this reason alone."  (Pl.'s Resp. at 41.)  As the Commission noted in its opening

brief, however, neither FECA nor *McConnell* draw any distinction between film-length

communications and shorter advertisements.  (Def.'s Mem. at 44 & n.24 (citing 2 U.S.C.

§ 434(f)(3)(A)(i); *McConnell*, 540 U.S. at 209).)  Furthermore, contrary to the assertion in

Plaintiff's response (Pl.'s Resp. at 40), the Commission has already cited to the portions of the

*McConnell* district court opinion in which one of the judges discussed thirty-minute

"infomercials" at length, and a second judge rejected the proposition that there was a significant

difference between these thirty-minute communications and the thirty-second communications

comprising the bulk of the record.  (*See* Def.'s Mem. at 44 (citing *McConnell*, 251 F. Supp. 2d at

---

[13]      As for Plaintiff's renewed discussion (Pl.'s Resp. at 43) of *FEC v. Furgatch*, 807 F.2d 857 (9th Cir. 1987), the Commission notes that not only is the case irrelevant here (*see* Def.'s Mem. at 41 n.21), but also that Plaintiff's attempt to divine from *Furgatch* — a twenty-year-old Ninth Circuit case that neither *WRTL* nor any other opinion of the Court has ever cited or discussed — what the Supreme Court "could not have intended" in *WRTL* is a purely speculative endeavor.  (Pl.'s Resp. at 43)

547-48, 906).)[14]  Thus, there can be no doubt that the Supreme Court was aware of communications longer than thirty-second advertisements when it decided *McConnell*, and there is nothing in that opinion indicating that the length of the communication was of any constitutional relevance.[15]  Rather, Congress crafted, and the Supreme Court upheld, a bright-line definition of ECs.  *See McConnell*, 540 U.S. at 194 (noting that EC definition is "both easily understood and objectively determinable").  Neither that definition nor the Constitution contains any exception for film-length communications.

---

[14]    Judge Kollar-Kotelly described the thirty-minute communications, which the NRA had asserted were issue speech, as follows:

> The NRA created an advertising campaign in which "infomercials" would be run from September 1, 2000 to November 6, 2000. Two of the NRA's objectives were to "influence political elections where Republican seats are jeopardized" and "increase awareness of key gun issues as the Presidential election approaches."  Wayne LaPierre also testifies that the NRA "hoped [an NRA infomercial critical of Presidential candidate Al Gore] would impact the election."  When asked if the advertisement was designed in part to persuade viewers that they ought to vote against Gore, LaPierre testified:  "We're happy if it did that. And, yeah, we're thrilled if it did that."  LaPierre thought that the Gore infomercials would have a "positive" political impact on the election: "Positive impact would mean a vote . . . against Al Gore."

*McConnell*, 251 F. Supp. 2d at 547-48 (citations omitted; brackets and ellipsis in original).

[15]    Also of little relevance are Plaintiff's references to the theatrical-release, DVD, and "compendium book" versions of its film.  (*See, e.g.*, Pl.'s Resp. at 40.)  By definition, these communications are not ECs, *see* 2 U.S.C. § 434(f)(3)(A)(i), and *WRTL* held that "contextual factors," such as an entity's other communications, "should seldom play a significant role" in determining whether that entity's EC is the functional equivalent of express advocacy.  *See WRTL*, 127 S. Ct. at 2668-69.  Plaintiff's reliance on such extrinsic evidence is directly at odds with its position that "context . . . is now an improper consideration in determining either express advocacy or its functional equivalent."  (Pl.'s Resp. at 15.)

## IV.    CONCLUSION

For the foregoing reasons, the Commission respectfully requests that the Court grant the

Commission's motion for summary judgment and deny Plaintiff's motion for summary

judgment.

<div style="margin-left: 50%;">

Respectfully submitted,

Thomasenia P. Duncan (D.C. Bar No. 424222)
General Counsel

David Kolker (D.C. Bar No. 394558)
Associate General Counsel

Kevin Deeley
Assistant General Counsel

___/s/ Adav Noti_____
Adav Noti (D.C. Bar No. 490714)
Attorney

COUNSEL FOR DEFENDANT
FEDERAL ELECTION COMMISSION
999 E Street NW
Washington, DC 20463
(202) 694-1650

</div>

Dated:  July 11, 2008